# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Brock Fredin,<br><br>               Plaintiff,<br><br>v.<br><br>Grace Elizabeth Miller and Catherine Marie Schaefer,<br><br>               Defendants. | Case No. 18-cv-0466 (SRN/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

Brock Fredin, 1905 Iris Bay, Hudson, WI 54016, pro se

Adam C. Ballinger, Ballard Spahr LLP, 80 South 8th Street, Suite 2000, Minneapolis, MN 55402; and K. Jon Breyer, Kutak Rock LLP, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402; for Grace Elizabeth Miller and Catherine Marie Schaefer

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Defendants Grace Elizabeth Miller and Catherine Marie Schaefer's Motion to Dismiss [Doc. No. 18] and Plaintiff Brock Fredin's Motion for Leave to File Amended Complaint [Doc. No. 29]. Though the motion to dismiss was not formally referred to the undersigned for the issuance of a report and recommendation ("R&R"), this Court was previously ordered to issue an R&R on an earlier-filed motion to dismiss (*see* Order of Referral, Apr. 2, 2018 [Doc. No. 14]), and was otherwise instructed to issue an R&R on the newly-filed motion to dismiss.

## I.    Background and Procedural History

Plaintiff Brock Fredin is suing Defendants Grace Elizabeth Miller and Catherine

Marie Schaefer for defamation per se, abuse of process, nonconsensual sexual solicitation, invasion of privacy, negligence, false arrest/imprisonment, malicious prosecution, civil fraud, intentional infliction of emotional distress, civil conspiracy, and *prima facie* tort. (Compl. ¶ 1 [Doc. No. 1].) The events giving rise to these claims began in March 2014, when Fredin allegedly did not show up for a blind date with Schaefer. (*Id.*) Fredin claims that Schaefer retaliated by filing false police reports, posting false statements about him on the Internet, making false statements about him in the press and in state court, and harassing him by encouraging other individuals to seek harassment restraining orders ("HROs") against him. (*Id.* ¶¶ 1-4.) Fredin's claims against Miller arose after they ceased dating in January 2016. (*Id.* ¶ 13.) According to Fredin, they had been dating about six months when Miller heard of the false accusations Schaefer was making against Fredin. (*Id.* ¶ 13.) After Miller and Fredin stopped dating, Fredin alleges, Miller applied for an HRO, bullied him via email, and pursued false criminal charges against him. (*Id.* ¶ 14.)

Miller and Schaefer jointly move to dismiss all claims against them. They seek dismissal on the bases that the Complaint violates Rule 8(a)(2) of the Federal Rules of Civil Procedure and that the Complaint fails to state a claim for relief, pursuant to Rule 12(b)(6).

Miller and Schaefer filed three memoranda in support of the motion to dismiss: Memorandum of Law in Support of Motion to Dismiss by Defendants Grace Miller, Catherine Schaefer and Lindsey Middlecamp [Doc. No. 20] ("Omnibus Memorandum"); Memorandum in Support of Motion to Dismiss [Doc. No. 21]; and Amended

Memorandum in Support of Motion to Dismiss [Doc. No. 25] ("Case-Specific Memorandum"). The Omnibus Memorandum was also filed in a related case, *Fredin v. Clysdale*, Case No. 18-cv-510 (SRN/HB), and addresses not only the claims alleged against Miller and Schaefer in this case but also claims brought against Miller and Schaefer and another individual, Lindsey Middlecamp, in the related *Fredin v. Clysdale* case.[1]

    The Omnibus Memorandum exemplifies the difficulties of coordinating this case with the related cases. The Omnibus Memorandum frequently combines the allegations made in the two complaints into the same discussion, or does not discuss at all the specific allegations made in the Complaint filed in this case. (*See, e.g.,* Omnibus Mem. at 5, 13, 22-24 [Doc. No. 20].) Because the allegations, claims, and defendants are not identical, however, the arguments applicable to the related case are not always applicable here. And, of course, the Court cannot consider allegations made in a complaint filed in another case in assessing whether Fredin has stated a plausible claim for relief in this case. The Court therefore gives the parties notice that, going forward, they must not

---

[1] Fredin has two other related cases also pending in the District of Minnesota, for a total of four. In *Fredin v. Middlecamp*, Case No. 17-cv-3058 (SRN/HB), Fredin brought suit against Lindsey Middlecamp for defamation per se, abuse of process, and intentional infliction of emotional distress ("IIED"). *See Fredin v. Middlecamp*, Case No. 17-cv-3058 (SRN/HB), slip op. at 2 (D. Minn. Sept. 26, 2018). The District Court recently granted a motion to dismiss the abuse of process claim and denied a motion to dismiss the IIED claim in that matter. *Id.* at 14. Middlecamp did not move to dismiss the defamation per se claim. In *Fredin v. Halberg Criminal Defense*, Case No. 18-cv-2514 (SRN/HB), Fredin is suing Halberg Criminal Defense and attorney Christina Zauhar for malpractice/negligence, breach of contract, excessive legal fees, fraud, and intentional misrepresentation. Compl. ¶ 2, *Fredin v. Halberg Crim. Defense*, Case No. 18-cv-2514 (SRN/HB) (D. Minn. filed Aug. 27, 2018).

cross-file documents in the related cases.  Though the cases are related, they are separate matters.  Similarly, in the interests of judicial efficiency, fairness, notice, and accuracy of the record, any document on which a party relies must be filed in the case to which it pertains.

Defendants' Memorandum in Support of Motion to Dismiss [Doc. No. 21] and the Case-Specific Memorandum [Doc. No. 25] both relate solely to the claims and allegations in this case.  The Court believes that Defendants intended for the Case-Specific Memorandum to replace and supplant the Memorandum in Support of Motion to Dismiss, and the Court will consider and cite to the Case-Specific Memorandum in this R&R.

