RECEIVED
BY MAIL

MAR 06 2019

CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BROCK FREDIN, | Case No. 18-CV-466 (SRN/HB) |
| Plaintiff, | |
| --against-- | |
| GRACE ELIZABETH MILLER, | **AMENDED COMPLAINT** |
| CATHERINE MARIE SCHAEFER | Jury Trial Demanded |
| Defendants. | |

Plaintiff Brock Fredin ("Plaintiff") proceeding *pro se*, hereby alleges the following against Defendant Grace Elizabeth Miller ("Defendant Miller") and Catherine Marie Schaefer ("Defendant Schaefer") (collectively, "Defendants").

## NATURE OF THE CASE

1.     This action arises out of a scheme among Defendants to terrorize Plaintiff with revenge porn advertisements encouraging men to send Plaintiff sexual invitations and images without Plaintiff's consent or knowledge and to visit him at his home for sexual activity in furtherance of a scheme to solicit his attention to bring a fraudulent pile-on harassment restraining order.  This scheme also sought to silence Plaintiff by preventing Plaintiff from exercising his legitimate rights to speech and entering into an agreement to distribute false disparaging publicity using Plaintiff's private photos and information on the revenge porn platform @CardsAgstHrsmt. Over May and June 2016, Defendant Schaefer posed as Plaintiff online and posted Plaintiff's legal name and email within multiple sexual advertisements on the Internet as part of a revenge porn campaign explicitly designed to destroy and shatter Plaintiff.  Not only did Defendant Schaefer post the profiles online, but she made them available to Plaintiff's personal and professional

SCANNED
MAR 06 2019
U.S. DISTRICT COURT ST. PAUL

acquaintances through a tactic called "google bombing" which allowed these sexual advertisements to display when any professional reference Googled Plaintiff's name.

2.      Through multiple meetings, emails, and other communications, these two have forged an unlawful conspiracy to exploit the state court and use irrefutably false police reports to cover up their tracks with harassment restraining orders. These communications make it clear that Defendants supported an effort to use stolen online identities, catfishing techniques, unconstitutional gag orders, unlawful military assaults on Plaintiff's person, civil seizures, contempt hearings, untenable criminal charges and phony media smear campaigns on revenge porn platforms to cover up their original revenge porn sexual advertisements.

3.      As a result of Defendant's repeated tortious acts, Plaintiff has suffered significant damages and harm. This includes, but is not limited to, harm to Plaintiff's personal and professional reputation, frivolous litigation expenses and severe emotional harm inflicted at the harms of Defendants through their orchestrated revenge porn sexual advertisements, revenge porn platform *@CardsAgstHrsmt* Twitter attacks and the *City Pages* smear campaign. Plaintiff seeks actual and punitive damages in addition to injunctive relief.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. The Court also has federal question jurisdiction under 28 U.S.C. § 1331. This Court also has jurisdiction over federal copyright claims under 28 U.S.C. § 1338(a).

5.      Venue is proper pursuant to 28 U.S.C. § 1332(b)(1) and (b)(2) because the events that gave rise to this action occurred in this Judicial District.

## THE PARTIES

6.      Plaintiff Brock Fredin is a citizen of the State of Wisconsin and resides at an address of 1905 Iris Bay, Hudson, WI 54016.

7.      Upon information and belief, Defendant Grace Elizabeth Miller is a citizen of the State of Minnesota and resides at an address of 1656 Dayton Ave S., Saint Paul, MN 55104.

8.      Upon information and belief, Defendant Catherine Marie Schaefer is a citizen of the State of Pennsylvania and resides at an address of 120 W Cherry Ln., State College, PA 16803.

## FACTUAL ALLEGATIONS

### Chronological Timeline of the Revenge Pornography

9.      On March 11, 2014 Defendant Schaefer sent Plaintiff a message on a dating website.  A date was setup.  However, Plaintiff did not show up.  Defendant Schaefer then filed hundreds of pages of irrefutably false police reports.

10.     Defendant Schaefer later admitted to showing Plaintiff's photographs to other local women and to contacting as many women as she could to ruin his life.

11.     In July 2015, Plaintiff and Defendant Miller began dating.

12.     In October 2015, Defendant Schaefer contacted Defendant Miller after obtaining Defendant Miller's information by secretly stalking him through a third-party.

