**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

BROCK FREDIN,

                    Plaintiff,

    --against--

LINDSEY MIDDLECAMP

                    Defendants.

Case No.  17-CV-3058

BROCK FREDIN,

                    Plaintiff,

    --against--

GRACE MILLER,
CATHERINE SCHAEFER

                    Defendants.

Case No.  18-CV-466

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR LIMITED DISCOVERY AND LEAVE TO MODIFY THE OCTOBER 15, 2019 NON-DISPOSITIVE MOTION DEADLINE**

    Plaintiff Brock Fredin ("Plaintiff"), proceeding *pro se*, hereby submits this memorandum of law in support of his motion for limited discovery and leave to modify the October 15, 2019 non-dispositive motion deadline.

**INTRODUCTION**

Plaintiff is fundamentally prejudiced without limited discovery.[1]  Moreover, Plaintiff will be unlikely to secure trial counsel without extremely narrow responsive documents or communication relevant to the identity of the fictitious rape accusation to fully present his case. Plaintiff is seeking the identity of the fictitious accuser, and, most importantly, Defendant Middlecamp's communication with the fictitious account accusing him of rape.  Without knowing the identity of the fictitious account, Plaintiff may be unable to move forward with the case and may be forced to forfeit the opportunity for a full trial on the merits of his claim.  Additionally, Plaintiff seeks any communication or documents passed between Defendant Miller, Schaefer, and Middlecamp.  Defendants are purposefully attempting to skirt disclosure under the rules.  Indeed, Plaintiff seeks to discover communication between Defendant Miller, Schaefer, and Middlecamp that speaks to Defendants admitted scheme to take "[Plaintiff] down way further than [he] imagined.  [Plaintiff] messed with the wrong women."[2]  Plaintiff's substantive claims will suffer, since it would likely be challenging for Plaintiff to prove that many of the specific statements the defendants made were being coached, manipulated, and fabricated by Defendant Middlecamp's anonymous conduct.  This limited discovery will not substantially burden or prejudice Defendants, and, most importantly, purport to prevent the spoliation of evidence related to Defendants alleged scheme described above.  As a result, "the decision to deny discovery may be even more draconian than a dismissal."[3]

---

[1] Admittedly, Plaintiff has no prior experience with discovery matters, burdened as a *pro se* litigant, without funds for counsel, failed at properly issuing previous requests, but limited discovery in compelling two (2) requests per case is necessary to substantiate Plaintiff's claims and certify Plaintiff's ability to fully present his case at trial.

[2] Text message originating from Defendant Schaefer filed in Saint Paul Police Complaint Number 17280176 originally filed on December 7th, 2017

[3] *See* Michael S. Vogel, Unmasking "John Doe" Defendants: The Case Against Excessive Hand-Wringing over Legal Standards, 83 Or. L. Rev. 795, 810 (2004) ("Though the application for discovery is not a motion to dismiss, it has a similar effect because the court rules on the merits

### FACTUAL BACKGROUND

1.   On March 21, 2017 Defendant Middlecamp in the same collection of Tweets accusing Plaintiff of rape stated that she is a "henchman of the feminist totalitarian movement."



(*See* https://twitter.com/CardsAgstHrsmt/status/844180580237365248; https://twitter.com/cardsagsthrsmt/status/823941229079470080?lang=en.)

2.   Between October 17, 2018 and June 12, 2019, Plaintiff was unlawfully, unconstitutionally, wrongfully, and falsely imprisoned for a year in the Ramsey County workhouse for the accusation of editing a public Match.com profile to say "I am so sorry."   On September 29, 2019 the charges were reversed, vacated, the statute used to convict Plaintiff was voided on First Amendment grounds, and Plaintiff was exonerated.   (See June 29, 2019 ltr, *State v. Fredin*, Minnesota Court of Appeals, Case No. A19-0085.)   Plaintiff alleges that the October 17, 2018 executed sentence was at least partially related to Defendants scheme to

---

of the case—despite the fact that the plaintiff faces a higher burden and is deprived of the ordinary protections of the discovery process—and because the plaintiff cannot proceed with its claim if the discovery is denied. . . . A discovery motion . . . in most jurisdictions . . . is not appealable as of right and, at least under Dendrite, would face a higher, abuse of discretion, standard on appeal."); see also *Dendrite Int'l, Inc., v. John Doe*, 775 A.2d 756, 769–70 (N.J. Super. Ct. App. Div. 2001).

"take "[Plaintiff] down way further than [he] imagined" in vindictively persecuting Plaintiff over the fictitious rape claim described above. (*See* Footnote 1.) Plaintiff believes Defendants possess responsive documents and communications that speak to their scheme.

