UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Brock Fredin,<br><br>    Plaintiff,<br><br>v.<br><br>Grace Elizabeth Miller, and<br>Catherine Marie Schaefer,<br><br>    Defendants. | Case No. 18-cv-466 (SRN/HB)<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS GRACE MILLER AND CATHERINE SCHAEFER** |

## INTRODUCTION

Plaintiff Brock Fredin's opposition to summary judgment is consistent with every filing he has made in this action as well as the numerous filings he has made in related lawsuits – it demonstrates that Fredin desires to use the Court docket as a tool to harass, embarrass and vilify his victims, their counsel[1], this Court, and anyone who holds Fredin accountable for his actions. His vile credos deserve admonishment and his filings reviewed and approved by this Court - or any Court he seeks to submit a filing- before being accepted and offered for public viewing.

---

[1] Fredin has attempted to create a false narrative around Defendants' counsel that includes allegations that he has changed his name to "escape allegations that he is related to Auscwitz [sic] guard Johann Breyer," and that he has "participated in the attempted violence, torture, and assault by engaging in extrajudicial communication with Saint Paul Police Officers David McCabe, Sarah Nasset, and Tara Patet." Counsel has no known lineage that traces back to any Auschwitz guard bearing a similar name and he has never communicated with Saint Paul Police Officer David McCabe, Sarah Nasset, or Tara Patet. (Sec. Breyer Decl. ¶ 2.) Counsel uses the abbreviated "Jon", a variation of "Johann", because that is what he has been called since childhood. *Id*. The use of K. Jon Breyer simply makes it easier for clients, attorneys, and the Court to identify him without the confusion of using a name that is seldom used. *Id*. Counsel is extremely proud of his birth name and is honored by Fredin's use of it.

4822-6729-0569.1

Fredin's opposition to Defendants summary judgment motion does not offer a single piece of evidence or testimony that supports Fredin's claims, it is simply a rambling conspiracy laden diatribe, heavy on inuendo and lacking in substance.

## ARGUMENT

### I. Defamation *Per Se*

Fredin claims that he "discovered new evidence that negates and undermines Defendants assertion that the statements were 'taken verbatim from public court records and, **almost entirely**, from an affidavit … filed seeking an HRO." (Doc. 180 p. 11) *(emphasis original)*. The "new evidence" Fredin claims he discovered is (1) an email Defendant Miller sent to Sergeant David McCabe that included the City Pages' reporter's email (Doc. 181; Fredin Decl. Ex. G.); and (2) that Lindsey Middlecamp (not a defendant in this case) is a Facebook friend of the City Pages reporter.  Of course, none of this "evidence"  evidences anything other than Miller and Middlecamp were aware of the City Page's reporter and had a means to contact him.

What Fredin apparently fails to understand is that he must prove through evidence and not mere recitations to his pleadings that Defendants made "(a) a false and defamatory statement about the plaintiff; (b) in unprivileged publication to a third party; (c) that harmed the plaintiff's reputation in the community." *Weinberger v. Maplewood Review*, 668 N.W.2d 667, 673 (Minn. 2003). Fredin cannot establish that any of the alleged statements are defamatory, that they are not privileged, or that his reputation was harmed by them and caused damages. All Fredin is able to offer this Court in defense of Defendants' summary judgment motion are more insults.

2

Fredin also attempts to cite cases from foreign jurisdictions claiming that they "establish Plaintiff's strong likelihood of success to survive summary judgment on defamation claims," but then fails to articulate how those cases help him or how his opposition to summary judgment is deserving of a similar outcome. A review of those cases, which are not binding precedent on this Court, finds no support for Fredin's contention. *See Moritz v. Town of Warwick*, No. 15-CV-5424 (NSR), 2017 WL 4785462, at *7 (S.D.N.Y. Oct. 19, 2017)(finding that defendant provided deposition testimony that created a material issue of fact that warranted the denial of summary judgment); *Daly v. New York Life Ins. Co.*, 2017 WL 4349032, at *6 (S.D. Ohio Sept. 30, 2017)(applying Ohio law regarding special damages); *Wenz v. Becker*, 948 F. Supp. 319, 324 (S.D.N.Y. 1996)(review of evidence found a disparity and a possible omission that could have led the reader to a false impression); *Metcalf v. KFOR-TV, Inc.*, 828 F. Supp. 1515, 1525 (W.D. Okla. 1992)(Defendants admitted making the offending statements, but defended them on the grounds that they did not convey a defamatory meaning). Here, unlike the cases Fredin cites, he has provided zero deposition testimony, is not seeking special damages under Ohio law, and has not proven that Defendant made any defamatory statements.

