## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

BROCK FREDIN,

                    Plaintiff,                      Case No.  17-CV-3058

    --against--

LINDSEY MIDDLECAMP,


                    Defendants.


BROCK FREDIN,

                    Plaintiff,                      Case No.  18-CV-466

    --against--

GRACE MILLER,
CATHERINE SCHAEFER,


                    Defendants.


Plaintiff Brock Fredin ("Plaintiff") proceeding *pro se*, hereby alleges the following against Defendant Lindsey Middlecamp ("Defendant Middlecamp"), Defendant Grace Miller ("Defendant Miller"), and Defendant Catherine Schaefer ("Defendant Schaefer"), collectively ("Defendants"):

### <u>MEMORANDUM OF LAW IN SUPPORT OF CROSSS SANCTIONS AND OPPOSITION TO TRO</u>

Plaintiff Brock Fredin ("Plaintiff"), proceeding *pro se*, hereby submits this memorandum of law in opposition to Defendant's temporary restraining order ("TRO") and in support of his motion to *sua sponte* cross sanction within the Court's inherent authority under Rule 11 imposed on Defendants and attorney Karl Johann Breyer ("Attorney Breyer"):

## INTRODUCTION

Defendants have acted in concert to rig multiple state court and federal lawsuits by deploying false, fabricated, and absurd propaganda on the Internet used to disparage Plaintiff and his previous counsel attorney Nathan Hansen.  Defendant Middlecamp published over fifty (50) tweets, including a fabricated rape allegation, re-tweeted and viewed by hundreds of thousands of people where this Court has said that it would not infringe on Defendant Middlecamp's First Amendment rights.[1]  (*See* Fredin Decl. November 5, 2020 Ex. B.)  *Fredin v. Middlecamp*, Case No. 17-3058 (SRN/FLN) (D. Minn. Apr. 13, 2018)  During the pendency of *Fredin v. Middlecamp* and *Fredin v. Miller*, Defendants acted in concert to continue harassing Plaintiff (while he was defenseless) with new Twitter campaigns on an account named @Webster associated with Defendant Middlecamp's husband David Middlecamp.  Defendant's *pro bono* lawyer now comes to this Court unethically requesting relief not on behalf of his supposed clients in this action but on behalf of himself and twenty-two (22) non-parties that he does not *even* represent.  It is clear that Attorney Breyer could care less about Defendant Schaefer or Miller and is exploiting this lawsuit for his own benefit.  The October 12, 2020 TRO motion is frivolous where Defendant and Attorney Breyer have no standing to ask for such relief on behalf of himself and twenty-two (22) non-parties that he does not represent and would otherwise violate Plaintiff's First Amendment rights to engage in constitutionally protected criticism.  Indeed, Attorney Breyer and Kutak Rock is financing Defendants legal expenses in concert with numerous other firms including Robins Kaplan not to help Defendant Miller or Schaefer.  Instead, he is using this litigation to harass

---

[1] Magistrate Judge Bowber stated during an April 2019 status conference that she would not infringe upon Defendant Middlecamp's First Amendment rights.  Plaintiff sought access to the transcript by first determining if it existed but none such exists.

Plaintiff on behalf of Defendant Middlecamp who is a Special Assistant United States Attorney in an effort to curry favor with the United States Attorneys' Office.

If Defendants or Attorney Breyer want to move for a temporary injunction on these websites, they need to file a personal lawsuit where they name themselves as a Plaintiff or a party. Defendants and Attorney Breyer is trying to short circuit this action in order to gain relief they are simply not entitled. The fact Attorney Breyer and Kutak Rock is financing Defendant's Middlecamp's harassment where they failed to do the most basic due diligence to investigate Defendant Middlecamp and Jamie Kreil's fabricated allegation is unconscionable and yet another act of attorney misconduct. Defendant Middlecamp and Ms. Kreil contends Ms. Kreil filed a police report with the Saint Louis Park Minnesota Police department. On October 23, 2020 the Saint Louis Park Police Department came back with yet another written FOIA production once again detailing that their police department does not have any report from Ms. Kreil, let alone any police report from her alleging "rape", or any police report whatsoever made against Plaintiff:



(*See* Fredin Decl. November 5, 2020 Ex. A.) The fact that Attorney Breyer and Kutak Rock is trying to finance a blatantly fabricated allegation (where they failed to complete basic due diligence

to investigate the matter) represent themselves (and not Defendants), and twenty-two (22) other non-parties in this lawsuit is a matter of public concern and therefore eligible for the exercise of constitutionally protected First Amendment criticism speech.