Fredin did not file a memorandum in opposition to the motion to dismiss, but filed a motion for leave to amend his complaint [Doc. No. 29].[2]  He seeks leave to add a claim for copyright infringement; to delete his claims for false arrest/imprisonment, malicious prosecution, civil fraud, and *prima facie* tort; and to add and clarify the allegations concerning his remaining claims.  Defendants challenge the proposed amendments as

---

[2]  At the hearing, Fredin stated that he intended for a memorandum filed in the related *Fredin v. Clysdale* case to also serve as the memorandum in opposition in this case, even though he did not actually file it in this case.  The Court reiterates that the parties must file the necessary documents in each case.  As the plaintiff, Fredin chose to initiate multiple, separate cases against the same individuals, and that is how he must litigate them.  Furthermore, the Court has reviewed that memorandum in opposition, in connection with motions under advisement in that case, and finds the memorandum does not contain the caption for this case or specifically address the motion to dismiss filed in this case.  *See* Memorandum of Law in Opposition to Grace Miller, Catherine Schaefer, and Lindsey Middlecamp's April 25, 2018 Motion to Dismiss Plaintiff's Amended Complaint, *Fredin v. Clysdale*, No. 17-cv-510 (SRN/HB) (D. Minn. filed May 21, 2018), ECF No. 74.

futile, except the deletion of the false arrest/imprisonment, malicious prosecution, and *prima facie* tort claims, which they do not oppose.  (Defs.' Mem. Opp'n Mot. Am. at 2, 4 n.1 [Doc. No. 32].)

## II.    Discussion

### A.    Federal Rule of Civil Procedure 8(a)(2)

Defendants move to dismiss the Complaint as violating Rule 8(a)(2) of the Federal Rules of Civil Procedure.  Rule 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Defendants argue that the sixty-three page Complaint is unnecessarily prolix and complex.  The Court agrees that the Complaint is far more than a short and plain statement of Fredin's claims, but if the Court were to recommend dismissal on the basis of Rule 8, the recommendation would be for dismissal without prejudice and with leave to amend.  This would lead the parties and the Court in a circular route to the same procedural posture existing now.  Moreover, in filing a proposed twenty-four page amended complaint [Doc. No. 29-1], Fredin has cured much of the prolixity and complexity of his original Complaint.  In light of these circumstances, the Court finds the more efficient course of action is not to recommend dismissal based on Rule 8 and to proceed to the other arguments.

### B.    Federal Rule of Civil Procedure 12(b)(6) and Futility

#### 1.    Legal Standards

On a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must take the well-pleaded allegations of the complaint as true, and construe

5

the complaint, and all reasonable inferences arising therefrom, most favorably to the

pleader." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially

plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Generally, a court may not consider matters outside the pleadings in assessing the

sufficiency of a complaint under the Rule 12(b)(6) standard. *Porous Media Corp. v. Pall*

*Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). A court may make

exceptions to this rule for matters of public record, materials "necessarily embraced by"

the complaint, and exhibits submitted with the complaint. *Id.* (citations omitted).

A court has the duty to construe liberally a pro se party's pleadings. *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976). Although courts must "grant deference to pro se

litigants," however, "the court will not assume the role of advocate for the pro se

individual and the court will not allow defective or insufficiently pled pro se claims to

proceed." *Sneh v. Bank of N.Y. Mellon*, No. 12-cv-954 (MJD/JSM), 2012 WL 5519690,

at *5 (D. Minn. Oct. 30, 2012), *R. & R. adopted*, 2012 WL 5519682 (D. Minn. Nov. 14,

2012).

When a party files a motion for leave to amend a complaint in response to a

motion to dismiss, the motion to dismiss may be rendered moot. *See Pure Country, Inc.*

*v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) ("If anything, Pure Country's

motion to amend the complaint rendered moot Sigma Chi's motion to dismiss the original complaint."). In any event, "courts should not decide a party's motion to dismiss without also considering the opposing party's pending motion to amend the pleadings." *Hazley v. Roy*, No. 16-cv-3935 (SRN/TNL), 2018 WL 1399309, at *5 (D. Minn. Mar. 20, 2018). Consequently, in this R&R, the Court will consider both Fredin's motion to amend and Defendants' motion to dismiss.

Fredin filed his motion to amend more than twenty-one days after the motion to dismiss was filed. Thus, he is not entitled to amend as a matter of course, *see* Fed. R. Civ. P. 15(a)(1)(B), and he may amend his complaint only with the Defendants' consent or the Court's leave, *see* Fed. R. Civ. P. 15(a)(2). Defendants do not consent to the amendment, and thus the Court proceeds to the question of whether to grant leave to amend.

In determining whether to allow a party to file an amended complaint, a court should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]here is no absolute right to amend," however, and a court may deny leave to amend "based upon a finding of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous amendments, undue prejudice to the non-moving party, or futility." *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007) (citation omitted).

When a party challenges a proposed amendment on futility grounds, as Defendants do here, the Court considers whether the amendment could withstand a Rule 12(b)(6) motion to dismiss. *See Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). "An amendment is futile if the amended complaint could not

7

withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."

*Rickmyer v. Browne*, 995 F. Supp. 2d 989, 1001 (D. Minn. 2014).  Consequently, the

Court will address Defendants' futility arguments under the framework of Rule 12(b)(6).

## 2.    Defamation Per Se

In Fredin's original Complaint, he alleges that Miller and Schaefer made false and

defamatory statements against him, specifically that he "commit[ed] a serious crime, *i.e.*

stalking," on the Twitter account @CardsAgstHrsmt and in the *City Pages* newspaper.

(Compl. ¶¶ 92-96.)  He asserts that "Defendant" (without specifying Miller or Schaefer)

posted "false and sordid statements" about him on the Twitter account

@CardsAgstHrsmt.  (*Id.* ¶ 3.)  He further alleges that Schaefer "endorsed" and

"published" statements in a *City Pages* article "that she received unwanted phone and/or

text messages from [him]" (*id.*), and that Defendants told *City Pages* reporter Michael

Mullen that Fredin had sent them an overwhelming number of "odd," "intense," and

"sexually suggestive" text and Facebook messages (*id.* ¶ 42).  As best the Court can

discern, the allegedly defamatory statements fall into three categories: (1) Defendants'

posts on Twitter that Fredin stalked them; (2) Defendants' statements made directly to

Mullen that Fredin had sent odd, intense, and sexually suggestive messages even after

they told him to stop, and (3) various statements attributed to Defendants in the *City

Pages* article written by Mullen.