13.     On January 24, 2016 Defendant Miller filed for an HRO at the urging of Defendant Schaefer's false allegations to ruin Plaintiff's life.

14.     On May 31, 2016 Defendant Schaefer created an online profile that appeared to be Plaintiff's on the online explicit dating site CollarSpace (www.collarspace.com).  The profile used a variation of Plaintiff's email address and dating profile "epicview" that was similar to the username he was using at that time on other sites and included suggestive photographs of women to attract responses from men.  Specifically, the dating profile was termed "epicviewf12".

3

15.     Through this profile, Defendant Schaefer impersonated Plaintiff and encouraged users to send sexual invitation emails and sexual images of themselves to Plaintiff. Defendant Schaefer posted Plaintiff's name and email address to users to accomplish this. Defendant Schaefer also encouraged users to visit Plaintiff for sex. Upon information and belief, Defendant Schaefer distributed Plaintiff's home address to accomplish this.

16.     Plaintiff received approximately thirty (30) messages from strange men through his mobile phone and email account. Some of these messages contained explicit images, others were merely nonconsensual invitations for sex.

17.     On May 31, 2016 Defendant Schaefer posing as Plaintiff while using the profile "epicviewf12" sent an email to Plaintiff "see ya soon Brock."



| From: EpicViewf12 |
| Dated: 5/31/16 12:41 PM |
| Note: This user does not have an active profile |
| see ya soon Brock |

| Reply to Message | Block Sender | Save Message | Delete Message |
| Mark as Spam and Delete | Add to Favorites | Add to Friends | Report Message |

18.     On June 2, 2016 Defendant Schaefer created a second profile on the pornography website CollarSpace (www.collarspace.com) in a name that alluded to Defendant Schaefer and Miller's smear campaign. Defendant Schaefer uploaded at least one sexually explicit image of a woman to the profile, so that it would attract attention from single men. Specifically, the username was "blackoutx2". The profile contained Plaintiff's email address and legal name.

19.     Shortly thereafter, Plaintiff received thirty (30) to fifty (50) emails from men through his mobile phone and email account. Some of these messages contained explicit images, others were merely nonconsensual invitations for sex.

20.     On June 5, 2016 Defendant Schaefer posing as Plaintiff while using the profile "blackoutx2" sent an email to Plaintiff "Any interest?  Are those recent pictures?"



**BlackOutx2** on 6/10/16 at 7:46 AM:

We know about you.  We will be coming soon.

**BlackOutx2** on 6/5/16 at 9:26 AM:

**Any interest?**
**Are those recent pictures?**

21.     On June 10, 2016 Defendant Schaefer posing as Plaintiff while using the profile "blackoutx2" sent an email to Plaintiff "We know about you.  We will be coming soon." Specifically, this alluded to Defendant Schaefer's intent on filing a bogus HRO to cover up  her revenge pornography.

22.     Shortly thereafter, Plaintiff took an investigation to determine the person responsible for publishing the sexual advertisements.  After laboring for two weeks through old conversations, he noticed that he stood an anonymous woman up on March 11, 2014.  Plaintiff skip-traced this number and found Defendant Schaefer's identity on Facebook.  Plaintiff noticed that she was connected to the only third party he had ever disclosed Defendant Miller's identity to.

23.     On June 18, 2016 Plaintiff sent a single email to Defendant Schaefer on Facebook pleading with her to remove the sexual advertisements.

24.     Instead, Defendant Schaefer used this single email to petition for an HRO in Ramsey County Family Court.  Defendant Schaefer used an improper extrajudicial relationship with Referee Elizabeth A. Clysdale extending through her friend Lindsey Middlecamp.  Defendant Schaefer knew and publicly admitted the HRO was issued by Referee Elizabeth A. Clysdale acting in furtherance of Defendants scheme to silence Plaintiff and coverup their revenge porn sexual advertisements and false police reporting.  Specifically, Defendant Schaefer said within Saint Paul Police Complaint No: 17280176: "Listen Brock, I have a hilarious secret for you.  Lindsey and Clydesdale (sic) have a mutual bestie and have been hanging out for years.  You are going down way further than you imagined.  You messed with the wrong women." (*See* Ex. 1.)