3.   On February 22, 2017 Defendant Middlecamp accused Plaintiff of "rape" by citing a fictitious identity. On February 6, 2017 Defendant Middlecamp stated in the same collection of Tweets accusing Plaintiff of rape: "Plenty of people have reasons **for not using real name at first on apps** but the *app* should know/track users for repeat abuse." (*See* https://twitter.com/CardsAgstHrsmt/status/828778220996616192.) Based on this admission, Plaintiff believes that Defendant Middlecamp knowingly premeditated a fictious anonymous identity in making a rape accusation.



4.   On February 22, 2017 and December 7, 2017 Defendant Schaefer conceded to being "coached" and engaging in a concerted effort with Defendant Miller as described above. Defendants cajoled anonymous fictitious identities or factual accounts to falsely allege that routine telemarketers were Plaintiff in deliberately filing reckless and false police reports,

creating fake profiles online to impersonate Plaintiff, and abusing the state court system. (*See* February 22, 2017 *City Pages* Article Titled "Accused …"; Footnote 1.)

5. Plaintiff filed his first request to extend discovery on September 30, 2019.

6. On or around October 9, 2019, Plaintiff was denied an extension to discovery.

## GOVERNING STANDARD

Anonymous discovery can be conducted if the alleged defamatory statement may refer to the plaintiff explicitly or "by fair implication." *E. Coast Test Prep LLC v. Allnurses.com,* Inc., 309 F. Supp. 3d 644 (D. Minn. 2017.) (holding discovery on anonymous speech in reference to defamation claims exists if the moving party makes prima facie showing.) Discovery can be compelled to uncover the identities of anonymous speakers. *In re Richard L. Baxter,* No. 01-00026-M, 2001 U.S. Dist. LEXIS 26001 (W.D. La. Dec. 19, 2001) (holding that discovery can be conducted on limited anonymous speech if the "reasonable probability" standard is met that the anonymous alleged defamatory statements related to plaintiffs or was malicious")[4]

"When an act may or must be done within a specified time, the court may, for good cause, extend the time." Fed. R. Civ. P. 6(b)(1). Good cause to modify a scheduling order requires a showing of due diligence, *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 609 (9th Cir. 1992). "[T]he party moving to modify a scheduling order … bears the burden of showing "diligence in attempting to meet the order's requirement." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006). To establish good cause, the party seeking the modification of a scheduling order must generally show that even with the exercise of due diligence, they cannot meet the requirement of the order. *Id.* The Court may also consider the prejudice to the party opposing the modification.

---

[4] Plaintiff alleges the statements were used to wrongfully convict Plaintiff and provide for an executed year sentence at the Ramsey County workhouse. As a result, Plaintiff alleges the higher "malicious" standard is met mentioned in *Baxter*.

*Id.* If the party seeking to amend the scheduling order fails to show due diligence the inquiry should end and the Court should not grant the motion to modify. *Zivkovic v. Southern California Edison*, Co., 302 F.3d 1080, 1087 (9th Cir. 2002).

*Winterbauer v. Life Ins. Co. of North America, No.* 4:07CV1026 DDN, 2008 WL 4643942, at *1 (E.D. Mo. Oct. 20, 2008) *Winterbauer*, 2008 WL 4643942, at *4. (Permitting limited discovery only where a plaintiff demonstrates good cause) "When there is evidence of some wrongdoing such as … a material conflict in agency affidavits, *Long v. U.S. Dep't of Justice,* 10 F. Supp. 2d 205 (N.D.N.Y. 1998), limited discovery has been allowed." *Citizens for Responsibility & Ethics in Washington v. Nat'l Indian Gaming Comm'n,* 467 F. Supp. 2d 40, 56 (D.D.C. 2006) (RMC). According to the Ninth Circuit[5], "where the identity of alleged [parties] will not be known … the plaintiff should be given an opportunity through discovery to identify the unknown [parties], unless it is clear that discovery would not uncover the identities …" *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); see also *Wells Fargo & Co. v. Wells Fargo Express Co*., 556 F.2d 406, 430, n. 24 (9th Cir. 1977)  The problem with Defendants ability to produce fictitious anonymous accusations has worsened with the growth of the Internet and Twitter.  As discussed in *Columbia Ins. Co. v. Seescandy.com,* 185 F.R.D. 573, 577 (N.D. Cal. 1999).