Moreover, Fredin fails to address Defendants privilege arguments. Privilege is a recognized defense to a defamation action in Minnesota. *Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302, 306 (Minn. 2007). A qualified privilege grants immunity if the privilege is not abused and defamatory statements are publicized in good faith and without malice. *Id*. As demonstrated in Defendants' opening brief, Defendants are not the

3

4822-6729-0569.1

authors of the City Pages article and they did not publish the alleged statements. Further, all of the statements attributed to them in the article are not statements made by them to the reporter, but rather are statements taken verbatim from the affidavit of Defendant Schaefer filed seeking an HRO. (Doc. 173; Breyer Decl. Ex. 2). Statements made in the context of a harassment proceeding, and those made by affidavit in support of those proceedings, are afforded an absolute privilege and are not grounds for a defamation claim. *Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302, 306 (Minn. 2007).

Furthermore, statements that are substantially true that a reasonable person could find to be a "supportable interpretation" of an ambiguous set of circumstances are not actionable because they are not provably false. *Hunter v. Hartman*, 545 N.W.2d 699, 707 (Minn. Ct. App. 1996). Fredin seems to be offended by the characterizations of his misconduct in the City Pages' article, but simply because Fredin disagrees with the statement, does not make it defamatory. *Id.* ("A commentator who advocates one of several feasible interpretations of some event is not liable in defamation simply because other interpretations exist. Consequently, remarks on a subject lending itself to multiple interpretations cannot be the basis of a successful defamation action because as a matter of law no threshold showing of "falsity" is possible in such circumstances.") As demonstrated by the article, Defendants expressed truthful feeling about their interaction with Fredin and recounted their experience. The fact that Fredin disagrees with their version of events, does not give rise to a defamation claim.

Statements of opinion are not defamatory under Minnesota law. *Hunt v. Univ. of Minn.*, 465 N.W.2d 88, 93-94 (Minn. Ct. App. 1991). Thus, statements that certain of

Fredin's messages were "sexually suggestive" continued "for weeks" and were "overwhelming" are noting more that statements of opinion. These statements of opinion are no different than the statements this Court has already ruled are statements of opinion. (Doc. 38 at p.11) (finding that Schaefer's statements characterizing Fredin's texts as "odd," "intense," and "haunting," and stating that meeting him would not be in her "best interests," were statements of opinion.)

Because the alleged defamatory statements do not contain a defamatory meaning, are statements of opinion, are protected by an absolute privilege, are truthful expressions of what occurred and did not proximately cause harm to Fredin, Fredin's defamation claim is not sustainable and must be dismissed.

## II.   Abuse of Process

Fredin claims in opposition to summary judgment that documents received via a FOIA request evidences that "Defendants rigged proceedings by engaging in extrajudicial communication through improper use of backchannels." (Doc. 180 p. 15.) Fredin claims this evidence is attached as Exhibits A-U to his Declaration, but all one finds there are emails, text messages, a police report and a Court order that evidence nothing, much less a grand conspiracy to abuse state court harassment proceedings. (Doc. 181.) This Court has previously dismissed a similar abuse of process claim alleged by Fredin against the same Defendants in *Fredin v. Clysdale*, No. 18-CV-0510 (SRN/HB), 2018 WL 7020186, at *11 (D. Minn. Dec. 20, 2018)(concluding that neither Miller nor Schaefer used the judicial process to achieve an outcome outside the scope of the proceedings).

5

4822-6729-0569.1

In *Fredin v. Clysdale,* Fredin alleged that Defendants Miller, Schaefer, Middlecamp, and Referee Clysdale engaged in an unlawful conspiracy and committed numerous tortious acts against him in a social media smear campaign. 2018 WL 7020186, at *3. He asserted that Sergeant McCabe committed unconstitutional and other unlawful actions in executing a search warrant at his home. *Id*. Fredin alleged that these four Defendants conspired to obtain information for the purpose of publicly disparaging and defaming him on Twitter and other social media, forcing him to expend large amounts of money to defend himself, and generating a basis for criminal charges. *Id*. The alleged object of the conspiracy was to interfere with the judicial process. Among other claims, Fredin sought an abuse of process claim against Middlecamp, Schaefer, Miller, and Sergeant McCabe, contending that these Defendants wrongfully instigated a criminal action, *State v. Fredin*, Case No. 62-cr-17-3156 (Ramsey Cty. Dist. Ct.), against him. *Id*. at *10 He also alleged that Sergeant McCabe abused process in obtaining and executing the search warrant in April 2017, because Sergeant McCabe failed to disclose an ulterior purpose in obtaining the warrant. *Id*. The allegations in that case are identical to the allegations is this case.

Based on the same allegations and evidence (or lack thereof) as presented here, the Court dismissed the claim as it determined that "Middlecamp, Schaefer, Sergeant McCabe, and Miller participated in the judicial process for the purpose of charging and convicting Fredin of the crime of stalking, and Fredin was in fact charged and convicted with that crime." *Id*. (citations omitted.) The same result applies equally here. Fredin has failed to adduce any evidence that Defendants sought and obtained HROs for an

6

improper purpose. His failed attempt mischaracterize documents produced through his FOIA request does not change the outcome. Fredin's very pleadings in this matter underscore the need for his victims, including Defendants, to secure HROs. Fredin cannot sustain a claim of abuse of process.