Moreover, Defendants and Attorney Breyer include pleadings that are not part of this action. Attorney Breyer and Kutak Rock is operating in some racketeering scheme with numerous attorneys to provide free legal representation from top tier high dollar Minneapolis law firms to anyone opposed to Plaintiff to make Defendants immune to any accountability for their scheme in an effort to silence exposure of their felony conduct.

Moreover, Defendants and Attorney Breyer's vexatious litigation argument in their vexatious motion calls into question their fitness to practice law. Defendant have filed for 15 cases in state court alone and literally years of hearings to prevent Plaintiff's First Amendment rights and laughably come to this Court requesting that Plaintiff cannot seek redress. The argument is not based on any actual vexatious litigation in any court particularly the District of Minnesota or the Eighth (8th) Circuit. Instead, Defendants bring in pleadings that are irrelevant and not part of this proceeding. Defenants and Attorney Breyer are operating in some racketeering scheme with numerous attorneys to provide free legal representation from top tier high dollar Minneapolis law firms to anyone opposed to Plaintiff to make Defendants immune to any accountability for their scheme.

This includes Robins Kaplan and at least four (4) attorneys from that firm, Kutak Rock, Adam C. Ballinger, George Singer, Leita Walker, Mark Jacobson, Michael Olafson, Lindquist and Vennum/ Ballard Spahr,, Karmen McQuitty, University of Minnesota legal services, Daniel J. Goldberg, Michael Boulette, Messerli Kramer, Peter R. Mayer, David Green, Dorsey and Whitney, Lindsey Middlecamp (in her professional role), Mary Ellen Heng, Minneapolis City Attorneys'

Office, Steven Heng, Stephen Christie, Maria Dewolfe, Tara Patet, Saint Paul City Attorneys'
Office, and at least three (3) lawyers from the Minnesota Attorney General's Office. Defendants
have not had to spend a single dime in legal expense (for any matter whatsoever) while Plaintiff
and his close family has been bankrupted. In total, this is at least twenty-three (23) lawyers that
have taken part in this harassment scheme against Plaintiff. **Enough is enough.** The fact that so
much money has been spent to attack an untrained *pro se* litigant and he is still surviving speaks
to the merit in this action. Defendants must be *sua sponte* sanctioned for filing multiple concerted
frivolous motions. Moreover, it remains highly ironic that Defendants are arguing vexatious
litigation by filing their sixth (6) baseless sanction or request to identify Plaintiff as a vexatious
litigant motion in concert with multiple firms. Under no conditions will any of these websites or
videos ever be taken down.

Under no conditions will any of these websites or videos ever be taken down.

## FACTUAL BACKGROUND

1. On October 12, 2020 Defendants filed a temporary restraining order.

## GOVERNING STANDARD

The Court can *sua sponte* "[o]n its own, the court may order an attorney, law firm, or party
to show cause why conduct specifically described in the order has not violated Rule 11(b)." *See*
Fed. R. Civ. P. 11  Affirming *sua sponte* imposition of $25,000 sanction under Rule 11 where
counsel "violated Rule 11 by pursuing frivolous defenses and claims with the purpose of delaying
[resolution]" *MHC Investment Co. v. Racom Corp.,* 323 F.3d 620 (8th Cir. 2003); *St. Paul
Reinsurance Co. v. Commercial Fin. Corp.,* 198 F.R.D. 508 (N.D. Iowa 2000) (requiring lawyer
to write a bar article as a sanction)

Four (4) factors govern temporary restraining orders and preliminary injunctions:

To warrant preliminary injunctive relief, the moving party must show (1) probability of success on the merits; (2) threat of irreparable harm to the movant absent the injunction; (3) the balance between harm and the injury that the injunction's issuance would inflict on other interested parties; and (4) public interest. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 729 n. 3 (8th Cir. 2008) (en banc) (citing *Dataphase Systems, Inc. v. C.L. Sys. Inc*., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