In their motion to dismiss, Defendants argue that the alleged defamatory

statements are protected by an absolute litigation privilege, protected by a qualified fair

and accurate reporting privilege, substantially true, or statements of opinion.  (Omnibus

8

Mem. at 15-16.)  But the only allegations Defendants identify in support of the latter

three arguments (fair reporting privilege, matters of truth, and matters of opinion) are

contained in the complaint filed in the related *Fredin v. Clysdale* case, not in the original

Complaint filed in the instant case.  (*See* Omnibus Mem. at 16-19.)  Thus, only the

absolute litigation privilege is potentially applicable to the allegations underlying the

original defamation per se claim in this case.

In his proposed amended complaint, Fredin repeats many of the original

allegations and confirms that his defamation claim is based on Defendants' alleged

statements to Mullen and posts on Twitter that Fredin committed the crime of stalking.

(Proposed Am. Compl. ¶¶ 38, 52-53 [Doc. No. 29-1].)  Defendants oppose the proposed

amendments on the same four grounds raised in their motion to dismiss and on the

additional ground that the statements were not defamatory.  (Defs.' Mem. Opp'n Mot.

Am. at 3-4.)

The Court will consider whether the defamation per se claim, as amended, could

withstand a Rule 12(b)(6) motion to dismiss.  "A defamatory statement is one that tends

to harm the plaintiff's reputation and lower him in the estimation of the community."

*Jadwin v. Minneapolis Star & Tribune Co.*, 390 N.W.2d 437, 443 (Minn. Ct. App. 1986).

In Minnesota, the elements of a defamation claim are: "(a) a false and defamatory

statement about the plaintiff; (b) in unprivileged publication to a third party; (c) that

harmed the plaintiff's reputation in the community."  *Weinberger v. Maplewood Review*,

668 N.W.2d 667, 673 (Minn. 2003).  "Statements are defamatory per se if they falsely

accuse a person of a crime, of having a loathsome disease, or of unchastity, or if they

refer to improper or incompetent conduct involving a person's business, trade, or profession." *Longbehn v. Schoenrock*, 727 N.W.2d 153, 158 (Minn. Ct. App. 2007) (citing *Anderson v. Kammeier*, 262 N.W.2d 366, 372 (Minn. 1977); Restatement (Second) of Torts § 570 (1977)). Defamation per se is "a rule of damages," however, "not of defamatory meaning," and "means that damages are presumed and recoverable without proof of actual harm to reputation." *Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 307 (Minn. Ct. App. 2001).

Defendants first argue that the alleged defamatory statements are protected by an absolute litigation privilege. This privilege applies to statements made in a judicial proceeding by a party or witness. *See Matthis v. Kennedy*, 67 N.W.2d 413, 417 (Minn. 1954). While the privilege could apply to statements made in the state court HRO proceedings and statements made in Schaefer's affidavit submitted in support of the HRO, Fredin has not identified those statements as the basis for his defamation claim. Rather, his defamation claim is founded on the alleged statements made on social media and to Mullen, to which the litigation privilege would have no discernible application. To the extent that Mullen obtained the statements repeated in the *City Pages* article from state court documents, the privilege could potentially apply, but Fredin alleges that Defendants made the statements directly to Mullen. Whether Mullen also obtained the statements or verified their authenticity from state court documents is beyond the scope of the allegations. Defendants' argument that "each and every alleged defamatory statement was taken from the public Court file" (Omnibus Mem. at 16) is inconsistent with the Complaint's allegation that Defendants themselves made the defamatory

10

statements to Mullen (Proposed Am. Compl. ¶ 38).  The fact that the allegedly defamatory statements may also have been made in a judicial proceeding does not protect them from being actionable, in light of Fredin's allegations that the statements were also made on Twitter and to Mullen directly.  Therefore, the defamation per se claim is not barred by the litigation privilege.

Defendants next contend their alleged statements characterizing Fredin's texts as "odd," "intense," and "haunting," and stating that meeting him would not be in their "best interests," were statements of opinion, not defamation.  The Court agrees.  A statement of opinion is not actionable as defamation, because it is protected speech under the First Amendment.  *Hunt v. Univ. of Minn.*, 465 N.W.2d 88, 93 (Minn. Ct. App. 1991).  Four factors are relevant to determining when a statement is a protected statement of opinion or an actionable statement of fact: "(1) the statement's precision and specificity; (2) the statement's verifiability; (3) the social and literary context in which the statement was made; and (4) the statement's public context."  *Id.* (citing *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1302, 1305 (8th Cir. 1986)).  Whether a text message is "odd," "intense," or "haunting," or whether meeting someone is in one's best interest, is not precise or verifiable.  Thus, these statements are not defamatory.  This aspect of the defamation claim fails both as originally pleaded and as amended.

Defendants next argue that several of Schaefer's alleged statements (that she was contacted dozens of times by unfamiliar numbers and dating profiles, that she believed Fredin was the source of the contacts, and she told Fredin to stop contacting her) (*see* Proposed Am. Compl. ¶ 38) are not defamatory because they were true and because they

11

did not tend to harm Fredin's reputation. But reaching these conclusions would require the Court to draw inferences in Schaefer's favor, not Fredin's, as the Court must do in the context of a motion to dismiss. The allegations also reveal potential factual disputes as to whether the calls originated from telemarketers (*see* Proposed Am. Compl. ¶ 38) (and if so, whether Schaefer was justified in attributing them to Fredin), and whether Schaefer did or did not ask Fredin to stop contacting her. In addition, it is plausible that an accusation that Fredin refused to abide by a request to stop calling and sending unwanted messages to Schaefer could have harmed Fredin's reputation, especially when those calls and messages were characterized as stalking.