25.     From June 2016 onwards, Plaintiff received numerous text messages and requests from strange men and women through his Facebook, OkCupid, and email accounts.

26.     On August 10, 2016 Defendant Schaefer illustrated her catfishing and invasion of privacy by taunting Plaintiff via a third party with private photos of his dating profiles.  Specifically, Defendant Schaefer acting in concert with Defendant Miller publicized private facts including his phone number to this third party in furtherance of their obsession to ruin Plaintiff.



27.     During the above referenced text message, Defendant Schaefer directed her friend to send the following private photo which also contained private biographical information.



28.    Illustrative of Defendants invasion of privacy and catfishing, Defendants published private dating profiles including confidential photos and private usernames on Lindsey Middlecamp's revenge pornography platform @CardsAgstHrsmt.[1]   These individual pieces of information were retweeted and liked over 1,000 times.   Defendant Miller's sister, Emma Miller, also retweeted these on her personal Twitter page.   Publicizing Plaintiff's personal and private usernames, age, and photos serves no legitimate concern to the public.   Likewise, these dating profiles and information therein were not part of any legal filing.



[1] See https://twitter.com/cardsagsthrsmt/status/823941229079470080?lang=en; See e.g., https://twitter.com/emmamil87

29.    In March 2014, Defendant Schaefer had admitted knowledge and intent to appropriating Plaintiff's private information and photos: "pretty much anyone could take any picture of you and claim to have any sort of conversation regardless of it being true or not."

> and it's making me a little hesitant. Even if it was for the sake of keeping your privacy with regard to _____, prettymuch anyone could take any picture of you and claim to have any sort of conversation regardless of it being true or not, so that seems like a less solid reason...

30.    In January and February 2017, Defendant Schaefer and Miller formally began posting Plaintiff's private dating profiles on their friend's revenge porn Twitter platform @CardsAgstHrsmt.

31.    On February 22nd, 2017 Defendant Schaefer and Miller released a *City Pages* article to further cover up their revenge pornography. In doing so, Defendant Schaefer provided a private photo – likely obtained by catfishing him - of Plaintiff to the reporter Michael Mullen.

32.    Within this article, Defendant Schaefer provides mostly false allegations relating to phone call and text message allegations which simply never happened. Additionally, Defendant Schaefer and Miller attempt to make other false statements that are verifiably false.

33.    On April 28, 2017 Plaintiff's home was raided in a terrifying no-knock swat raid. This raid was done to eliminate any evidence of revenge pornography on @CardsAgstHrsmt.[2] Plaintiff's computers were returned by Saint Paul Police Sergeant David McCabe suspiciously in August 2017 (a day before the Amended Complaint was due in *Fredin v. Middlecamp*, District

---

[2] Lindsey Middlecamp used this period of time to sterilize her #shirtlessshamers campaign on Twitter to delete specific naked and obscene photos of men that would otherwise violate the new revenge porn law. Many such photos suddenly disappeared over-night. On April 25, 2018 the Saint Paul Police admitted the raid was done for the ulterior purpose of procuring evidence in two civil cases.

Court of Minnesota, Case No: 17-cv-3058) with specific data and user accounts deleted surrounding @CardsAgstHrsmt.  Defendants leveraged their numerous false police reports to encourage the raid and to serve contempt motions and HRO's to further silence Plaintiff from speaking of Defendants original revenge pornography sexual advertisements described above. Acting in furtherance of the conspiracy, Referee Elizabeth A. Clysdale would initiate an unconstitutional gag order to silence Plaintiff from speaking publicly about the original revenge porn sexual advertisements, @CardsAgstHrsmt revenge pornography, the unlawful raid of his home, or the unlawful seizure of all of his digital devices to delete any evidence of the above-mentioned revenge pornography.[3]

34.     On December 4th, 2017 Defendant Schaefer admitted that her friend Lindsey Middlecamp had an extrajudicial relationship with Referee Elizabeth A. Clysdale that apparently extended through Defendant Schaefer and Miller.  This was used to cover-up Defendant Schaefer's revenge porn scheme with improper HROs to silence Plaintiff with unconstitutional gag orders.