> "With the rise of the Internet has come the ability to commit certain tortious acts, such as defamation … entirely on-line. The tortfeasor can act pseudonymously or anonymously and may give fictitious or incomplete identifying information. Parties who have been injured by these acts are likely to find themselves chasing the tortfeasor from Internet Service Provider (ISP) to ISP, with little or no hope of actually discovering the identity of the tortfeasor. In such cases the traditional reluctance for permitting filings against John Doe defendants or fictitious names and the traditional enforcement of strict compliance with service requirements should be tempered by the need to provide injured parties with an forum

---

[5] *Pro Se* non-attorney Plaintiff is aware that 8th Circuit case law is more applicable resolving to this Court's *stari decisis* but cannot expeditiously research given the short timeline and his lack of a ability to procure outside paralegal resources.

[sic] in which they may seek redress for grievances."
The Court takes seriously the discovery deadlines it imposes so as to "secure the just, speedy, and inexpensive determination of every" case. Fed. R. Civ. P. 1. The Court expects parties to adhere to the deadlines imposed by the Court.

## ARGUMENT

First, Plaintiff shows good cause to conduct limited discovery.  Second, Plaintiff is seeking the identity of the fictious rape accuser and communications or documents passed between Defendant Miller, Schaefer, and Middlecamp to carry out their admitted scheme.  (*See* Footnote 1.)

## I.     STANDARD FOR GRANTING LIMITED DISCOVERY

As discussed above, the Court may modify a scheduling order for good cause.  Fed. R. Civ. P. 16(b)(4). *See Hartis v. Chicago Title Ins. Co*., 694 F.3d 935, 948 (8th Cir. 2012)  "[T]he party must show cause to modify the schedule." *Id.* (citing Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see Hartis*, 694 F.3d at 948. "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Hartis*, 694 F.3d at 948 (citation omitted)  *See* also  *American Family Mut. Ins. Co. v. Hollander*, 705 F.3d 339, 348 (8th Cir. 2013))  *James ex rel. U.S. v. Midlands Choice, Inc.*, No. 8:13CV69, 2014 WL 3347871, at *2 (D. Neb. July 8, 2014) (holding good cause existed for modifying a schedule order when moving party acts in good faith and not dilatory)

This standard presupposes that the party moves to modify the schedule prior to expiration of the deadline.[6]  Rule 16 does not govern where, as here, a party moves to extend deadlines after

---

[6] On September 30, 2019, Plaintiff filed his first discovery extension motion prior to the deadline.

the deadline has passed. Rather, Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure provides

that "the court may, for good cause," extend a deadline "on motion made after the time has

expired if the parties failed to act because of excusable neglect." *Stanczyk v. Prudential Ins. Co.*

*of Am.*, No. 15-CV-0097-LTS (N.D. Iowa, 8th Circuit, Jan. 10, 2017.)  Given his circumstances,

Plaintiff has diligently attempted to comply in good faith:

- In May 2019, Plaintiff sent timely initial disclosures
- In June 2019, Plaintiff updated his initial disclosures
- Plaintiff sent slightly untimely interrogatories and requests for production, but timely moved to extend the discovery deadline
- Plaintiff timely responded to Defendants interrogatories and requests for production
- Plaintiff diligently attempted to arrange a reasonable time and place for the September 30, 2019 deposition based on his lack of funds, offering to conduct the deposition remotely, or at alternative times and places.
- On September 30, 2019, Plaintiff timely filed for a motion to extend fact discovery

Rule 6 applies to "any time period specified in [the Federal Rules of Civil Procedure],

[and] in any local rule or court order . . . ." Fed. R. Civ. P. 6 [emphasis added]. The Federal Rules

of Civil Procedure do not define "excusable neglect." In *Pioneer Inv. Services Co. v. Brunswick*

*Associates Ltd. Partnership*, 507 U.S. 380, 392 (1993), the Supreme Court found that "'excusable

neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions

caused by circumstances beyond the control of the movant." In determining whether excusable

neglect exists, a court therefore must consider "all relevant circumstances surrounding the party's

omission." *Id.* See also *Fink v. Union Central Life Ins. Co.*, 65 F.3d 722, 724 (8th Cir. 1995) (citing

Pioneer, 507 U.S. at 395).  These circumstances include:

(1) The danger of prejudice to the non-moving party;

(2) The length of delay and its potential impact on judicial proceedings;

(3) The reason for the delay, including whether it was within the control of the movant; and

(4) Whether the movant acted in good faith.

*Treasurer, Trustees of Drury Industries, Inc. Healthcare Plan and Trust v. Goding*, 692 F.3d 888, 893 (8th Cir. 2012) (citing *Pioneer*). The four factors do not, however, carry equal weight; "the excuse given for the late filing must have the greatest import." *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000).