### III. Nonconsensual Sexual Solicitation

Fredin alleges that Miller and Schaefer impersonated him, used his email address, and created false profiles of him on an adult website, which caused him to receive unsolicited sexual solicitations. (*See* Doc. 180 p. 19.) However, Fredin has not provided any evidence that Defendants did anything that he has alleged. Instead, Fredin simply cites back to his Amended Complaint as if mere allegations constitute evidence establishing wrongful conduct. Fredin had the entire discovery period to subpoena IP addresses and the websites were the profiles were created in order to collect evidence as to who may have created the profiles. Fredin also had ample time to contact and subpoena persons who contacted him through the purportedly false profiles to establish that the messages did indeed constitute unsolicited sexual solicitations. Fredin did none of these things, because he knows his claims are bogus and that discovery would have only confirmed that Miller and Schaefer were not the ones who created the profiles.

In sum, Fredin has no evidence of who created the profiles, and he has produced no evidence that the profiles invited, encouraged, or solicited sexual acts. He cannot maintain his claim under Minn. Stat. § 604.31, subd. 2.

### IV. Negligence

Fredin makes little effort to defend his claim and provides no evidence in support of it. Fredin's negligence claim is simply a regurgitation of his conspiracy theories, under the heading "Defendants had duty of care not to unreasonably harm Plaintiff." (Doc. 180 p. 21.) Fredin again claims that Defendants made false police reports, even though those reports led to the issuance of HROs in Defendants' favor and resulted in a criminal conviction. *See State v. Fredin*, Case No. 62-cr-17-3156 (Ramsey Cty. Dist. Ct.). Fredin also tries to claim those proceedings were rigged. (Doc. 180 p. 21.) Fredin failed to present those arguments on appeal and he cannot attempt to relitigate those matters in Federal Court. In any event, Fredin has failed to establish that his victims owe him a duty of care not to prosecute his misconduct or that their actions seeking protection from the Court amounts to negligence.

### V. Intentional Infliction of Emotional Distress

Fredin avers he experienced severe and extreme emotional distress as a result of Defendants' alleged actions. (AC ¶ 88.) However, Fredin admittedly did not seek treatment for his claimed IIED or obtain any medical records or a medical opinion that he has experienced emotional distress, much less that the purported IIED was a result of Defendants conduct. (Doc. 188 p. 23.)

Minnesota law approaches IIED cautiously, keeping it "'sharply limited to cases involving particularly egregious facts,'" and requiring a "'high threshold standard of proof'" to submit the claim to the jury. *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003). Here, Fredin has not met that high threshold, as he had provided no

evidence of IIED. Additionally, he has failed to establish an underlying tort to sustain an IIED claim. Fredin's claim must be dismissed.

## VI. Civil Conspiracy

Fredin claims that Miller and Schaefer conspired to "smear" Fredin and "commit false arrest/imprison Plaintiff to cover up revenge pornography." (AC ¶ 92-93.) Claims of false arrest and imprisonment were removed from Fredin's Amended Complaint and the Court dismissed the invasion of privacy claim [Doc. 38][2]. Consequently, the alleged conspiracy focuses only on the alleged defamation and negligence by Defendants.

A explained above, Fredin has not successfully proved an underlying tort upon which the alleged conspiracy was based and, for that reason alone, the claim should be dismissed. Even if an underlying tort claim survives this motion, the conspiracy claim still fails as a matter of law. A plaintiff alleging a conspiracy must establish sufficient facts that would permit a reasonable jury to find that the parties to the alleged conspiracy reached an agreement to violate the plaintiff's rights. This Fredin has failed to do.

Here, there is no evidence that Defendants entered into a conspiracy with one another. The record reflects only that Defendants were both victimized by the same serial harasser and provided emotional support to one another as they suffered through the horrible experience – certainly not the grand conspiracy Fredin has conjured up in his head.

---

[2] Fredin attempts to breathe new life into the false arrest and imprisonment allegations by addressing it in his brief. However, these claims do not exist in the operative pleading and Fredin's memorandum of law should not be construed as a motion to amend that pleading. In any event, like Fredin's other claims, he provides no proof of false arrest or false imprisonment by Defendants.

In the absence of any evidence establishing an improper conspiracy, Fredin's claim must be dismissed.

## CONCLUSION

For all the foregoing reasons, Fredin's Amended Complaint must be dismissed with prejudice.

Dated:   September 3, 2020          **KUTAK ROCK LLP**


By  */s/  K. Jon Breyer*
K. Jon Breyer (#302259)
60 South Sixth Street
Suite 3400
Minneapolis, MN 55402
Telephone: (612) 334-5057
jon.breyer@kutakrock.com

***Attorneys for Defendants Grace Elizabeth Miller and Catherine Marie Schaefer***