A temporary restraining order considers the harm that will occur prior to an opportunity for the Court to hold a hearing on a motion for preliminary injunction (which must be considered on an expedited basis). Fed. R. Civ. P. 65(b). A preliminary injunction considers the harm that will occur prior to a trial on the merits. *Miller v. Foley*, 317 N.W.2d 710, 712 (Minn. 1982) Minnesota has two unique factors: (1) the nature and background of the relationship between the movant and nonmovant; and (2) administrative burdens of enforcement. *Dahlberg Bros., Inc. v. Ford Motor Co*., 137 N.W.2d 314 (Minn. 1965). *Dexon Computer, Inc. v. Modern Enterprise Solutions, Inc*., No. A16-0010 (Minn. Ct. App. Aug. 1, 2016) (affirming preliminary injunction based on evidence from affidavit). The ultimate decision of whether to grant or deny a permanent injunction lies within the district court's discretion. *See Kittle-Aikeley v. Strong*, 844 F.3d 727, 735 (8th Cir. 2016) (en banc)

## **ARGUMENT**

First, Defendants and Attorney Breyer do not have standing. Defendants should be *sua sponte* sanctioned pursuant to the Court's inherent authority under Rule 11. Second, Defendants request for a TRO should be denied because it fails all *Dataphase* factors.

### I. **Defendants Have No Standing, Their Preliminary Injunction Request and Motion Requesting that Plaintiff be declared a Vexatious Litigant is Frivolous Requiring *Sua Sponte* Cross Sanctions**

As described above, Defendants have used this motion to harass Plaintiff and silence exposure of their corrupt *pro bono* scheme used to curry favor with the United States Attorneys'

6

Office by way of Defendant Middlecamp.  Attorney Breyer is attempting to short circuit this action

by using a frivolous temporary restraining order motion in place of a personal lawsuit seeking

relief that this Court simply cannot provide.  Defendants have destroyed Plaintiff's life, ruined his

career, and attacked him in the media and on Twitter.  Defendants attacks have not been relegated

to Plaintiff but also included his previous counsel attorney Nathan Hansen.  Making Attorney

Breyer and Defendants requested relief even more laughable, over the course of nearly four (4)

years, Plaintiff never once raised a motion requesting that Defendants First Amendment rights be

infringed despite Defendant's massive publication.  And, because Defendants have repeatedly

attacked Plaintiff and his previous counsel, Plaintiff has received astronomical and unethical

retainer requests from local attorneys e.g., $100,000 from local defamation attorneys Marshall

Tanick and Patrick T. Tierney just to represent him in this or related actions.[2]

The following cases establish Plaintiff's strong likelihood of success in requesting that

Defendants be *sua sponte* sanctioned for their concerted attempts with multiple law firms including

Robins Kaplan to file repeated vexatious or sanctions motions to infringe Plaintiff's access to the

Courts or right to free speech:

- *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) (the ability to obtain civil redress is the "very essence of civil liberty.")

- *Bounds v. Smith,* 430 U.S. 817, 824, 828 (1977) (constitution guarantees the right to meaningful access to the Courts.)

- *Johnson v. Avery, 393 U.S. 483, 485, (1969) (*access to courts may not be denied or obstructed*)*

- *McDonald v. Smith,* 472 U.S. 479, 482 (1985) ("The right to petition . . . is implicit in the very idea of government, republican in form." (brackets, internal quotation marks, and citation omitted))

---

[2] Based on extensive emails and multi-year contacts with several attorneys.  Evidence is available upon request.

- *Yennie v. Gardner*, No. 19-CV-0111 CJW (N.D. Iowa Oct. 10, 2019) (Warning of *sua sponte s*anctions if party continues to file frivolous motions)

- *Carper v. Besse*, 4:12CV3244 (D. Neb. Apr. 29, 2013) (Warning of *sua sponte s*anctions if party continues to file frivolous motions)

- *Whitson v. LM Services, Inc.,* No. 4:01CV1744 SNL (E.D. Mo. Feb. 20, 2003) (cautioning against frivolous motions)

- *Kalincheva v. Neubarth*, 8:15CV44 (D. Neb. Nov. 28, 2017) (caution asserted against party for filing frivolous motions)

- *In re Tyler*, 839 F.2d 1290, 1293 (8th Cir. 1988) ("The Court may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process.")