Concerning the allegation that Defendants told Mullen that Fredin sent them sexually suggestive messages, Defendants argue that any such statement to Mullen would be covered by both the litigation privilege and the fair reporting privilege. (Defs.' Mem. Opp'n Mot. Am. at 7.) But, as discussed above, the fact that the alleged statement was also made in a judicial proceeding does not protect it from being actionable as defamation, given Fredin's allegation that Defendants made the statement to Mullen directly. The fair and accurate reporting privilege, which protects news reports of judicial and other governmental proceedings, *see Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 332-33 (Minn. 2000), does not apply for a similar reason. That privilege would protect statements by Mullen, as the reporter, but not Schaefer and Miller. Defendants also argue that the allegation was not defamatory because Fredin did not allege harm to his reputation. To the contrary, it is plausible that a statement that Fredin sent unwanted sexually suggestive messages to Defendants could have harmed

12

Fredin's reputation, and Fredin has alleged harm to his reputation from the alleged statements.

Defendants next argue that a certain excerpt from the *City Pages* article is not defamatory because it does not relate directly to Fredin and did not damage his reputation. The excerpt at issue is: "Hansen filed to make Schaefer undergo a deposition, something her attorney said was 'unheard of.'" (Proposed Am. Compl. ¶ 38.) The Court agrees that the statement is not defamatory. The statement does not name Fredin, and in any event, the Court cannot conceive how the statement could have harmed Fredin's reputation. Further, the excerpt does not contain an apparent falsehood or a statement made by Schaefer or Miller. Consequently, this excerpt should not constitute a part of Fredin's claim.

Defendants' final challenge to the proposed amended defamation claim is to a statement in the *City Pages* article that "Schaefer's evidence of unwanted contact through the years was overwhelming." (Defs.' Mem. Opp'n Mot. Am. at 8; Proposed Am. Compl. ¶ 38.) This statement was made by Mullen, not Schaefer, and it is a statement of opinion. In that sense, this aspect of the defamation claim is not actionable. However, to the extent one may reasonable infer from the statement that Schaefer made additional allegedly false and defamatory statements to Mullen to the effect that Fredin persisted in making unwanted contact with Schaefer over a period of years, it supports a plausible claim for defamation per se.

In sum, the Court recommends that the motion to dismiss the defamation per se claim be denied as moot, and that Fredin's motion to amend be granted in part and denied

13

in part.  Specifically, as to leave to amend, Fredin should be granted leave to file an amended complaint alleging defamation per se based on Defendants' posts on Twitter that Fredin had stalked them, Defendants' statements made directly to Mullen that Fredin had sent them sexually suggestive messages even after they told him to stop, and Schaefer's statements to Mullen that she had been contacted dozens of times by unfamiliar numbers and dating profiles, that she believed Fredin was the source of the contacts, and that she told Fredin to stop contacting her.

### 3.    Abuse of Process

Fredin alleges in the original Complaint that Miller and Schaefer "used civil and encouraged collateral criminal process against [him] by filing a false HRO Petition" in June 2016; filing false police reports from January 2016 to present; initiating contempt proceedings in September 2016, May 2017, and February 2018; and obtaining an unlawful search warrant through then-Assistant City Attorney Lindsey Middlecamp. (Compl. ¶¶ 99-102.)  He contends that Defendants sought the HROs for the purposes of "manufacturing a knowingly false coordinated smear campaign," retaliating against him, harassing and intimidating him, attempting to silence his First Amendment right to free speech, preventing him from seeking legal redress, concealing their unlawful activities including making false police reports, and garnering attention for their social media campaigns.  (Compl. ¶¶ 4, 104.)

The Omnibus Memorandum filed by Miller and Schaefer does not address the abuse-of-process allegations made in this case.  (*See* Omnibus Mem. at 22-24.)  The Case-Specific Memorandum does not address the claim at all.  Consequently, the Court

14

recommends that to the extent Defendants intended to seek dismissal of the abuse-of-process claim, the motion to dismiss be denied on the ground that Defendants never developed the argument.

The proposed amended complaint contains many of the same allegations as the Complaint, in reorganized fashion. (*See* Proposed Am. Compl. ¶¶ 56-67.) There is one new allegation of abuse of process based on a May 2018 contempt hearing that occurred in state court (*id.* ¶ 60) and a longer alleged timeframe during which Schaefer allegedly filed false police reports (*id.* ¶ 62).

Defendants argue that the proposed amended complaint does not remedy the deficiencies of the initial pleading (Defs.' Mem. Opp'n Mot. Am. at 10), but since Defendants never identified any deficiencies with the abuse-of-process claim alleged in this case, that argument is not availing. Defendants next contend (for the first time) that Fredin did not allege an ulterior purpose[3] in pursuing the HROs. To the contrary, in the original Complaint, Fredin alleged that Defendants sought the HROs for the purposes of conducting a smear campaign against him, retaliation, harassment, intimidation, attempting to silence his First Amendment rights, preventing him from seeking legal redress, concealing unlawful activities, and garnering attention for social media campaigns. (Compl. ¶¶ 4, 104.) In the proposed amended complaint, Fredin alleges

---

[3] In Minnesota, "the tort of abuse of process has two elements: (1) the existence of an ulterior purpose; and (2) the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether or not the result might otherwise be lawfully obtained." *Questar Data Sys., Inc. v. Serv. Mgmt. Grp., Inc.*, 502 F. Supp. 2d 960, 963 (D. Minn. 2007).

ulterior purposes of intimidation, obtaining an illegal search warrant, harassment, bringing attention to their social media campaigns, and interfering with his professional standing. (Proposed Am. Compl. ¶¶ 63-66.) Defendants did not discuss the alleged purposes in moving to dismiss, nor do Defendants address them in opposing the motion to amend. Consequently, the Court recommends that Fredin's motion to amend the abuse of process claim be granted.