35.     Between May 2016 to present, Defendant Schaefer and Miller have filed or held at least six (6) contempt hearings to silence Plaintiff from speaking about their revenge porn misconduct.

36.     Despite the diligent issuance of takedown letters by Plaintiff through his attorney, the sexual advertisements have remained from May 2016 to present.  And, the @CardsAgstHrsmt campaign which includes Plaintiff's private photos and dating profiles have remained since January 2017 to present.  And, the *City Pages* article containing mostly false and disparaging coverage has remains since February 2017 to present.  Defendant Schaefer has also failed to correct

---

[3] Man Forbidden From Identifying Twitter Shaming Activist, Court Order Seems to Say. See   e.g.,   http://reason.com/volokh/2018/05/08/minnesota-court-apparently-orders-man-no?utm_source=dlvr.it&utm_medium=twitter

any false police reports containing allegations that she received unwanted contact from Plaintiff despite diligent attempts from his attorney.

37.     As a result of Defendant Schaefer and Miller's actions Plaintiff has suffered emotional harm: he has not been able to work in one and half years, has not been able to sleep, struggled with significant worry over the enormous financial burden levied by Defendants to silence him, and has feared for his physical safety.

### Defendants Defamation of Plaintiff to Cover-Up Revenge Porn Sexual Advertisements

38.     On February 22nd, 2017, Defendants perfected their phony smear operation to the *City Page article entitled Accused Stalker Brock Fredin is Writing a Horror Story (herein "City Pages Article")*. Virtually every statement Defendants provided in the *City Pages* article is false and legally untenable  None of which were either verified by the reporter or contained in the HRO petitions or subsequent filings. Accordingly, the allegations below are therefore patently false and defamatory *per se*. Defendants provided the above statements knowing that the statements were false and with reckless disregard for the truth. Moreover, to the extent they did fabricate the above statements, both Defendants clearly adopted the defamatory statements by providing the statements to the *City Pages* and reporter Michael Mullen. In it, Defendants set forth numerous irrefutably false statements, which included:

| | |
|---|---|
| **FALSE ONE:** | "Before they met in person, Fredin sent a series of "very odd" and intense texts. Schaefer decided a meeting was "not in her best interests." (*See* City Pages Art. Feb 22nd, 2017.) |
| TRUTH: | Plaintiff had minimal communication with Defendant Schaefer and stood her up after Defendant Schaefer sent erratic                                                                  messages. |

10



**FALSE TWO:**   "[Defendant Schaefer] canceled and told Fredin to stop contacting her." (*See* City Pages Article.)

**TRUTH:**   Plaintiff stood her up. Defendant Schaefer authenticated this through the text message "Yea well I sent you those messages several days ago and when I didn't hear from you I went anyway last night. I sent you one to keep Tuesday literally hours after the one asking to change."



**FALSE THREE:** "Over the next two years, she was contacted dozens of times by unfamiliar cell phone numbers and online dating profiles. In longer communiques, Schaefer recognized Fredin's "unique" writing style, she wrote in the affidavit. Other messages just said, "Hi Cat." No one else called her that." (*See* City Pages Article.)

**TRUTH:** After an exhaustive investigation by the Saint Paul Police department, each and every allegation originated from telemarketers. In fact, many were easily identified via routine Google search. In one report, the Saint Paul Police claimed, "An internet search revealed this number as a possible telemarketer." (*See* Ex. 1.)

**FALSE FOUR:** "Exasperated, Schaefer took to Facebook, detailing how a guy she'd never met was haunting her. A friend shared her post. Another Twin Cities woman soon reached out. Schaefer wasn't Fredin's only victim." (*See* City Pages Article.)

**TRUTH:** Defendant Schaefer had initiated unprompted contact to Plaintiff's then-girlfriend Defendant Miller in October 2015. In doing so, Defendant Schaefer stalked him through non-party Joshua Pose Lee.

**FALSE FIVE:** "The messages, some sexually suggestive, continued for weeks." (*See* City Pages Article.)

**TRUTH:** This statement is patently false and defamation *per se* and simply never occurred.



**FALSE SEVEN:** "Schaefer's evidence of unwanted contact through the years was overwhelming." (*See* City Pages Article.)