In evaluating this case, Plaintiff admits that there is little to some prejudice to Defendants. Second, the length of delay is twenty-four (24 days). Indeed, this delay is made narrower when considering that Plaintiff filed his first extension motion prior to the deadline. This prejudice, however, is negated by the extensive discovery Defendants have sought and continue to seek from Plaintiff. "[Defendants] [have] already given implied consent." *American Family Mut. Ins. Co. v. Hollander*, 705 F.3d 339, 348 (8th Cir. 2013)) Because they had actual notice of the discovery by seeking mutual discovery from Plaintiff. *Id.* "Implied consent exists where a party has 'actual notice of an … issue and ha[s] been given an adequate opportunity to cure any surprise ...'" *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1063 (8th Cir. 1997)).

This is mitigated by the fact that Defendants have been served with discovery and are aware of what is required. Third, the reason for delay is as follows:

- Ramsey County District Court Judge Sophia Y. Vuelo illegally sentenced Plaintiff to a year in jail, and, most importantly, sanctioned him $16,000 by forcibly

withdrawing his private counsel against his consent on the eve of sentencing.[7]  This form of financial harassment and forced bankruptcy plays a pivotal role in depriving Plaintiff of access to funds in order to retain counsel to comply with discovery.

- Between October 17, 2018 and June 12, 2019, Plaintiff was illegally jailed for a year.  On September 29, 2018 the state court reversed and vacated the charges. (*See* June 29, 2019 Order, *State v. Fredin*, Minnesota Court of Appeals, Case No. A19-0085.)[8]

- Plaintiff had no prior experience with discovery, is an indigent *pro se* non-attorney litigant, and has diligently sought to retain experienced counsel.  In other words, Plaintiff is not deliberately choosing to be a *pro se* litigant.  Plaintiff however maintains this is not the primary reason for his impaired productivity in discovery matters.

- Upon information and belief, Defendant Middlecamp's former supervisor and colleague, Minneapolis Deputy City Attorney Mary Ellen Heng, used her husband Saint Paul Assistant City Attorney Stephen Heng to unconstitutionally deny Plaintiff's access to any legal material or a law library while illegally placed at the Ramsey County workhouse.  Ramsey County workhouse Captain Trevor Saint-Germain stated to Plaintiff that Mr. Heng ordered him to deny "law library" access.[9]  Several staff at the facilities learning center stated that they were told to deny

---

[7] To preserve the issue, Plaintiff filed an emergency stay motion which was granted by the Minnesota Court of Appeals.    Plaintiff is unaware of any other time in Minnesota jurisprudence where a criminal defendant is granted a stay motion because a vindictive trial court judge removes his counsel against his consent.

[8] Even if Plaintiff were guilty, which he was not, no known state court defendant has ever been given an executed year sentence in jail for a first-time (now proven bogus) misdemeanor.  Given that Defendant Middlecamp was a then-Minneapolis Assistant City Attorney, and Defendants admitted to compromising the state court, it lends credence that the sentence was collaterally used to impact Plaintiff's ability to conduct discovery.  This is particularly so where several judges including Sophia Y. Vuelo (who issued the sentence) have admitted to conducting extrajudicial *ex-parte* communication to prosecutors in an effort to silence Plaintiff's alleged anonymous criticism.

[9] Upon information and belief, Defendant Middlecamp, Attorney Breyer, and Ballinger has so far negligently failed to report Mr. Heng's conduct to the professional responsibility board.  Attorney-Client privilege likely does not cover most of that conduct.

Plaintiff's access to legal materials.  Mr. Saint-Germain would lock the jail wing down (so no other witnesses could hear the statement) and ask to speak to Plaintiff in private in which he described Mr. Heng's comments described above.

- Upon information and belief, Plaintiff's case worker, Robyn Bata, was having an extramarital affair with an inmate named Ricardo Curtis.  Ms. Bata was sending romantic text messages through the jail's kiosk to Mr. Curtis.  Mr. Curtis threatened Plaintiff if he continued to seek a law library or legal material.  Mr. Curtis stated that "he was told" to intimidate Plaintiff.  Mr. Curtis also had knowledge of private conversations between Plaintiff and Ms. Bada where Plaintiff respectfully demanded access to legal materials that no other third party could possibly obtain unless Ms. Bada leaked it directly to Mr. Curtis.   Ms. Bada spent an inordinate amount of private time with Mr. Curtis where she would lock the door. Indeed, Mr. Curtis grabbed Plaintiff by the collar and threw him against a wall to intimidate and deprive Plaintiff of legal material access.  Ms. Bada resigned immediately when Plaintiff was required by statute to mandatory report her misconduct.[10]

- Upon information and belief, Stephen Christie, Michael Head (presentence writer who recommended a bogus year sentence), and Mr. Heng contacted Plaintiff's case worker Robyn Bada to deny Plaintiff's access to legal materials and a law library.  Mr. Christie stated on-the-record during a February 2019 hearing that he contacted Ms. Bada to leak Plaintiff's medical records to the City Attorney's Office in seeking to deny Plaintiff's access to his dying mother.