- ***Ideal Instruments, Inc. v. Rivard Instruments*, 245 F.R.D. 381 (N.D. Iowa 2007) (Asserting *sua sponte* sanctions against party for filing an underlying frivolous preliminary injunction) *See* also *Ideal* 243 F.R.D. 322 (N.D. Iowa 2007)**

- *Cromer v. Kraft Foods North America, Inc.,* 390 F.3d 812 (4th Cir. 2004) (Holding that "prefiling injunction barring future filings in unrelated cases in district court constitutes overbroad and impermissible restriction")

- *Castle v. Appalachian Technical College*, 430 F. App'x 840 (11th Cir. 2011) (Asserting sanctions for frivolous motion practice)

- *Liebing v. Sand*, No. 17-CV-142-LRR (N.D. Iowa Mar. 26, 2018) (considering sua sponte sanctions against party and their attorneys)

- ***MHC Investment Co. v. Racom Corp.*, 323 F.3d 620 (8th Cir. 2003) (imposing $25,000 *sua sponte* sanction for delaying resolution)**

With respect to Defendants vexatious litigation argument to bar Plaintiff from filing future lawsuits, Defendants request would be yet another bogus prior restraint and must be *sua sponte* sanctioned. *Cromer v. Kraft Foods North America, Inc.,* 390 F.3d 812 (4th Cir. 2004) (precluding prior restraint on future lawsuits)

  a. **Attorney Breyer's Requested Relief Would be a Prior Restraint and Infringe the First Amendment**

The Court cannot impose prior restraint on constitutionally protected speech.   *Near v. Minnesota*, 283 U.S. 697 (1931)  The only exception under *Near* would be for a national security concern or an actual threat.  None of which have occurred here.

### b.   Attorney Breyer is Improperly Requesting Relief on Behalf of Himself and Twenty-Two (22) Non-Parties in an Action Where He Is Supposedly Representing Three (3) Clients

It is no secret that Attorney Breyer's *pro bono* representation is yet another hoax.  Attorney Breyer openly admits he is using this motion on behalf of himself and twenty-two (22) non-parties by using this *instant* TRO motion requesting injunctive relief on behalf of non-parties because Attorney Breyer alleges Plaintiff "has registered and created over twenty-two (22) individual websites that disparage and attack the individuals listed below."  (*See* Def. TRO ¶ 7-8.)

The idea that Attorney Breyer and Defendants are attempting to short circuit this action by using this motion as their own personal lawsuit requesting relief on behalf of themselves or non-parties is a clear violation of Minnesota Rules of Professional Conduct Rule 1.7 which provides:

- a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a **third person**, or by a personal interest of the lawyer.   (*See* 1.7)

In other words, because Attorney Breyer is representing himself in this action, making requests to limit criticism of himself or non-parties, which invariably makes himself and the non-parties a "third person" with respect to Rule 1.7 (because they are not a party), it bars the TRO request and raises serious "professionalism concerns".  *Mid-State Aftermarket Body Parts, Inc. v. MQVP,* Inc., No. 4:03CV00733 JLH (E.D. Ark. May 4, 2009)

### c.   Did Not Take Place Within Court Proceedings

The problem with Defendants TRO request is that they do not identify any actual statements (in or out of court) that they allege is "intimidation" or an "insult". More importantly, Defendants do not allege that any of the alleged criticism took place within any actual court proceeding. Instead, they falsely claim that a YouTube video and related websites are an "harassment" requiring injunctive relief. (*See* Def. TRO ¶ 7.) The Court does not have the inherent authority to impose the requested relief on any criticism independent of Court proceedings. Attorney Breyer stated Plaintiff "reposted the online slurs as soon as he did not get the settlement he desired." (*See* Def. TRO ¶ 4.) This is simply not true. Plaintiff was acting in good faith to settle. The fact that Attorney Breyer would leak settlement (privately agreed upon confidential) discussions to Robins Kaplan speaks to Defendants and Attorney Breyer's bad faith efforts and backchannel communication to harass Plaintiff in concert with numerous law firms. Attorney Breyer has deliberately and falsely represented to this Court all along that Defendant Middlecamp, Miller, and Schaefer all independently encountered Plaintiff. And, then tries to engage in settlement discussions by attempting to batch Defendant Middlecamp and Schaefer together with Defendant Miller so as to provide a lack of accountability to Defendant Middlecamp, Schaefer, and Jamie Kreil and their concerted scheme. After four (4) years, FOIA evidence obviously shows Defendants scheme began well before Plaintiff ever knew who Ms. Middlecamp or Schaefer ever were. Plaintiff had never met, seen, or spoken to Ms. Schaefer or Middlecamp prior to their attacks. This Court denied Plaintiff's right to discovery in further attempts to prevent exposure of Defendants felony conduct (including admissions of fabricating evidence to falsely torture Plaintiff) and therefore protect the United States Attorneys' Office. The fact this Court would allow an Assistant United States Attorney, Defendant Middlecamp, to blatantly admit to fabricating evidence in matters before this Court without referring the misconduct so as to protect