Before proceeding to a discussion of the next cause of action, the Court must briefly make mention of a letter Defendants filed in this case on July 11, 2018 [Doc. No. 34], in response to a letter filed by Fredin in the *Fredin v. Clysdale* case on July 5, 2018, in which Fredin asks to further amend his abuse of process claim alleged in that case. Fredin did not file the July 5, 2018 letter in this case, even though this case is included in the subject line of the letter. These letters emphasize the recurring problem with the parties' attempts to cross-file documents in the two cases. The Court is not inclined to excuse or correct the parties' filing deficiencies, and reiterates that the parties should not cross-file documents in the future. But even if the Court were to consider Fredin's July 5, 2018 letter, the Court would recommend that any further request for leave to amend the abuse of process claim be denied. Not only was the letter not filed in this case, but it is not a proper mechanism through which to seek amendment, and the content of the letter relates almost exclusively to the *Fredin v. Clysdale* case and provides no basis for granting leave to amend in this case.

### 4.     Nonconsensual Sexual Solicitation

Fredin alleges in the original Complaint that Miller and Schaefer "repeatedly

16

posted Plaintiff's photographs and derogatory statements soliciting contact with Plaintiff from third-parties on seedy adult websites." (Compl. ¶ 4.) He claims that Defendants impersonated him, used his email address, and posted his photograph on an adult websites to publish "sexual advertisements on the Internet," which caused him to receive "countless unsolicited sexual invitations to his personal email" from individuals who had accessed the fake profile. (Compl. ¶¶ 4, 108.)

Minnesota law recognizes a suit for damages when a person "uses the personal information of another to invite, encourage, or solicit sexual acts without the individual's consent and knows or has reason to know it will cause the person whose personal information is used to feel harassed, frightened, threatened, oppressed, persecuted, or intimidated . . . ." Minn. Stat. § 604.31, subd. 2. Defendants argue that Fredin's claim fails because he did not identify the websites; he did not articulate any invitation, encouragement, or solicitation of sexual acts; he did not describe the sexual acts that were solicited; and he did not articulate any facts relating to harassment or threats. (Case-Specific Mem. at 6.) In addition, Defendants contend, Fredin did not allege that he was actually invited, encouraged, or solicited to perform or receive any sexual acts covered by the statute.

The Court finds that Fredin has plausibly alleged a claim under § 604.31, subdivision 2, for nonconsensual sexual solicitation. The particularity demanded by Defendants simply is not required for notice pleading under Rule 8(a). Fredin has alleged that Defendants used his personal email address and photograph to create fake profiles on adult websites for the purpose of inviting, encouraging, or soliciting sexual acts. Fredin

17

further alleges, even though not required by the statute, that he received sexual solicitations via his personal email in response.  As to harassment or threats, the statute does not require that the plaintiff actually felt harassed or threatened, but that the wrongdoers knew or had reason to know that the individual would feel harassed, threatened, intimidated, or persecuted.  Fredin alleges that he suffered severe emotional distress as a result of the alleged solicitation, and this is enough at this stage of the case to plead a claim for nonconsensual sexual solicitation.

In the proposed amended complaint, Fredin seeks to add additional details to his claim for nonconsensual sexual solicitation.  Specifically, he proposes to allege that Schaefer impersonated him, created false online profiles, and posted his legal name and email address on an "online explicit dating site" and on sexual advertisements.  (Proposed Am. Compl. ¶¶ 1, 14, 18.)  Fredin claims that he received via his email and phone numerous responses, sexual images, and invitations for sex from individuals who accessed the fake profiles.  (*Id.* ¶¶ 16, 19.)  Fredin further avers that Defendants intended to cause emotional distress and fear to Plaintiff by disseminating his contact information and using his identity to publish online advertisements for sex.  (*Id.* ¶ 69.)

Defendants respond that the proposed amendments do not satisfy Minnesota Statute § 604.31, subdivision 1(a).  But Fredin's claim is not brought pursuant to § 604.31, subdivision 1(a), which pertains to the nonconsensual dissemination of private sexual images.  Rather, Fredin's claim is brought under § 604.31, subd. 2, which pertains to nonconsensual sexual solicitation.  Consequently, Defendants' argument is not applicable to Fredin's claim.  Fredin's motion to amend the nonconsensual sexual

18

solicitation should be granted.

### 5.    Invasion of Privacy

In the original Complaint, Fredin alleges that Miller and Schaefer "intentionally intruded upon his confidential space" by appropriating and publishing his private photographs on Twitter and on *City Pages*, and by giving his confidential photographs to Mullen and another journalist at the *Huffington Post*. (Compl. ¶¶ 21, 23, 111.) He also claims that his privacy was invaded by the publication of his email address on Internet profiles, impersonation of his identity, and placement of sexual advertisements on the Internet in his name, which caused him to receive numerous unsolicited sexual solicitations. (Compl. ¶ 110.)

In the proposed amended complaint, Fredin alleges that Schaefer forwarded a private photograph of him, along with some private biographical information and phone number, to a third party. (Proposed Am. Compl. ¶¶ 26-27.) He further avers that Defendants published his private dating profiles, confidential photographs, age, and private user names on the @CardsAgstHrsmt Twitter account. (*Id.* ¶¶ 28, 30.) He alleges that Defendants published and disseminated his confidential email addresses, user names, and private facts on false sexual advertisements placed on the Internet in his name. (*Id.* ¶ 72.) He also alleges that Defendants published his work address, private phone numbers, and email addresses. (*Id.* ¶¶ 73-75.)

Minnesota recognizes three kinds of invasion of privacy: intrusion upon seclusion, appropriation, and publication of private facts. *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 236 (Minn. 1998). While in his initial complaint Fredin did not specify

19

which cause of action he intended to bring, his proposed amended complaint clarifies that he intends to assert all three types of privacy-related causes of action. (Proposed Am. Compl. at p. 17.)