TRUTH: This statement is patently false and defamation *per se* as described above via proper subpoena practice. Defendant Schaefer made verbal accusations that she received "Hi Cat" text messages from unknown parties which turned out to be telemarketers or local companies selling products and/or services. Additionally, she offered evidence of random dating profile messages from anonymous profiles which were not ultimately connected to Plaintiff. (*See* November 2016. *Schaefer v. Fredin* Trial Tran.)

39.    In February 2017, Defendant Schaefer's friend, Lindsey Middlecamp, was additionally connected to the reporter Michael. Mullen as a "friend" on Facebook.

40.    Moreover, by Defendant Miller's own admission, she personally directed and coached Defendant Schaefer's revenge pornography and other operations publicly. In fact, Defendant Miller admitted that "she coached Schaefer through getting her own" within the *City Pages* article. Michael Mullen for the *City Pages* wrote in an e-mail to Plaintiff:

> Brock - Hi this is Mike Mullen with City Pages. I am writing a column for our next issue that involves you. I tried reaching out through your attorney, Nathan Hansen, who said he would get in touch with you. Since I haven't heard from either him or you, I thought I'd try this email, which I'd seen listed for you somewhere, though I'm not sure you still use it.
>
> Please get back in touch with me as soon as possible. I understand if you (or Nathan) choose not to comment for this story, but I need to confirm that is your wish. Thank you.

As a result, the *City Pages* gave Plaintiff only a few days to respond while he was on his way to a European vacation.



Plaintiff Fredin re-alleges and incorporates by reference paragraphs 1 through 40 of this Complaint as though fully set forth herein.

Plaintiff is and at all relevant times has been the sole holder of the copyrights in certain photographs (the "Copyrighted Works"). Each of these Copyrighted Works has been

42. [illegible] office of the United States Copyright Office. (TX electronic copyright case number [illegible])

43. Under the Copyright Act of 1976 and later law, Plaintiff has certain rights, including the exclusive rights to reproduce and to distribute the Copyrighted Works.

44. Without Plaintiff's permission, Defendants reproduced and distributed the Copyrighted Works to the public through @CardsAgstHrsmt, including but not limited to the *City Pages*. In doing so, Defendants infringed Plaintiff's exclusive rights of reproduction and distribution.

45. Plaintiff is informed and believes that some of this infringement took place after the Copyrighted Works were registered with the Copyright Office.

46. Plaintiff is informed and believes that Defendants committed their infringing acts willfully and intentionally, with indifference to Plaintiff's rights.

47. As a result of Defendant's infringement of Plaintiff's copyrights, Plaintiff is entitled to actual damages and statutory damages under 17 U.S.C. § 504(a). Plaintiff is also entitled to his costs and attorney fees under 17 U.S.C. § 505.

48. Defendant's conduct has caused Plaintiff great and irreparable injury that can be neither be fully compensated for or measured in money. Defendant's conduct will continue to cause such harm unless it is enjoined by this Court. Plaintiff is thus entitled to injunctive relief prohibiting Defendants from further infringing the Copyrighted Works and ordering Defendant to destroy all copies of the Copyrighted Works under 17 U.S.C. §§ 502 and 503.

## COUNT I: DEFAMATION *PER SE*

### (Defendants)

49. Plaintiff Fredin re-alleges and incorporates by reference paragraphs 1 through 40 of the Complaint as though fully set forth herein:

14

42. Defendants have made false and defamatory statements concerning Plaintiff Fredin as set forth above in this Complaint.

43. Defendants statements are statements of fact and are demonstrably false.

44. Defendants defamatory statements accused Plaintiff Fredin of committing a serious crime, *i.e.* stalking, and are therefore defamatory *per se*.

45. Defendants have published and continues to publish these false statements to numerous individuals on an analogous Twitter account and the *City Pages* tabloid.

46. Defendants enjoys no privilege concerning these statements.

47. As a result of Defendants defamatory statements and unlawful conduct, Plaintiff Fredin has suffered severe harm and is entitled to actual and punitive damages in an amount to be proven at trial. Plaintiff Fredin also seeks injunctive relief requiring Defendants to remove the defamatory material and posts from the Twitter account *@CardsAgstHrsmt* and the *City Pages* tabloid.

## COUNT 2: ABUSE OF PROCESS
### (Defendants)

48. Plaintiff Fredin re-alleges and incorporates by references paragraph 1-47 of this Complaint as though fully set forth herein.