- At times prior to September 30, 2019 when Plaintiff was paid, Plaintiff has been unable to come up with inconsequential amounts of money for paper copy fees, short car trips, basic food, etc.  Plaintiff took loaned gas money to drive to Milwaukee, Wisconsin.

- Prior to September 30, 2019, Plaintiff has been homeless and living in his car until he was paid.

---

[10] Upon information and belief, Plaintiff's case worker, Robyn Bata, was having an extramarital affair with an inmate named Ricardo Curtis.  Ms. Bada was sending text messages through the jail's kiosk to Mr. Curtis.  Ms. Bata resigned immediately when Plaintiff was required to mandatory report her misconduct.

- To make matters worse, Plaintiff's mother died on May 18, 2019.[11]  This happened during the core of discovery.  Plaintiff has spent weeks and months unable to do anything except cry.  Even thinking of his mother brings tears to his eyes.  Plaintiff underestimated the impact this death would have on his life.  It is Plaintiff's honest belief that Defendants actions in depriving him of access to his mother by illegally jailing him coupled with her death has substantially prohibited Plaintiff's productivity, and, most importantly, likely the primary reason in Plaintiff's impaired productivity in discovery matters.  Given Defendants actions, Plaintiff has been unable to secure health insurance or simple gas monies to attend grief counseling or counseling related to the emotional distress they have inflicted on Plaintiff.  Defendants, through their actions, forced Plaintiff to listen to his mother die over the phone and deprived him of direct access to be with her while she passed.  Defendants actions have since entered a threshold into being unspeakably horrible.

- Plaintiff's ability to retain counsel, seek employment to fund retainers, has been exasperated by Defendants continued actions to anonymously smear him on the Internet.  In March 2019, while Plaintiff's mother was dying, Defendants created new absolutely false content on the Twitter account @TonyWebster.  It bears nothing that Mr. Webster is a good friend of the Middlecamps and knows Defendant Middlecamp's husband where both work as software developers (which is also Plaintiff's career and why Plaintiff knows this).  While Plaintiff bereaved the loss of his mother, Defendants sought to selectively express their First Amendment right only to prevent Plaintiff's employment.  What kind of person smears someone while defenseless and they're grieving the loss of their loved one?  A bully:  Defendant Middlecamp and her husband.  It's one thing to have a give-and-take discussion, but it's another to rattle off actions to destroy other people and impairing that individual's ability to defend themselves.

- Plaintiff has been attempting to rebuild his life through work in Milwaukee, Wisconsin which has distracted Plaintiff's productivity in discovery matters.

---

[11] https://www.legacy.com/obituaries/twincities/obituary.aspx?n=kathleen-m-fredin&pid=192946599&fhid=6816

- Defendants have done everything in their power to stall discovery including filing new police reports over Internet comments (purportedly refuting their smear campaign) that never existed misrepresenting the comments as new when they were from years ago. On June 18, 2019 to June 24, 2019, Defendant Miller filed yet another false police report alleging she saw a comment online with her name. Defendant Miller knowingly filed this police report while Plaintiff bereaved the loss of his mother and during discovery in this matter. Indeed, Miller filed this claim exactly six (6) days following Plaintiff's release from jail on June 12, 2019 in what appears to be a blatant attempt to unjustifiably re-jail him. On June 19, 2019 the Minnesota Supreme Court struck down the statute used to convict Plaintiff on First Amendment grounds. Charges were again declined. The Saint Paul Police officer said that only at that point – when Miller was told charges were again declined - did Defendant Miller get "upset"[12] and she then admitted the alleged comment was from years ago despite previously mischaracterizing the comment as completely new. Indeed, Defendant Miller's clear intent was to prohibit discovery and prevent Plaintiff from going forward with his life. This is particularly malicious considering the voiding of the same statute (used once again on June 18, 2019 to try and illegally convict Plaintiff) a day before the statute was struck down.
- Defendant Middlecamp has filed new state court actions against Plaintiff. Specifically, in June 2019, she filed for a new harassment restraining order in order to distract Plaintiff's attention and redirect his energy.