the public is completely outrageous.   The integrity of the judicial system is at stake.   This is
particularly so where others have emailed this Court desperately pleading that Defendant
Middlecamp has also ruined their life by fabricating bogus allegations.   And, Defendant
Middlecamp's entire Internet platform is premised upon the same or similar conduct.

      **d.**  <u>**Defendant Middlecamp Sent Six (6) Threatening Messages to Plaintiff on**</u>
           <u>**October 12, 2020**</u>

      On October 12, 2020, Defendant Middlecamp sent six (6) direct messages to Plaintiff.   It
bears noting, this is around the same time they filed the *instant* TRO motion.   The messages are
intended both as private messages (because Plaintiff received them as private messages) and false
defamatory public statements.   Plaintiff is only documenting these messages because he believes
Defendant Middlecamp's actions will escalate.   (*See* Fredin Decl. November 5, 2020 Ex. C.)   The
words used in the messages exactly match the same words and terms that Defendant Middlecamp
widely uses on her public Twitter account. The precise reasons Plaintiff believes these messages
came from or flowed through Defendant Middlecamp is because Defendant Middlecamp regularly
uses the term "creep", "serial", "spewing", "smear", "don't let" and other words contained in these
direct messages on her public Twitter account @CardsAgstHrsmt and in statements during
hearings in cases she participates.   If the Court has any doubts to the veracity of these assertions,
he directs the Court to Defendant Middlecamp's Twitter account where she uses the exact words.





It bears noting, Plaintiff had his life destroyed over a harmless public Match.com profile (that he had forgotten about) because Defendant Miller could purportedly view it (using a secret spy subscription). As a result, Plaintiff was subject to a violent extrajudicial rendition, had his neck kneeled on by Defendants goons, despite having no prior criminal history and a graduate education he was given the maximum executed sentence where he was subject to an unlawful year in jail (overturned on First Amendment grounds), had his dying mother (former probation officer and Major in the United States Army) taken from him, lost his home, lost his career, bankrupted, forced into brief homelessness (while working as a software architect), and lost access to his beloved dogs. But, Defendant Middlecamp in concert with Defendant Miller and Schaefer can send repeated threatening messages to Plaintiff in an effort to continue her stalking campaign (four years later) against Plaintiff without any accountability whatsoever. Plaintiff receives zero protection from any layer of state or federal government. This is in addition to evidence documenting the fact that Defendants admitted to producing "unique false information" to "fabricat[e]" allegations against Plaintiff, emails evidencing their scheme to issue bogus charges against Plaintiff to benefit Defendant Miller and Defendant Middlecamp's own personal media campaigns apparently in

retaliation against Plaintiff for exercising his First Amendment rights, and other serious criminal conduct related to obstruction of justice used to invoke a violent raid on Plaintiff's home (in an entirely different state) using Minneapolis officials.  This is absolutely outrageous and absurd.  If the tables were turned, assuming *arguendo*, where Defendant Middlecamp alleged that Plaintiff sent these messages to her, Plaintiff would be subject to multiple felonies, immediately jailed, and sentenced to twenty (20) years in prison.   Defendant Middlecamp's threatening and abusive messages are nonetheless sanctionable conduct.  *Blum v. Schlegel*, 91-CV-633S, 1996 U.S. Dist. LEXIS 21598, at *20 (W.D.N.Y. May 9, 1996); See also *Campbell v. Baylard*, Billington, *Dempsey & Jenson*, P.C., No. 4:17-cv-02390-JAR, 2018 U.S. Dist. LEXIS 144227, at *14 (E.D. Mo. Aug. 24, 2018) (imposing sanctions in part because a party "engaged in bad-faith conduct intended to abuse the judicial process and harass [parties]"); *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co*., No. 00 C 5658, 2002 WL 1433717, at *11, *38 (N.D. Ill. July 2, 2002) (imposing sanctions where a party sent threatening letters to opposing counsel intended "to sabotage the litigation" through "intimidat[ion]"); *Colida v. Panasonic Corp. of N. Am*., No. 09 C 1786, 2011 U.S. Dist. LEXIS 49055, at *20 (N.D. Ill. May 3, 2011) (imposing sanction in part because the [party] disrupted the litigation through "repeated racist and abusive statements to opposing counsel"):





(*See* Fredin Decl. November 5, 2020 Ex. C.)