Defendants argue that all of the invasion of privacy claims fail across the board because Fredin does not have a reasonable expectation of privacy in photographs that are clothed headshots, or in his email address, phone number, or work address. (Defs.' Mem. Opp'n Mot. Am. at 11.) In *Lake*, the photographs at issue were of the plaintiffs' naked bodies, which the court deemed "a very private part of one's person and generally known to others only by choice," and thus "a type of privacy interest worthy of protection." 582 N.W.2d at 235. Here, by contrast, the photographs of Fredin are clothed headshots. The Court agrees with Defendants that the clothed headshots cannot be a basis for an invasion of privacy claim under any of the three theories.

With respect to the email address, phone number, and work address, Defendants cite *Rasmusson v. Chisago County*, 991 F. Supp. 2d 1065, 1079 (D. Minn. 2014), which found that a low expectation of privacy applied to information on a driver's license such as "address, color photograph, date of birth, weight, height, eye color, driver identification number, and driving record," because most of that data is located on the face of the license and individuals show their licenses to others frequently. But emails, addresses, phone numbers, work addresses, and online dating profiles are not displayed on a driver's license or in other public records.

More importantly, Plaintiff alleges that this information was used to impersonate his identity in order to place sexual advertisements in his name. The tort of intrusion

upon seclusion occurs when there is (1) an intentional intrusion (2) into "the solitude or seclusion of another or his private affairs or concerns" (3) that "would be highly offensive to a reasonable person." *Id.* at 233 (quoting Restatement (Second) of Torts, § 652B (1977)).  Neither Defendants' motion to dismiss nor their response to the motion to amend addresses those allegations in the context of this claim. Thus, some aspects of this claim as originally pleaded would survive dismissal, and the proposed amendments to Fredin's intrusion upon seclusion claim are not futile.

The tort of appropriation concerns "an individual's identity and is committed when one appropriates to his own use or benefit the name or likeness of another." *Lake*, 582 N.W.2d at 233.  This tort requires intent.  *Kovatovich v. K-Mart Corp.*, 88 F. Supp. 2d 975, 987 (D. Minn. 1999).  Defendants first argue that Fredin has not alleged any appropriation of his name or likeness.  To the contrary, Fredin alleges that Defendants appropriated his name and likeness by using his photographs and email address to create an Internet profile and place sexual advertisements on the Internet in his name.  But Defendants also argue that Fredin has not alleged they received any value from their use of his name or likeness.  The value need not be pecuniary, but there must be some intention to benefit from the use of the name or likeness.  *Wagner v. Gallup, Inc.*, 989 F. Supp. 2d 782, 791-92 (D. Minn. 2013).  Liability for appropriation exists only when "the defendant 'appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness.'"  *Olson v. Labrie*, No. A12-1388, 2013 WL 1788531, at *4 (Minn. Ct. App. Apr. 29, 2013) (quoting Restatement (Second) of Torts § 652C cmt. c (1977)).  Here,

21

Fredin has not alleged a value or benefit to the appropriation, so any appropriation claim, as currently pleaded, fails.

Furthermore, nothing in the proposed amended complaint alters that conclusion. Fredin contends that the value or benefit to Defendants was attention to their smear campaign against him, sympathy, and a litigation advantage by bankrupting him.  (Pl.'s Reply Mot. Am. at 10 [Doc. No. 33].)  That is not the kind of value or benefit recognized by the tort, however.  *See* Restatement (Second) of Torts § 652C (1977) (listing "reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness" as recognized uses or benefits).  Leave to amend should be denied as to this claim.

Finally, the publication of private facts tort occurs "when one 'gives publicity to a matter concerning the private life of another . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'"  *Lake*, 582 N.W.2d at 233 (quoting Restatement (Second) of Torts, § 652D (1977)).  Defendants first argue that Fredin does not specify which Defendant allegedly publicized his private information.  This is true, but other allegations in the Complaint make clear that Fredin is accusing Miller and Schaefer of acting jointly in publicizing private facts.  Moreover, he may not know at this time which Defendant allegedly posted or disseminated the photographs, created the online profile, or placed the advertisements in his name, but that is not a reason to dismiss the claim at this pre-discovery stage.  However, Defendants also argue that Fredin failed to plead that Defendants publicized private facts that would be highly offensive to a reasonable

person.  In that regard, the Court agrees.  Fredin's email address and the photographs depicted in the Complaint are not private facts that a reasonable person would find highly offensive.

Similarly, the proposed amendments do not identify private facts that, if publicized, would be highly offensive to a reasonable person.  Though Fredin argues the creation and publication of the sexual advertisement was highly offensive, that does not fit the definition of the tort.  The "highly offensive" matter must be the private fact—that is, the information—which in this case was Fredin's email address.  The "highly offensive" conditional language does not apply to the manner in which the fact was publicized.  Consequently, leave to amend this claim should also be denied.

### 6.    Negligence

Fredin initially brought a claim for negligence, which Defendants moved to dismiss.  In response, Fredin seeks to amend his negligence claim to allege the following. Fredin proposes to allege that Defendants owed him a general duty of reasonable care, and breached that duty by filing false police reports and initiating false complaints in state court.  (Proposed Am. Compl. ¶¶ 80-85.)  His alleged injuries include the loss of his relationship with Miller, a no-knock police raid, and the seizure of his phones, computers, and other items.  (*Id.* ¶¶ 88-90.)  Notably, Defendants did not specifically address Fredin's request to amend his negligence claim.  (*See* Defs.' Mem. Opp'n Mot. Am. [Doc. No. 32].)  The Court therefore considers any opposition waived, and Fredin should be granted leave to amend his negligence claim.

Even if the arguments presented in Defendants' motion to dismiss should be

applied to the amended negligence claim, those arguments do not render the amended claim futile. First, Defendants argued there was no foreseeable risk of injury to Fredin, because Minnesota law does not provide for a private right of action for filing a false police report. (Case-Specific Mem. at 12-13.[4]) Defendants cite Minnesota Statute § 609.505 in support of their argument. This criminal statute provides in relevant part that it is a misdemeanor to knowingly provide false information to a police officer. Minn. Stat. § 609.505, subd. 1. The statute does not, however, foreclose a civil negligence claim for filing a false police report, and Defendants cite no case law indicating that Minnesota courts would not recognize such a claim. Put another way, the Court has been provided no basis at this point in the litigation to conclude such a claim would fail as a matter of Minnesota state law.