49 Defendants acting in concert used civil and encouraged collateral criminal process against Plaintiff by filing a fraudulent HRO Petition from Defendant Schaefer in June 2016.

50. Defendants acting in concert used civil and encouraged collateral criminal process against Plaintiff by filing a September 2016 Contempt hearing in *Miller v. Fredin* using fabricated police reports in furtherance of their obsession to vindictively prosecute Plaintiff.

51. Defendants acting in concert used civil and encouraged collateral criminal process against Plaintiff by filing a May 2017 Contempt hearing in *Schaefer v. Fredin* using fabricated police reports in furtherance of their obsession to vindictively prosecute Plaintiff.

52. Defendants acting in concert used civil and encouraged collateral criminal process against Plaintiff by filing a May 2018 Contempt hearing in *Schaefer v. Fredin* using fabricated police reports in furtherance of their obsession to vindictively prosecute Plaintiff.

53. Defendants brought coordinated legal filings, in an effort to retaliate and bring vindictive prosecution to deprive Plaintiff of legitimate First Amendment rights, create tabloid fodder, bring baseless and fraudulent criminal charges, and impose irreparable harm to his person and professional livelihood.

54. Defendant Schaefer encouraged collateral criminal process against Plaintiff by filing various knowingly false police reports from March 2014 to present, in an effort to retaliate over a failed blind-date and bring vindictive prosecution to deprive Plaintiff of legitimate rights.

55. Defendants used Lindsey Middlecamp's professional position as an Assistant Minneapolis City Attorney for the collateral purpose of intimidating and/or encouraging an illegal search warrant on Plaintiff's home to remove lawful and peaceful criticisms on his Facebook.

56. Defendants statements concerning Plaintiff in the Petition were false.

57. Defendants filed the false legal action for the collateral purpose of harassing, intimidating, and otherwise tormenting Plaintiff.

58. Defendants filed the false legal action for the collateral purpose of instigating greater attention to their associated media campaign(s) and in order to interfere with Plaintiff Fredin's professional standing.

59. As a result of Defendant's malicious abuse of process, Plaintiff has suffered damages, including but not limited to, damage to his personal and professional reputation, loss of professional privilege and severe emotional distress. Plaintiff Fredin is entitled to actual and punitive damages in an amount to be determined at trial.

## COUNT 3: NON-CONSENSUAL SEXUAL SOLICITATION (MINN. STAT. § 604.31 SUBDISIVION 2)
### (Defendants)

60 Plaintiff Fredin re-alleges and incorporates by references paragraph 1-59 of this Complaint as though fully set forth herein.

61. Defendants have engaged, instigated, and directed a course of extreme and outrageous conduct with the intention of causing, or reckless disregard for causing, emotional distress and fear to Plaintiff, namely the publication and dissemination, confidential email addresses, and publishing of sexual advertisements on the Internet impersonating his identity in an effort to bring actions and/or broadcasting false claims through adult websites thereby sending him countless unsolicited sexual invitations and images to his personal phone and email from people both visiting and making direct contact to the adult profile.

62. Defendant Schaefer admitted that she was "coached" by Defendant Miller within a February 22, 2017 *City Pages* Article. Naturally, this would include being coached, in part, to place sexual advertisements on the Internet as part of a scheme to petition for a fraudulent HRO.

63 As a proximate result of Defendants actions, Plaintiff Fredin has suffered, and continues to suffer severe and extreme emotional distress, entitling him to general, special, actual and punitive damages, in an amount to be proven at trial.

## COUNT 4: INVASION OF PRIVACY BY INTRUSION UPON SECLUSION,



### (Defendants)

64. Plaintiff Fredin re-alleges and incorporates by references paragraph 1-63 of this Complaint as though fully set forth herein. Defendants have engaged, instigated, and directed a course of extreme and outrageous conduct with the intention of causing, or reckless disregard for causing, emotional distress and fear to Plaintiff, namely the publication and dissemination, confidential email addresses, name, and private facts within sexual advertisements on the Internet, publishing of sexual advertisements on the Internet impersonating his identity in an effort to bring actions and/or broadcasting false claims through adult websites thereby sending him countless unsolicited sexual invitations to his personal phone and email from people both visiting and making direct contact to the adult profile.