Fourth, Plaintiff argues that he has acted in good faith to file discovery extensions motions prior to the discovery close deadline dated October 1, 2019 and non-dispositive motion deadline dated October 15, 2019. Plaintiff was unable to fully research this limited discovery motion prior to October 15, 2019. Plaintiff could have filed something boilerplate but the significance of limited discovery depends on a thoroughly researched brief with surgically pin-point case law. As a non-

---

[12] Upon information and belief, Defendant Miller likely became hostile. Plaintiff wants to move forward in his life but is consistently being forced to answer Defendant Miller's attacks.

attorney, non-routine filer, Plaintiff also has to spend *more* time reviewing local rules and procedures prior to filing to ensure he was in complete compliance prior to filing.

*Winterbauer v. Life Ins. Co. of North America, No.* 4:07CV1026 DDN, 2008 WL 4643942, at *1 (E.D. Mo. Oct. 20, 2008) *Winterbauer*, 2008 WL 4643942, at *4. (Permitting limited discovery only where a plaintiff demonstrates good cause) *Campbell v. Baylard, Billington, Dempsey & Jensen, P.C.* Case No. 4:17-cv-02390-JAR (E.D. Mo. Jul. 10, 2018) (permitting limited discovery when good cause exists) *Ford v. Elsbury*, 32 F.3d 931 (5th Cir. 1994) (limited discovery allowed)  Lastly, "[w]hen there is evidence of some wrongdoing such as … a material conflict in affidavits, *Long v. U.S. Dep't of Justice,* 10 F. Supp. 2d 205 (N.D.N.Y. 1998), limited discovery has been allowed." *Citizens for Responsibility & Ethics in Washington v. Nat'l Indian Gaming Comm'n,* 467 F. Supp. 2d 40, 56 (D.D.C. 2006).

## II.     DENYING LIMITED DISCOVERY COULD ARGUABLY BE A DISPOSITIVE MOTION TRIGGERING THE DISPOSITIVE DEADLINE

As described above, denying any discovery is "more draconian than dismissal." (*See* Footnote 3.)  *See* also *Dendrite Int'l, Inc., v. John Doe*, 775 A.2d 756, 769–70 (N.J. Super. Ct. App. Div. 2001). Indeed, this could arguably trigger the more lenient dispositive motion deadline.

## III.     LIFTING THE VEIL FROM DEFENDANT MIDDLECAMP'S ANONYMOUS ACCUSATION ENGINE

"There is no judicial consensus about what test to apply when plaintiffs attempt to obtain the identity of an anonymous Internet user during discovery in an online defamation case." (*See Washington Journal of Law, Technology and Arts, Volume* 7, Issue 2, Fall 2011. https://digital.lib.washington.edu/dspace-law/bitstream/handle/1773.1/1066/7WJLTA75.pdf?sequence=4)  Several competing theories:

- *E. Coast Test Prep LLC v. Allnurses.com,* Inc., 309 F. Supp. 3d 644 (D. Minn. 2017.) (holding the defamatory statement may refer to the plaintiff explicitly or "by fair implication" where the moving party must make a *prima facie* showing necessary to overcome First Amendment burdens.)

- *Dendrite Int'l., Inc. v. Doe* No. 3, 775 A.2d 756 (N.J. Super. 2001) (describing a four-part test.)[13]

- *In re Anonymous Online Speaker*s,661 F.3d 1168 (9th Cir. 2011.) (Anonymous Online's standard considers the nature of the speech as the primary driving force in balancing the rights of anonymous speakers in discovery disputes.)

- *In re Richard L. Baxter,* No. 01-00026-M, 2001 U.S. Dist. LEXIS 26001 (W.D. La. Dec. 19, 2001) (In applying the reasonable probability standard, the *Baxter* court emphasized that the context of the statements in a given case may provide an indication of the possibility of malicious intent that can only be further developed through discovery and trial testimony.)

- *Lefkoe v. Jos. A. Bank Clothiers*, Inc.,577 F.3d 240 (4th Cir. 2009) (In *Lefkoe*, the Fourth Circuit permitted the deposition of an anonymous speaker in a securities-fraud suit. The court utilized an extremely lenient disclosure standard, reasoning that once the plaintiff carries his or her burden and shows that the information held by the Doe Client "could be relevant and useful" to the defense of the litigation, the governmental interest in providing a fair trial is served by unveiling the identity of the anonymous speaker.)