## II.    Preliminary Injunction Factors

### a.    Nature and Background

The District Court of Minnesota treats this factor as one that strives to maintain the "status quo ante." *See Dahlberg Bros., Inc. v. Ford Motor Co.*, 137 N.W.2d 314 (Minn. 1965) (affirming issuance of temporary injunction to enjoin termination of Ford dealership based, in part, on fact that the "status quo ante" was that the dealership was still in effect).

Administrative Burdens.  Courts have declined to issue injunctions where judicial oversight and enforcement of the requested injunction would be great.  *Alt. Med. & Pharmacy, Inc. v. Express Scripts, Inc.*, No. 4:14 CV 1469 CDP (E.D. Mo. Oct. 7, 2014) (affirming refusal to issue injunction that would have imposed on the court a "continuing duty of supervision" over the parties' or their clients)

### b.    Lack of Success on the Merits

As described below, several cases establish strong reasons to deny Defendants injunction under the First Amendment right to free speech:

- *Iowa Right to Life Committee v. Williams,* 187 F.3d 963 (8th Cir. 1999) ("the potential harm to independent expression and certainty in public discussion of issues is great and the public interest favors protecting core First Amendment freedoms.")

- *Parents, Families, & Friends of Lesbians & Gays, Inc. v. Camdenton R-III School District,* 853 F. Supp. 2d 888 (W.D. Mo. 2012) (Injunctions "must not discriminate against websites expressing a positive viewpoint toward LGBT individuals.")

- *Taylor v. Haugaard,* 360 F. Supp. 3d 923 (D.S.D. 2019) (First Amendment generally bars government or public officials from retaliating against an individual for exercising his or her right to free speech)

- *Calvin Klein Cosmetics v. Lenox Laboratories*, 815 F.2d 500 (8th Cir. 1987) (Recognizing that a preliminary injunction is an extraordinary remedy)

- *Walker v. Wegner*, 477 F. Supp. 648 (D.S.D. 1979) (Deprivation of first amendment freedoms, even for a short period, constitutes irreparable injury)

- *Bloom v. O'Brien,* 841 F. Supp. 277 (D. Minn. 1993) (Finding that the plaintiffs' burden of demonstrating a chilling effect was met when exercising a First Amendment right would subject a plaintiff to criminal prosecution)

- *Faegre Benson v. Purdy*, No. 04-1189 (8th Cir. Apr. 4, 2005) (Denying sanctions on a preliminary sanction over a critical website)

- *McCarthy v. Fuller*, 810 F.3d 456 (7th Cir. 2015) (Vacating and thus denying an injunction related to a website" so broad and vague that it threatens to silence [a party] completely")

- *Blockowicz v. Williams,* 630 F.3d 563 (7th Cir. 2010) (requiring an injunction to issue only after a party prevailed in a personal defamation lawsuit)

- *1-800 Contacts, Inc. v. Whenu.com, Inc*., 414 F.3d 400 (2d Cir. 2005) (reversing and denying injunction to enjoin company from placing content in the form of pop-ups on websites)

- *SunEarth, Inc. v. Sun Earth Solar Power Co*., No. 13-17622 (9th Cir. Nov. 16, 2016) (denying sanctions request in reference to website material)

- *Garcia v. Google, Inc*., 786 F.3d 733 (9th Cir. 2015) (Denying injunction request to remove YouTube video because an injunction can only issue on a 'clear showing of irreparable harm'.)