Second, Defendants argue that the negligence claim fails because the police officers responding to the police reports and complaints had a duty to investigate them. But this argument does not address the duty allegedly owed to Fredin by Defendants, and none of Defendants' cited authority addresses that alleged duty. *See In re Claim for Benefits by Sloan*, 729 N.W.2d 626, 630 (Minn. Ct. App. 2007) (discussing the duties of police officers); *State v. McKinley*, 232 N.W.2d 906, 910 (Minn. 1975) (same). Moreover, it is the very actions of the police officers in response to the allegedly false reports—the no-knock police raid and the seizure of Fredin's phones, computers, and other items—that underlie the injuries for which Fredin is suing. Accordingly, in light of

---

[4] The Case-Specific Memorandum is erroneously paginated beginning at page 8, and the Court thus cites here to the page number assigned by the CM/ECF system.

the arguments and authority provided by Defendants in response to the motion to amend, the Court would not have recommended dismissal of this claim in the original complaint and does not find this claim in the proposed amended complaint to be futile.

### 7.    False Arrest/Imprisonment

Fredin alleges in his original Complaint that Miller and Schaefer filed false police reports and made false Facebook posts, which caused him to be placed in "unconsented confinement." (Compl. ¶ 124.) Fredin has deleted this claim from his proposed amended complaint, and his motion for leave to amend should be granted in this respect. Correspondingly, Defendants' motion to dismiss this claim should be denied as moot.

### 8.    Malicious Prosecution

Fredin alleges that Miller falsely reported with malicious intent that Fredin had hacked her phone and laptop. (Compl. ¶¶ 131-32.) He alleges that Schaefer generated countless police reports, causing search warrants to be issued. (Compl. ¶ 134.) Fredin has deleted this claim from his proposed amended complaint, and his motion for leave to amend should be granted in this respect. Correspondingly, Defendants' motion to dismiss this claim should be denied as moot.

### 9.    Civil Fraud

Fredin alleges that Miller and Schaefer committed civil fraud by misrepresenting HRO violations, failing to provide material facts to the Ramsey County District Court, harassing Fredin, and creating "Twitter and City Pages smear campaigns." (Compl. ¶¶ 140-45.) Fredin has deleted this claim from his proposed amended complaint, and his motion for leave to amend should be granted in this respect. Correspondingly,

Defendants' motion to dismiss this claim should be denied as moot.

####      10.    IIED

Fredin alleges that Miller and Schaefer intentionally inflicted emotional distress by publishing and disseminating "false claims" through the media and litigation, and by withholding material evidence in state court proceedings. (Compl. ¶¶ 148-49.) Defendants moved to dismiss this claim, and Fredin now asks to amend it. In particular, Fredin seeks leave to allege that Defendants engaged in "a course of extreme and outrageous conduct with the intention of causing, or reckless disregard for causing, emotional distress to Plaintiff, namely the publication and dissemination of sexual advertisements and coaching of false legal actions and/or broadcasting false claims through their revenge porn media platforms @CardsAgstHrsmt and a City Pages tabloid to cover up their misconduct." (Proposed Am. Compl. ¶ 94.) Fredin claims he suffered the loss of employment, the "loss of all his assets," and a police raid as a result. (*Id.* ¶¶ 95-96.) Fredin avers he experienced severe and extreme emotional distress as a result of Defendants' alleged actions. (*Id.* ¶ 97.)

Defendants did not specifically address Fredin's request to amend his IIED claim. (*See* Defs.' Mem. Opp'n Mot. Am. [Doc. No. 32].) The Court therefore considers any opposition waived, and Fredin should be granted leave to amend this claim.

To the extent Defendants would ask that the arguments presented in their motion to dismiss be applied to the amended IIED claim, the Court recommends otherwise because Fredin's amended IIED claim differs materially from the original claim. Fredin's original IIED claim was based on the alleged publication and dissemination of

"false claims" through the media and litigation, and by Defendants' alleged withholding of evidence in state court proceedings. Fredin's amended IIED claim alleges that Schaefer impersonated Fredin online and placed sexual advertisements on the Internet in his name, using his legal name and email address. (Proposed Am. Compl. ¶ 1.)

### 11. Civil Conspiracy

Fredin alleges in his original Complaint that Miller directed Schaefer to falsely petition for an HRO in June or July 2016. (Compl. ¶ 152.) He further alleges that Miller and Schaefer conspired to commit fraud, effectuate his false arrest and imprisonment, commit defamation, and promote malicious prosecution. (Compl. ¶ 153.) The objective of the conspiracy, according to Fredin, was to falsely arrest and imprison him. (Compl. ¶ 154.)

Defendants moved to dismiss the original conspiracy claim, and in response, Fredin seeks leave to amend it. Specifically, Fredin asks to add allegations that Miller and Schaefer agreed to disparage him online and unlawfully conspired to use stolen online identities, "catfishing techniques," court proceedings, and media smear campaigns to hide their revenge-porn sexual advertisements. (Proposed Am. Compl. ¶¶ 1-2.) Fredin further alleges that Miller and Schaefer met in person, emailed, and otherwise communicated with each other in furtherance of the conspiracy. (*Id.* ¶ 2.) Additional alleged objectives of the conspiracy were to commit defamation per se and to cover up revenge pornography. (*Id.* ¶¶ 101-02.)

Defendants did not specifically address Fredin's request to amend his conspiracy claim. (*See* Defs.' Mem. Opp'n Mot. Am. [Doc. No. 32].) The Court therefore considers

27

any opposition waived, and Fredin should be granted leave to amend this claim.