65. Plaintiff Fredin re-alleges and incorporates by references paragraph 1-64 of this Complaint as though fully set forth herein. Defendants have intentionally intruded upon his confidential space to appropriate his private photographs and outrageously published his confidential photos within *Twitter* smear campaigns and a *City Pages* article and through other third parties as listed in this Complaint. Defendants also listed Plaintiff's work address to intrude upon Plaintiff's professional livelihood.

66. Plaintiff Fredin re-alleges and incorporates by references paragraph 1-65 of this Complaint as though fully set forth herein. Defendants have intentionally intruded upon his confidential space to appropriate his private phone numbers and outrageously published his phone number to multiple third parties as listed in this Complaint.

67. Defendants have intruded, appropriated, and outrageously published his private email addresses within profiles impersonating him on the internet and given them without consent to tabloid reporters.

68. Defendants knew Plaintiff's phone numbers, email addresses, and photos were private.

69. Defendants engaged in a course of conduct to humiliate and be highly offensive to Plaintiff's life. This Court has already called this conduct "extreme and outrageous and not tolerable to a civilized community" within A Report and Recommendation in a companion case.

70. As a proximate result of Defendants actions, Plaintiff Fredin has suffered, and continues to suffer severe and extreme emotional distress, entitling him to actual and punitive damages, in an amount to be proven at trial.

## COUNT 4: NEGLIGENCE
### (Defendants)

71. Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 70 as if fully set forth herein.

72 Defendants owed Plaintiff a duty of care, including a duty to not cause Plaintiff harm.

73. Defendants breached this duty of care by engaging in the actions described above.

On March 30, 2017, Defendant Schaefer, through her agents, surrogates and/or friends, and extending through Defendant Miller were aware that the reports were false, reckless and/or negligent in initiating a false Complaint No: 16122823 concerning Plaintiff Fredin.

74 In March 2017, Defendant Schaefer extending through Defendant Miller was reckless and/or negligent in initiating a false Complaint No: 16253015 concerning Plaintiff Fredin.

75 Defendant Schaefer extending through Defendant Miller was reckless and/or negligent in initiating a false Complaint No: 16122823 and 16253015 concerning Plaintiff Fredin.

76.     Between 2014 to present, Defendant Schaefer, was reckless and/or negligent in initiating irrefutably false report(s) with the Ferguson Township and/or Minneapolis, and/or Saint Paul Police

77.     In March and April 2017, Defendant Schaefer, through her agents, surrogates and/or friends, extending through Defendant Miller were aware that the reports were false, mischaracterized, and a danger to Plaintiff and others.

78      On October 5, 2016, Defendant Schaefer, through her agents, surrogates and/or friends, extending through Defendant Miller had an affirmative duty to protect the Plaintiff. Defendant Schaefer failed to take reasonable actions to attempt to intercept and/or investigate the false police reports the consistent with her affirmative duty to investigate.

79      On January 1st, 2016, the Plaintiff suffered the loss of a relationship that otherwise would have been avoided had Defendant Schaefer not breached her duty of care and had acted in a manner consistent with her affirmative duty to investigate.

80      On April 28th, 2017, Plaintiff suffered a no-knock swat raid directly to gain investigative details surrounding these false reports that would have been avoided had Defendant Schaefer not breached her duty of care and had acted in a manner consistent with her affirmative duty to investigate.

81      On April 28th, 2017, Plaintiff suffered the seizure of all his phones, computers, and other assets for forensic analysis later revealing that he did not perpetrate any of the false and malicious claims brought by Defendant Schaefer extending through Defendant Miller and non-party Lindsey Middlecamp.

82      As a result of the Defendants tortious actions and conduct, Plaintiff seeks damages in an amount commensurate with the injuries and damages sustained by the Plaintiff and his family,

altogether with the costs and disbursements of this action, in an amount to be determined at a jury trial in this action.

83    Defendants negligence was, at the very least, a substantial factor in causing Plaintiff's injuries.

**COUNTS:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
<u>(Defendants)</u>

84    Plaintiff Fredin realleges and incorporates by references paragraph 1-83 of this Complaint as though fully set forth herein.