- *Doe v. Cahill*, 884 A.2d 451, 459 (Del. 2005) (describing a rigorous process to uncover anonymous identities)
- *Signature Mgmt. Team, LLC v. Doe*, 876 F.3d 831 (6th Cir. 2017) (like the presumption of open judicial records, there is a presumption in favor of unmasking anonymous parties when judgment has been entered for a plaintiff.)[14]

As described above, Plaintiff is seeking extremely limited discovery to compel Defendants

to **identify the anonymous individual or account** making the fabricated rape accusation and

evidence of Defendant Miller and Schaefer's admitted scheme:

---

[13]      *See*            https://www.ballardspahr.com/-/media/files/bioattachments/tobin-publications/unmasking-internet-posters-the-circuit-rider-nov-2015.pdf?la=en&hash=315DE63714544AF04690EB92967325A7

[14] This case was related to copyright infringement, however, it intersected the idea of open judicial records at issue by Defendants arguments of publicizing the original state court *Miller v. Fredin* appellate opinion.  And, using that decision to make false rape accusations from anonymous accounts.

*Fredin v. Middlecamp,* 17-CV-3058
<u>Interrogatory No. *</u>

Identify the unknown individual or account behind the February 22, 2017 false rape claim.

<u>Interrogatory No. 6</u>

Identify all communications You had, including identifying the individuals with whom You had the communications, the dates, times, and locations that formed that basis of Your February 22, 2017 Twitter post on the @CardsAgstHrsmt Twitter account in which You stated: "The power of sharing. Within hours of the stalking post going up, a rape survivor forward. He remains free. (Shared w/ her permission)"

<u>Requests for Production No. 2 through 5</u>

2) All documents evidencing your knowledge of the false rape claim posted on @CardsAgstHrsmt concerning Plaintiff.
3) All communication evidencing your knowledge of the false rape claim posted on @CardsAgstHrsmt concerning Plaintiff.
4) All communication with the unknown individual behind the false rape claim concerning Plaintiff.
 5) All documents with the unknown individual behind the false rape claim concerning Plaintiff

*Fredin v. Miller,* 18-CV-466
<u>Interrogatory No. 1</u>

Identify each and every person with whom You have had a communication with concerning or relating to Plaintiff Brock Fredin and describe those communications, including the date and location of where such communication took place, the subject matter of each communication and the name of each person present at the time of such communication.

*Fredin v. Miller,* 18-CV-466
<u>Requests for Production No. 2-5</u>

2) All communications between You and Grace Miller or Catherine Schaefer concerning or relating to Brock Fredin.
3) All documents between You and Grace Miller or Catherine Schaefer concerning or relating to Brock Fredin.
4) All communications between You and Lindsey Middlecamp concerning or relating to Brock Fredin.
5) All documents between You and Lindsey Middlecamp concerning or relating to Brock Fredin.

## <u>Applicability to *Fredin v. Middlecamp/Miller*</u>

**First, Plaintiff has made a "prima facie** showing of the claim for which the plaintiff seeks

the disclosure off the anonymous speaker's identity."  The initial burden rests on the party seeking

discovery. *In re Anonymous Online Speaker*s,661 F.3d 1168 (9th Cir. 2011.) *See* also *E. Coast Test Prep LLC v. Allnurses.com,* Inc., 309 F. Supp. 3d 644 (D. Minn. 2017.)

*Fredin v. Middlecamp*, 17-CV-3058



**CardsAgstHarassment** @CardsAgstHrsmt · 22 Feb 2017
Replying to @CardsAgstHrsmt
The power of sharing. Within hours of the stalking post going up, a rape survivor comes forward. He remains free. (Shared w/ her permission)

*Fredin v. Miller*, 18-CV-466



Listen Brock, I have a hilarious secret for you. Lindsey and Clydesdale have a mutual bestie and have been hanging out for years. You are going down way further than you imagined. You messed with the wrong women.

7:03 PM

To establish a prima facie case of defamation, the plaintiff must show: (1) the defamatory statement is "communicated to someone other than the plaintiff," (2) the statement is false, and (3) the statement "tend[s] to harm the plaintiff's reputation and to lower [the plaintiff] in the estimation of the community." *Bahr v. Boise Cascade Corp*., 766 N.W.2d 910, 919-920 (Minn. 2009) (quoting *Stuempges,* 297 N.W.2d at 255). At the motion to dismiss pleading stage, these elements were met by this Court in each case *Fredin v. Miller/Middlecamp*, 17-CV-3058, 18-CV-466.