- *Prager Univ. v. Google LLC*, 951 F.3d 991 (9th Cir. 2020) (Denying injunction related to classification of YouTube videos)

"While 'no single factor is determinative,' the likelihood of success factor is the most important" *See Medtronic, Inc. Derivative Litig*., 68 F. Supp. 3d 1054 (D. Minn. 2014) (citing *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013))

The following cases establish strong reasoning to deny Defendants injunction under the First

Amendment right to free speech:

- *J.S. v. Blue Mountain School District,* 650 F.3d 915 (3d Cir. 2011) (First Amendment rights violated when a policy used to sanction litigant for creating a parody online profile that mocked and demeaned a public official)

- *Nuacke v. City of Park Hills*, 284 F. 3d 923 (8th Cir. 2002) (government or public officials took adverse action motivated by exercise of constitutional rights, and that adverse action caused her to suffer an injury that would chill a person of ordinary firmness from continuing that protected activity)

- *Richmond Newspapers, Inc. v. Virginia*, *448 U.S. 555 (1980*) (First Amendment right of access to the Courts and free speech to publish the results of proceedings)

Defendants and Attorney Breyer are all public officials:

- Plaintiff's ex-girlfriend, the only person he actually knows or has ever met or spent considerable time with in the entirety of Defendants scheme, is a current Air Force legislative fellow to the United States Senate[3] where she is assigned to the Armed Services Committee as well as airport and transportation related subcommittees. Defendant Miller grew up in Knapp, Wisconsin and graduated as the valedictorian from Boyceville High School in Boyceville, Wisconsin.[4]    Defendant Miller received a full scholarship from the University of Saint Thomas in Saint Paul, Minnesota and graduated *summa cum laude*.  Defendant Miller has three Master's degrees and a PhD in English.  Previously, Defendant Miller was an instructor at the United States Air Force Academy[5] where she was assigned to mentor female Rhode Scholars and is a (former) or current commander of the 934th AirWing at the Minneapolis-Saint Paul Air Station.[6] Defendant Miller is also one of the youngest Major's    in    the    United    States    Air    Force.

- Defendant Middlecamp graduated from Appleton High School in Appleton, Wisconsin.    Defendant Middlecamp graduated from Saint Olaf College in Northfield, Minnesota *magna cum laude* and from the University of Pennsylvania law school where she also obtained a Master's degree in bioethics.  Defendant Middlecamp is a Special Assistant United States Attorney.  Defendant Middlecamp has appeared on ABC Good Morning America, New York Times, Buzz Feed, The

---

[3] Recently, Defendant Miller wrote an article in the Air Force Times apparently attempting to softly taunt Plaintiff that matches the timing of her affidavit actions in concert with Jamie Kreil. https://www.airforcetimes.com/opinion/commentary/2020/09/20/sexual-harassment-should-not-be-the-price-of-admission-for-women-in-the-military/

[4]    https://chippewa.com/boyceville-grads-thank-teachers-parents-and-friends/article_95d09e22-7ee1-5da7-8cd7-37b3546a655b.html

[5] https://www.wlajournal.com/wlaarchive/29/miller.pdf

[6] https://www.minneapolis.afrc.af.mil/News/Article-Display/Article/1109615/miller-assumes-command-of-amxs/

Daily     Beast,     and     several     other     related     media.

- Defendant Schaefer graduated in the top five of her high school in Seattle, Washington.  Defendant Schaefer attended the University of Pennsylvania as an undergraduate student.  Later, she attended Penn State University for a PhD but dropped out with a Master's degree and has worked before and after within the Sexual Health Department at the University of Minnesota where she manages all research or funding.

- Karl Johann Breyer was a clerk on the Minnesota Court of Appeals.

The Eighth Circuit has repeatedly disfavored any government restriction imposed on the First Amendment.  Because Attorney Breyer is likely receiving funding from quasi-public or government organizations  for his *pro bono* representation, his preliminary injunction motion is arguably a "government action" for purposes of the following:  *Calzone v. Missouri Ethics Commission,* Case No*. A17-2654, (8ᵗʰ Cir. 2019) (November 1, 2019); Johnson v. Minneapolis Park & Recreation Bd*, 729 F.3d 1094 (8th Cir. 2013); *D.M. v. Minnesota State High School League*, No. 18-3077 (8th Cir. 2019); *Gerlich v. Leath*, 152 F. Supp. 3d 1152 (8ᵗʰ Cir. 2017) ; *Rodgers v. Bryant*, Case No. 17-3219 (8ᵗʰ Cir. 2019) (November 7, 2019) (holding "Arkansas antiloitering law that bans begging in a manner that is harassing, causes alarm …" unconstitutional); *See* also *Knight First Amendment Inst. at Columbia Univ. v. Trump*, Case No. 1:17-cv-5205 (S.D.N.Y.), No. 18-1691 (2d Cir.) (July *9, 2019*)

The movant must show that he is "likely to prevail on the merits."  *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731–33 & n. 4 (8th Cir.2008)  Here, Defendants fail the most important *Dataphase* factor as described above.