To the extent Defendants would ask that the arguments presented in their motion to dismiss be applied to the amended conspiracy claim, those arguments fail. Defendants first argued that the conspiracy claim should be dismissed because Fredin failed to allege an underlying tort. A civil conspiracy claim is dependent on the existing of an underlying tort. *D.A.B. v. Brown*, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997). Contrary to Defendants' position, Fredin has alleged underlying torts of defamation per se, negligence, non-consensual sexual solicitation, and invasion of privacy. Defendants also argued that Fredin did not sufficiently allege an agreement between Miller and Schaefer, but the proposed new allegations cure any such deficiency.

### 12.    Prima Facie Tort

Fredin alleges that Miller and Schaefer made statements to the press to create a high-profile case that would generate negative publicity toward him and prevent him from obtaining a fair trial in several state court cases. (Compl. ¶¶ 158-61.) Fredin contends this violated his right to due process and a fair trial. (Compl. ¶ 162.) Fredin has deleted this claim from his proposed amended complaint, and his motion for leave to amend should be granted in this respect. Correspondingly, Defendants' motion to dismiss this claim should be denied as moot.

## III.    Proposed New Copyright Infringement Claim

Fredin proposes to add one new claim to this action, a claim for copyright infringement. Fredin alleges that he is the sole owner of copyrighted photographs that Defendants reproduced and distributed without his permission on the Twitter account

@CardsAgstHrsmt and in the *City Pages* article.  (Proposed Am. Compl. ¶¶ 42, 44.)

Fredin avers that some of the alleged infringement occurred after he registered the

copyrighted works with the United States Copyright Office.  (*Id.* ¶ 45.)

Defendants first oppose the amendment on the basis that they had no prior notice

of the claim.  This is not a valid reason to deny amendment, absent a showing of undue

delay, bad faith, dilatory motive, repeated failure to cure deficiencies in previous

amendments, undue prejudice to the non-moving party, or futility.  *See Baptist Health*,

477 F.3d at 544.  Of these bases for denial, Defendants argue only futility.

Defendants do not argue that Fredin has not stated a plausible claim for copyright

infringement.  Rather, they submit the copyright infringement claim is futile because the

alleged use of the photographs falls within the fair use doctrine.  "The fair use of a

copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching .

. ., scholarship, or research, is not an infringement of copyright."  17 U.S.C. § 107.

Factors relevant to a determination of fair use include:

> (1) the purpose and character of the use, including whether such use is of a
> commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted
> work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted
> work.

*Id.*  Though "[f]air use is an affirmative defense," *Capitol Records Inc. v. Thomas-Rasset*,

No. 06-cv-1497 (MJD/RLE), 2009 WL 1664468, at *9 (D. Minn. June 11, 2009) (citing

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994)), courts have considered the doctrine in connection with motions to dismiss, *e.g.*, *Davis v. Walt Disney Co.*, No. 04-cv-1729 (DWF/SRN), 2004 WL 1895234, at *5 (D. Minn. Aug. 23, 2004).

Defendants argue the copyright infringement claim is futile, and the Court agrees. Notably, Fredin did not respond to Defendants' fair use argument in his reply.

Beginning with the first factor, Defendants argue that the alleged use was not commercial, but was for the purpose of criticism and education: criticism of Fredin's conduct and education of the public about his alleged harassment of Defendants. Though the educational and critical value of the use could be debated, Defendants are correct that there are no existing or conceivable allegations from which to draw a plausible inference that the use of the photographs through the Twitter account @CardsAgstHrsmt was commercial. Turning to the second factor, Defendants submit the nature of the photographs is not "creative," as a poem, novel, or painting would be. The Court agrees. The photographs depicted in paragraphs 27 and 28 of the proposed amended complaint are not the kind of "creative" or "fictional" works contemplated by the statute. *See Stewart v. Abend*, 495 U.S. 207, 237 (1990). Defendants concede the third factor—that Fredin alleges they used the entirety of the photographs—but given the nature of the works, this factor is relatively insignificant. Fourth and finally, Defendants observe that Fredin has not ascribed any value to the photographs, nor is there any apparent value. Consequently, the Court finds that the proposed copyright infringement claim is futile and leave to add the claim should be denied.

Based on the above and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1. Plaintiff Brock Fredin's Motion for Leave to File Amended Complaint [Doc. No. 29] be **GRANTED IN PART** and **DENIED IN PART** as to the defamation per se claim, as set forth fully in Part II.B.2; **GRANTED** as to the abuse of process claim; **GRANTED** as to the nonconsensual sexual solicitation claim; **GRANTED IN PART** and **DENIED IN PART** as to the invasion of privacy claim, as set forth fully in Part II.B.5; **GRANTED** as to the negligence claim; **GRANTED** as to the false arrest/imprisonment claim; **GRANTED** as to the malicious prosecution claim; **GRANTED** as to the civil fraud claim; **GRANTED** as to the IIED claim; **GRANTED** as to the civil conspiracy claim; **GRANTED** as to the prima facie tort claim; and **DENIED** as to the copyright infringement claim;

2. Defendants Grace Elizabeth Miller and Catherine Marie Schaefer's Motion to Dismiss [Doc. No. 18] be **DENIED AS MOOT** as to the defamation per se claim; **DENIED** as to the abuse-of process claim; **DENIED** as to the nonconsensual sexual solicitation claim; **GRANTED IN PART** and **DENIED IN PART** as to the invasion of privacy claim, as set forth fully in Part II.B.5; **DENIED** as to the negligence claim; **DENIED AS MOOT** as to the false arrest/imprisonment claim; **DENIED AS MOOT** as to the malicious prosecution claim; **DENIED AS MOOT** as to the civil fraud claim; **DENIED AS MOOT** as to the IIED claim; **DENIED** as to the civil conspiracy claim;

CASE 0:18-cv-00466-SRN-HB    Doc. 38    Filed 10/17/18    Page 32 of 32

and **DENIED AS MOOT** as to the prima facie tort claim;

3. All dismissals recommended herein be **WITH PREJUDICE**; and

4. Plaintiff be ordered to file an amended complaint that complies fully with the District Court's order on this R&R within fourteen days of the entry of that order.

Dated: October 17, 2018

  s/ *Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).