85    Defendants have engaged, instigated, and directed a course of extreme and outrageous conduct with the intention of causing, or reckless disregard for causing, emotional distress to Plaintiff, namely the publication and dissemination of sexual advertisements and coaching of false legal actions and/or broadcasting false claims through their revenge porn media platforms @CardsAgstHrsmt and a *City Pages* tabloid to cover up their misconduct.

86    Plaintiff suffered the loss of his employment and professional livelihood at the young age of thirty-four (34).

87    Plaintiff suffered through a terrifying no-knock swat raid and loss of all his assets following a terrifying forensic analysis of his phones and computers later revealing no evidence and dismissed in Plaintiff's favor.  The raid was also used to delete any evidence of revenge pornography on Lindsey Middlecamp's @CardsAgstHrsmt Twitter platform.

88    As a proximate result of Defendants actions, Plaintiff has suffered, and continues to suffer severe and extreme emotional distress, entitling him to actual and punitive damages, in an amount to be proven at trial.

**COUNT 6:  CIVIL CONSPIRACY TO DEFAME, NEGLIGENCE, COPYRIGHT INFRINGEMNT, NON-CONSENSUAL SEXUAL SOLICITATION, INVASION**

## OF PRIVACY
### (Defendants)

89. Plaintiff Fredin realleges and incorporates by references paragraph 1-88 of this Complaint as though fully set forth herein.

90. Defendant Schaefer publicly admitted that she was coached by Defendant Miller. Defendant Miller directed Defendant Schaefer to harm Plaintiff Fredin and to falsely petition for an HRO in June 2016 constituting an ongoing conspiracy, express or implied, that was conceived no later than April 24th, 2016.

91. Based on court records, Defendant Schaefer began her fraud on the Court during this period, and ultimately during a late November 2016 evidentiary hearing upon an apparent direction and signal from Defendant Miller. At all times Defendant Schaefer and Defendant Miller acted in concert in carrying out the fraud, negligence, invasion of privacy, false arrest, defamation, malicious prosecution, as described in preceding paragraphs. Both Defendant Schaefer and Defendant Miller have, to varying degrees, participated in planning and carrying out the objectives of the conspiracy, but both are nevertheless liable for the concerted action of their fellow co-conspirator.

92. The objective of the conspiracy was to smear Plaintiff with false statements constituting defamation *per se*.

93. The objective of the conspiracy was to commit false arrest/imprison Plaintiff to cover up revenge pornography.

94. In furtherance of this conspiracy, Defendants undertook actions constituting civil conspiracy to commit the common law torts of defamation, invasion of privacy, negligence, and intentional infliction of emotional distress, by taking unlawful actions against Plaintiff as described in the preceding paragraphs.

95. As a proximate result of this conspiracy, Plaintiff suffered the physical and emotional harm set forth herein.

## ATTORNEY FEES AND COSTS

Plaintiff demands reasonable attorney fees, costs, and fees pursuant to 28 U. S. C. §1927.

## JURY TRIAL DEMANDED

Plaintiff demands a jury on all issues which may be properly tried by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Fredin prays that the Court:

a. Enter judgment in favor of Plaintiff Fredin against Defendants;

b. Enter judgment awarding Plaintiff Fredin compensatory damages on all counts herein to compensate Plaintiff Fredin for Defendant's activity complained of herein and for any injury complained of herein, inclusive of interest and costs, in an amount to be determined at trial;

c. Enter judgment awarding punitive, exemplary, enhanced and/or treble damages as allowed by applicable state and federal law in an amount to be determined at trial;

d. Enter judgment awarding Plaintiff Fredin injunctive relief requiring Defendants to remove sexual advertisements and their defamatory statements concerning Plaintiff Fredin from the Twitter account @CardsAgstHrsmt and *City Pages* tabloid;

e. Enter judgment awarding Plaintiff Fredin his fees and costs reasonably incurred in this action as allowed by applicable state and federal law; and

f. Order such other relief that the Court deems just and appropriate.

Dated: Feb 28, 2019
Maplewood, MN

s/ Brock Fredin

Brock Fredin
1180 7th Ave
Baldwin WI 54002
(612) 424-5512 (tel.)
Brockf12@gmail.com
*Plaintiff, Pro Se*