**Second, good cause exists when narrow discovery sought**: *Winterbauer v. Life Ins. Co. of North America, No*. 4:07CV1026 DDN, 2008 WL 4643942, at *1 (E.D. Mo. Oct. 20, 2008) *Winterbauer*, 2008 WL 4643942, at *4. (Permitting limited discovery only where a plaintiff demonstrates good cause) *N. Atl. Operating Co., Inc. v. JingJing Huang*, 194 F. Supp. 3d 634, 637 (E.D. Mich. 2016) ("found good cause for granting discovery when the true identities of the defendants are unknown, …the scope of the discovery sought is narrow, and when … discovery

would substantially contribute to moving the case forward.") *Barrette Outdoor Living, Inc v. Does,* No. 1:16 CV 914, 2016 WL 1588672, at *2 (N.D. Ohio Apr. 20, 2016) ("Courts consider several factors in determining if good causes exists, including: (1) the danger that the information sought will be lost or destroyed, (2) whether the discovery would substantially contribute to moving the case forward, and (3) the scope of the information sought.");

Defendants used the false rape accusation to induce unconstitutional charges by improperly using their powerful government positions and instantiated the execution of a year jail sentence (since reversed and vacated).[15]  Because this false rape accusation was used to apply pressure by leveraging the media including @CardsAgstHrsmt against the Saint Paul City Attorney's Office in bringing these unconstitutional charges described above, Plaintiff alleges the anonymous speech described above is in fact malicious.  Indeed, some courts have recognized that the specific content of online speech alleged to be defamatory can be probative of whether an anonymous party acted with actual malice.  *In re Richard L. Baxter,* No. 01-00026-M, 2001 U.S. Dist. LEXIS 26001 (W.D. La. Dec. 19, 2001) (explaining that particular statements of hyperbole can evidence an "underlying animus" from which a defendant's actual malice can be inferred).  "A 'screen name' is an identity created by a user. It may or may not bear any correlation to the user's real name." *United States v. Grant*, 218 F.3d 72, 73 n.1 (1st Cir. 2000).  On February 6, 2017, Defendant

---

[15] Defendant Miller and Plaintiff attended the play *To Kill a Mockingbird together* at the Guthrie Theatre sometime during September 2015.  A play adapted off the book about a false rape accusation and perverted justice.  Plaintiff fell asleep, woke up just as the theatrical version of the jury's decision to convict Tom Robinson for a crime he clearly did not commit which plagues Gem (and many readers) as an intolerable miscarriage of justice.  This was a striking juxtaposition when Defendant Miller perjured herself to convict Plaintiff on October 17, 2018 and took a year of his life.  Denying limited discovery would only contribute to an intolerable miscarriage of justice described here.

Middlecamp stated that "[p]lenty of people have reasons for not using real names at first on apps …":



Furthermore, On February 22, 2017, Defendant Middlecamp adopts the anonymous identity by stating "a rape survivor comes forward.  He remains free.  (Shared w/ her permission)":



Finally, on March 21, 2017, Defendant Middlecamp alleges in the same collection of Tweets that she is a "henchman of the feminist totalitarian movement" fundamentally showing her personal animus and state of mind.



On April 27, 2017, Plaintiff was charged and vindictively prosecuted.  Upon information and belief, on December 31, 2016, Defendant Miller makes a very thinly veiled assertion evidencing her attempts to vindictively place Plaintiff in jail and wrongfully convict him.  Defendant Miller mentions "sufferings are misfortunes" and "taken prisoner" as a way to taunt Plaintiff:[16]

---

[16] Defendant Miller typically reverts to citing historical passages in famous novels to cryptically encode her petty online taunts.  Defendant Miller has a PhD in English Literature.



**Grace Miller** updated her status.
December 31, 2016 · 🌐

"They say sufferings are misfortunes," said Pierre. "But if at once this minute, I was asked, would I remain what I was before I was taken prisoner, or go through it all again, I should say, for God's sake let me rather be a prisoner and eat horseflesh again. We imagine that as soon as we are torn out of our habitual path all is over, but it is only the beginning of something new and good. As long as there is life, there is happiness. There is a great deal, a great deal before us" (War and Peace).

Happy new year, everyone!

👍 18                                           2 Comments  1 Share

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant limited discovery on two (2) discovery requests in each unique case discussed above.


Dated: October 22, 2019


                                    s/ Brock Fredin

                                    _____

                                    Brock Fredin
                                    Baldwin, WI
                                    (612) 424-5512 (tel.)
                                    brockfredinlegal@icloud.com
                                    *Plaintiff, Pro Se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 24, 2019, I filed the foregoing with the Clerk of Court

through the CM/ECF system which will automatically send electronic mail notification of such filing

to the CM/ECF registered participants as identified on the Electronic Mail Notice List.


s/ Brock Fredin

_____

Brock Fredin
Milwaukee, WI
(612) 424-5512 (tel.)
brockfredinlegal@icloud.com
*Plaintiff, Pro Se*