### c.   Defendants Do Not Suffer Irreparable Injury Absent the Injunction

Defendants will not suffer irreparable harm because they are not the subject of any criticism.  Attorney Breyer alleges the criticism is directed squarely at him or non-parties.  Here, the balance of equities tips decidedly in Plaintiffs favor.  If Defendants or Attorney Breyer believe

their argument has merit, which it does not, they have an avenue of relief in filing a personal lawsuit in state or federal court naming themselves as a party and Plaintiff as a defendant.  On the other hand, if the Court grants a preliminary injunction, Plaintiff will suffer irreparable harm. *Phelps-Roper v. Nixon,* 545 F.3d 685, 689-90 (8th Cir. 2008)  Moreover, it would further enable Defendants to attack Plaintiff with false propaganda to thousands of people online.  For an injunction to be appropriate, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief."  *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) *See also Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (quoting *Iowa Utilities Bd. v. Fed. Commc'ns Comm'n,* 109 F.3d 418, 425 (8th Cir. 1996)

### d.  Comparison of Harm

In determining whether a preliminary injunction should issue, the Court must consider whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  *Dataphase*, 640 F.2d at 113

Plaintiff suffers immense injury if his First Amendment rights are abridged.  *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") see also

Assuming *arguendo*, if this Court had standing to issue a preliminary injunction, which it does not, it would theoretically be required to similarly order Defendants to remove their bogus and false attacks against Plaintiff.   As a result of Defendant's false allegations, including their false rape allegation, which was disseminated to hundreds of thousands of people vis-à-vis Defendant Middlecamp's @CardsAgstHrsmt account and a bogus *City Pages* article (which is a failed and defunct newspaper that is no longer in business because of its false reporting), where

Defendants and Ms. Kreil blatantly lied by alleging Ms. Kreil documented her purported allegation with a police report, which does not exist and never has existed, where Attorney Breyer engages in yet more attorney misconduct by failing to engage in due diligence in verifying the non-existent report, Plaintiff has suffered immense harm that no individual should ever have to face e.g., torture, extrajudicial renditions, thousands of dollars in legal expenses, loss of a connection to his beloved dogs, loss of access to his dying mother, ruined career, and false imprisonment.  Plaintiff has suffered immense harm and will continue to suffer immense harm because of Defendants attacks that exist on Twitter, Facebook, and the local media still today (nearly four years later).

e. **Public Interest**

The following cases establish strong reasons to deny Defendants injunction under the First Amendment right to free speech:

- *Frisby v. Schultz*, 487 U.S. 474, 479 (1988) (The public interest is served by free expression on issues of public concern)
- *First Nat'l Bank of Boston* v. *Bellotti*, 435 U.S (1978). at 766 ("[t]he First Amendment, in particular, serves significant societal interests.")

Defendants and Attorney Breyer are acting in concert with several law firms to mute any accountability to Defendants by way of financing *pro bono* legal expense and representation.  The idea that Attorney Breyer and Kutak Rock is financing fabricated allegations to curry favor with the United States Attorneys' Office or the Minneapolis City Attorneys' Office is a matter of public concern entitling Plaintiff to the exercise of his First Amendment rights.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court *issue sua sponte* sanctions under its inherent Rule 11 authority against Defendants and their attorney Karl Johann Breyer.  Moreover, Plaintiff respectfully requests this Court deny Defendants TRO request.

Dated: November 5, 2020
Saint Croix Co., WI

s/ Brock Fredin
Brock Fredin
Saint Croix Co., WI 54002
(612) 424-5512 (tel.)
brockfredinlegal@icloud.com
*Plaintiff, Pro Se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 5, 2020, I filed the foregoing with the Clerk of

Court through the CM/ECF system which will automatically send electronic mail notification of such

filing to the CM/ECF registered participants as identified on the Electronic Mail Notice List:

Karl Johann Breyer

Dated: November 5, 2020
Saint Croix Co., WI

s/ Brock Fredin
Brock Fredin
Saint Croix Co., WI 54002
(612) 424-5512 (tel.)
brockfredinlegal@icloud.com
*Plaintiff, Pro Se*