## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Brock Fredin, | Case No. 17-cv-03058 (SRN/HB) |
| Plaintiff, | |
| v. | **ORDER** |
| Lindsey Middlecamp, | |
| Defendant. | |

---

| | |
|---|---|
| Brock Fredin, | Case No. 18-cv-00466 (SRN/HB) |
| Plaintiff, | |
| v. | |
| Grace Elizabeth Miller et al., | |
| Defendants. | |

---

| | |
|---|---|
| Brock Fredin, | Case No. 20-cv-01929 (SRN/HB) |
| Plaintiff, | |
| v. | |
| Jamie Kreil, | |
| Defendant. | |

---

Brock Fredin, 1180 Seventh Avenue, Baldwin, WI 54002, Pro Se.

K. Jon Breyer, Kutak Rock LLP, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402, for Defendants Lindsey Middlecamp, Grace Elizabeth Miller, and Catherine Marie Schaefer.

---

Anne M. Lockner, Ena Kovacevic, and Haynes Hansen, Robins Kaplan LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, for Defendant Jamie Kreil.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on several motions filed in three related cases. Defendants Lindsey Middlecamp, Grace Miller, Catherine Schaefer, and Jamie Kreil (collectively, "Defendants") filed Motions for a Temporary Restraining Order enjoining Plaintiff Brock Fredin from posting online websites and videos disparaging attorneys, judges, and court personnel involved in Fredin's litigation in this Court and in Fredin's prior state court lawsuits. (Mot. for TRO [17-cv-03058, Doc. No. 212]; Mot. for TRO [18-cv-00466, Doc. No. 189]; Mot. for Sanctions, TRO, and Attorney Fees [20-cv-01929, Doc. No. 15].) The Court converted Defendants' motions to Motions for a Preliminary Injunction. (Briefing Order [17-cv-03058, Doc. No. 228; 18-cv-00466, Doc. No. 198; 20-cv-01929, Doc. No. 22].) In addition, Defendants move the Court to declare Fredin a vexatious litigant and restrict his ability to file further lawsuits in this Court.[1] (Mot. to Declare Plf. a Vexatious Litigant [17-cv-03058, Doc. No. 209; 18-cv-00466, Doc. No. 186]; Mot. to Dismiss and to Designate Brock Fredin a Vexatious Litigant [20-cv-01929,

---

[1] Although Kreil's motion to declare Fredin a vexatious litigant was filed together with her Motion to Dismiss, which is set for oral argument in February 2021, in the interest of judicial economy the Court will consider it together with the similar motions filed by the other Defendants. Fredin has had the opportunity to respond to Kreil's arguments, and was previously notified that the Court would decide the vexatious litigation issue without oral argument. (Plf.'s Mem. in Opp. [20-cv-01929, Doc. No. 31]; *see* Briefing Order [17-cv-03058, Doc. No. 228; 18-cv-00466, Doc. No. 198].)

Doc. No. 10].) Defendant Kreil also moves the Court to sanction Fredin and to award Kreil reasonable attorneys' fees. (Mot. for Sanctions, TRO, and Attorney Fees [20-cv-01929, Doc. No. 15].) Finally, Fredin filed Cross-Motions for Sanctions seeking sanctions against Defendants and their counsel. (Plf.'s Mot. for Sanctions [17-cv-03058, Doc. No. 233; 18-cv-00466, Doc. No. 202; 20-cv-01929, Doc. No. 27].)

Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** Defendants' Motions for a Preliminary Injunction, **GRANTS** the Motions to Declare Plaintiff a Vexatious Litigant, **GRANTS in part** and **DENIES in part** Defendant Kreil's Motion for Sanctions and Attorneys' Fees, and **DENIES** Plaintiff's Cross-Motions for Sanctions.

## I.   BACKGROUND

Plaintiff Brock Fredin brought an action against Defendant Lindsey Middlecamp, alleging, in short, that Middlecamp defamed him on social media by posting another woman's allegation that Fredin sexually assaulted her. (*See* Am. Compl. [17-cv-03058, Doc. No. 5].) Fredin brought a similar action against Defendants Grace Miller and Catherine Schaefer. (*See* Am. Compl. [18-cv-00466, Doc. No. 53].) The background of these cases is fully set out in this Court's orders granting summary judgment in the Middlecamp and Miller-Schaefer cases, and the Court incorporates that background by reference. (Order [17-cv-03058, Doc. No. 237; 18-cv-00466, Doc. No. 206].) In addition, Fredin filed a lawsuit against Jamie Kreil alleging defamation related to an affidavit Kreil submitted in the Middlecamp and Miller-Schaefer litigation (among other claims). (Am. Compl. [20-cv-01929, Doc. No. 6].)

As relevant here, Middlecamp, Miller, and Shaefer have been awarded 50-year harassment restraining orders ("HROs") against Fredin. (Breyer Decl. [17-cv-03058, Doc. No. 181], Ex. 2 (Middlecamp's HRO); Breyer Decl. [17-cv-03058, Doc. No. 215], Ex 1 (Miller's HRO), Ex. 2 (Schaefer's HRO).)[2] Defendants assert that Fredin has attempted to circumvent the HROs' restrictions by filing lawsuits against Middlecamp, Miller, and Schaefer. Indeed, Fredin has generated twelve lawsuits in Minnesota and Wisconsin state and federal courts (along with numerous unsuccessful appeals) in the last three years.[3] Only two of Fredin's lawsuits—Fredin's current suits against Middlecamp, Miller, and Schaefer before this Court—have survived beyond the motion to dismiss stage thus far. Notably, other courts have twice found that Fredin has used litigation to harass the Defendants, and one court has restricted his ability to file further lawsuits against them. (Breyer Decl. [17-cv-03058, Doc. No. 215], Ex. 8, at 11-13 (finding Fredin in contempt because he filed one

---

[2] Where the same documents have been filed in both the Middlecamp and Miller-Schaefer cases, the Court cites to the copy docketed in the Middlecamp case as a matter of convenience.

[3] *Fredin v. Middlecamp*, 62-CV-17-3994 (Ramsey Cty., filed June 5, 2017); *Fredin v. Middlecamp*, 17-cv-3058 (D. Minn., filed July 18, 2017); *Fredin v. Clysdale et al.*, 18-cv-0510 (D. Minn., filed Feb. 22, 2018); *Fredin v. Schaefer*, 2018CV000190 (St. Croix Cty., filed May 18, 2018); *Fredin v. Miller et al.*, 18-cv-0466 (D. Minn., filed July 16, 2018); *Fredin v. Halberg Criminal Defense et al.*, 18-cv-2514 (D. Minn., filed Aug. 27, 2018); *Fredin v. Olson et al.*, 18-cv-2911 (D. Minn., filed Oct. 11, 2018); *Fredin v. City Pages et al.*, 19-cv-0472 (D. Minn., filed Feb. 25, 2019); *Fredin v. Street et al.*, 19-cv-2864 (D. Minn., filed Nov. 8, 2019); *Fredin v. Miller*, 19-cv-2907 (D. Minn., filed Nov. 14, 2019); *Fredin v. Miller et al.*, 19-cv-3051 (D. Minn., Dec. 9, 2019); *Fredin v. Halberg Criminal Defense et al.*, 19-cv-3068 (D. Minn., filed Dec. 11, 2019); *see also* Mem. Supp. Mot. Declare Plf. Vexatious Litigant [17-cv-03058, Doc. No. 211], at 3-6 (indexing additional litigation involving Fredin).)

of his lawsuits solely to have contact with Schaefer, in violation of Schaefer's HRO against him, and describing Fredin's litigation tactics as "false, misleading, and bad faith activities" and an "abuse of the Wisconsin court system"); Breyer Decl. [17-cv-03058, Doc. No. 181], Ex. 2 (observing that Fredin has used inflammatory websites and litigation to harass Middlecamp and restricting Fredin's ability to commence new litigation against Middlecamp).) And Fredin has publicly stated on social media: "Dismiss one of my lawsuits and two shall take its place." (Breyer Decl. [17-cv-03058, Doc. No. 215], Ex. 12, at 17.)

Throughout all these lawsuits—even those against third parties—Fredin has filed numerous documents containing inflammatory remarks directed to Defendants, their families, their legal counsel, and court personnel involved in the proceedings. But Fredin has not limited his *ad hominem* attacks to court filings. Defendants have brought to the Court's attention more than twenty websites disparaging attorneys, judges, jurors, and court personnel involved in Fredin's current and prior lawsuits. (*Id.*, Ex. 7.) These websites contain photographs of their victims, along with conclusory, baseless accusations that the victims engaged in racism, torture, and terrorism. (*See id.*) In addition, Kreil has identified several additional websites and YouTube videos disparaging her counsel, as well as Magistrate Judge Hildy Bowbeer—who has ruled on matters related to the instant litigation. (*See* Lockner Decl. [20-cv-01929, Doc. No. 18].)

Counsel for Kreil have represented that Fredin's online allegations against them are "absolutely false," and put them in reasonable fear for their safety and privacy, as well as the safety and privacy of their families. (*Id.* ¶¶ 10-29.) In addition, the videos disparaging

Magistrate Judge Bowbeer accuse the judge of "protect[ing] corrupt law enforcement officers," "conceal[ing] misconduct and refus[ing] to protect men," and suggest that Judge Bowbeer's rulings against Fredin were based on improper motives. (*Id.* ¶ 31.) One of the videos features vulgar, disturbing imagery. (*See id.*; Second Lockner Decl. [20-cv-01929, Doc. No. 23], Ex. G.)

Fredin has not denied that he is responsible for these websites and videos. To the contrary, he has declared that "[u]nder no conditions will any of these websites or videos ever be taken down." (Mem. in Supp. of Plf.'s Cross-Motion for Sanctions [17-cv-03058, Doc. No. 234], at 5; [18-cv-00466, Doc. No. 203], at 5; [20-cv-01929, Doc. No. 28], at 4.)

Strikingly, Fredin has explicitly used these websites and videos to pressure Middlecamp, Miller, and Schaefer to offer favorable settlement terms. In an October 8, 2020 email, K. Jon Breyer—counsel for Middlecamp, Miller, and Schaefer—emailed Fredin links to a YouTube video and website containing inflammatory accusations against Breyer and demanded that the video and website be taken down. Fredin replied:

> Let's see if you're telling the truth and if you're negotiating in good faith. The website and video (which only contains truthful information) has been removed. I expect <u>reasonable</u> terms by the end of the working day (5PM CST).

(Breyer Decl. [17-cv-03058, Doc. No. 215], Ex. 17.) The video linked in Breyer's email is, at the time of this Order, live on YouTube. The account that posted the video about Breyer is "Judicial Protest," the same account that published other videos disparaging Defendants' counsel and Magistrate Judge Bowbeer. In addition, after Defendants Middlecamp, Miller, and Schaefer filed the instant motions, Fredin sent an email taunting

their attorney. It read: "Karl Johann, You forgot a bunch of sites and videos." (Breyer Decl. [17-cv-03058, Doc. No. 247], Ex. A.)

Moreover, in filings before the Minnesota Court of Appeals and this Court, Fredin has expressly threatened to post websites about court staff and file ethics complaints in retaliation for unfavorable rulings. (Breyer Decl. [17-cv-03058, Doc. No. 215], Ex. 10, at 11 n.4 ("Remember, each clerk is going to get reported to the Professional Responsibility Board and websites are going up exposing you for your failure to protect."); *see also Fredin v. Miller*, No. 19-cv-3051, Plf.'s June 10, 2020 Letter [Doc. No. 95], at 1 (accusing Magistrate Judge Bowbeer of retaliating against him, and stating, "This retaliatory behavior must be documented and preserved by the Court's clerks because it will be an exhibit in Professional Responsibility Complaints against the Court's clerks for failure to report the Court's bias.").) In addition, Fredin recently filed a letter with the Minnesota Court of Appeals, in which he demanded the names of "every clerk and staff member who took part in any portion of the appellate panel, its conference, and drafting the opinion affirming the bogus and bizarre facially unconstitutional gag order issued" by the Honorable Patrick Diamond. (Breyer Decl. [17-cv-03058, Doc. No. 247], Ex. B.) In a footnote appended to Judge Diamond's name, Fredin brazenly included links to several of the vicious websites and videos attacking the Judge. (*Id.*)

Prior to posting several of his websites, Fredin warned this Court that he "is tired" of the Court "rigg[ing]" his case and refusing to sanction Defendants and their counsel. (Mem. Opp. Summ. J. [17-cv-03058, Doc. No. 188], at 6.) Fredin stated that he has "reached the peaceful Constitutionally protected vigilante stage," and vowed that "[w]hen

7

the court refuses to sanction Defendant, or Mr. Breyer, for yet another attempt to fabricate allegations . . . , Plaintiff will simply exercise his rights to engage in peaceful constitutionally protected protest." (*Id.*) Given that Fredin has repeatedly characterized his vitriolic online postings as containing only "truthful" information warranting First Amendment protection, the Court has no doubt that Fredin's promised "vigilante," "constitutionally protected protest" is intended to come in the form of additional online postings disparaging Defendants' counsel and this Court.

After Defendants moved for a temporary restraining order and sanctions, Fredin doubled down on his "vigilante" campaign. Both before and after filing his opposition memorandum, Fredin posted additional videos disparaging Kreil's counsel. (Third Lockner Decl. [20-cv-01929, Doc. No. 33].) These videos are even more disturbing than Fredin's prior content. One video describes one of Kreil's attorneys as "Minneapolis' Sexiest Attorney," and falsely states that the attorney is the "2X champion of the Minnesota Bar Association wet t-shirt contest." (*Id.* ¶ 18.) The video is set to vulgar images and music. (*Id.*) Another video is even more sexually explicit, featuring pictures of Kreil's counsel and a very graphic voiceover describing gay sex. (*Id.* ¶ 15.) Fredin has allegedly paid YouTube to promote this video, as evidenced by the fact that it has generated thousands of views in only a few weeks and appears as an ad to YouTube's users. (*Id.* ¶¶ 26-27.) Indeed, third parties who saw the ad have expressed concern to Robins Kaplan by phone and by the firm website's contact form. (*Id.* ¶ 22.) One of the third parties described the video as an "absolutely disgusting" ad "slandering" Kreil's counsel, which "popped up while I was watching YouTube." (*Id.*, Ex. E.)

## II.    DISCUSSION

Defendants request that the Court enjoin Fredin from posting online websites and videos disparaging attorneys, judges, and court personnel involved in Fredin's litigation in this Court and in Fredin's prior state court lawsuits, order Fredin to remove all the websites and videos identified by Defendants, and order Fredin to remove all similar but as-yet-unidentified content. In addition, Defendants argue that in light of the escalation of Fredin's bad-faith conduct and extensive, largely not-meritorious litigation, the Court should declare Fredin a vexatious litigant and restrict his ability to file further lawsuits in this Court. Kreil requests that the Court sanction Fredin for his conduct by terminating his case against her and awarding her reasonable attorneys' fees. And, finally, Fredin requests that the Court sanction Defendants and their counsel for bringing these motions. The Court will consider each motion in turn.

### A.    Motions for a Preliminary Injunction

Defendants request that the Court compel Fredin to remove the websites and videos disparaging their counsel, the Court, and individuals involved in Fredin's prior litigation. Defendants seek this relief by way of a motion for a preliminary injunction. But the preliminary injunction framework is not the best fit for addressing Fredin's misconduct. At the heart of the inquiry on a motion for a preliminary injunction is the question of "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). One of the core components of the inquiry requires Defendants to show that they have a sufficient "likelihood of success on the merits." *Id.*

9

The trouble with applying the preliminary injunction framework in this case is that the "merits" of the claims in this litigation are not implicated by Fredin's misconduct. Defendants and their counsel are not suing Fredin for defamation related to Fredin's online activity. Were they to do so, a preliminary injunction requiring Fredin to remove his websites pending resolution of the defamation claims could be proper. Instead, Defendants seek to compel Fredin to cease conduct tangential to the litigation of the substantive claims at issue in this case. The likelihood that Defendants will prevail on the assortment of claims Fredin has brought against them does not speak to whether the Court should enjoin Fredin's conduct in connection with this litigation. *See Myart v. Taylor*, No. SA: 5:16-CV-736-DAE, 2016 WL 5376227 (W.D. Tex. Sept. 26, 2016) (considering, on a motion for a preliminary injunction, whether the defendant "demonstrated a need for an injunction" barring the plaintiff's harassment of the defendant as a substitute for the "likelihood of success on the merits" element).

Furthermore, a preliminary injunction would not provide Defendants the relief they seek, for a simple reason: the injunction would be *preliminary*, not permanent. Insofar as Defendants fear their counsel or this Court will be intimidated by the prospect that Fredin will resort to "vigilante" smear campaigns, only a permanent injunction can entirely dispel that fear. But a preliminary injunction serves to "preserve the status quo until the merits are determined," and is therefore necessarily *im*permanent. *Dataphase Sys., Inc.*, 640 F.2d at 113; *see U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1093 (9th Cir. 2010) ("A preliminary injunction imposed according to the procedures outlined in Federal Rule of

Civil Procedure 65 dissolves *ipso facto* when a final judgment is entered in the cause.").[4]
And, as noted above, Fredin's conduct is tangential to the substance of this litigation. Thus,
there appears to be no natural opportunity for Defendants' requested preliminary injunction
to become permanent.

Therefore, the preliminary injunction framework does not readily suit Defendants'
request for relief. Although the Court could endeavor to refashion the preliminary
injunction framework, as the *Myart* court did, the Court will instead consider whether an
injunction is warranted under the Court's inherent authority to sanction serious abuses of
the judicial process.

### 1.    Sanctions Under the Court's Inherent Authority

"Courts of justice are universally acknowledged to be vested, by their very creation,
with power to impose silence, respect, and decorum, in their presence, and submission to
their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting
*Anderson v. Dunn*, 6 Wheat. 204, 227 (1821)). "Because of their very potency, inherent
powers must be exercised with restraint and discretion." *Schlafly v. Eagle Forum*, 970 F.3d
924, 936 (8th Cir. 2020) (quoting *Chambers*, 501 U.S. at 44–45). Although "a court
ordinarily should rely on the [Federal] Rules rather than [its] inherent power when there is
bad-faith conduct in the course of litigation that could be adequately sanctioned under the
Rules, a court may safely rely on its inherent power if in its informed discretion . . . the

---

[4] Notably, the Court recently entered judgment in the Middlecamp and Miller-Schaefer cases. (Judgment [17-cv-03058, Doc. No. 238; 18-cv-00466, Doc. No. 212].)

Rules are [not] up to the task." *Schlafly*, 970 F.3d at 936 (quoting *Chambers*, 501 U.S. at 50) (internal quotation marks omitted). Because Fredin's misconduct occurred largely outside of court filings or the discovery process, the Court finds that the sanctions mechanisms available under the Federal Rules of Civil Procedure are inadequate, and the Court may therefore rely on its inherent power.

The Court's inherent power extends to the imposition of "sanctions appropriate 'for conduct which abuses the judicial process.'" *Harlan v. Lewis*, 982 F.2d 1255, 1259 (8th Cir. 1993) (quoting *Chambers*, 501 U.S. at 44–45); *see also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980) (recognizing "the 'well-acknowledged' inherent power of a court to levy sanctions in response to abusive litigation practices" (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962))). The Court's inherent power to sanction abuses of the judicial process may be invoked *sua sponte*. *See Willhite v. Collins*, 459 F.3d 866, 870 (8th Cir. 2006) (upholding award of attorneys' fees imposed as *sua sponte* sanction under the district court's inherent power).

Abusive conduct sanctionable under the Court's inherent power includes extrajudicial communications intended to harass or intimidate opposing parties, their counsel, or the Court. *See, e.g.*, *Frumkin v. Mayo Clinic*, 965 F.2d 620 (8th Cir. 1992) (upholding sanction in response to litigant threatening witnesses); *Myart v. Taylor*, No. SA:5:16-CV-736-DAE, 2016 WL 5376227 (W.D. Tex. Sept. 26, 2016) (granting preliminary injunction enjoining the plaintiff from harassing contacts with the defendants); *Nguyen v. Biter*, No. 1:11-CV-00809-AWI, 2015 WL 366932 (E.D. Cal. Jan. 27, 2015) (sanctioning *pro se* litigant for including harassing communications in court filings and messages to

opposing counsel); *Blum v. Schlegel*, No. 91-CV-633S, 1996 WL 925921, at *8 (W.D.N.Y. May 9, 1996), *aff'd*, 108 F.3d 1369 (2d Cir. 1997) (sanctioning litigant for sending letters to third parties disparaging opposing counsel and the presiding judge).

The Court finds that Fredin's conduct is a sanctionable abuse of the judicial process. Defendants have identified dozens of websites and videos attacking attorneys, judges, jurors, and court staff involved in Fredin's litigation in this Court and in his prior litigation. Defendants have also identified two videos targeting a magistrate judge of this Court, who has ruled on matters pertaining to this litigation. The content of each of the websites and videos is inflammatory, baseless, demeaning, and disturbing. Worse, Fredin has explicitly attempted to leverage these websites and videos to obtain favorable settlement terms from Middlecamp, Miller, and Schaefer. (Breyer Decl. [17-cv-03058, Doc. No. 215], Ex. 17.)

And Fredin has previously threatened similar attacks against the judicial clerks involved in his appeals to the Minnesota Court of Appeals, as well as the clerks of this Court. (Breyer Decl. [17-cv-03058, Doc. No. 215], Ex. 10, at 11 n.4; *Fredin v. Miller*, No. 19-cv-3051, Plf.'s June 10, 2020 Letter [Doc. No. 95], at 1.) Fredin has recently escalated his attempts to intimidate the Minnesota Court of Appeals by demanding the names of all clerks and staff members involved in his appellate litigation, and by flaunting his websites and videos about Judge Diamond before that court. (Breyer Decl. [17-cv-03058, Doc. No. 247], Ex. B.) Given Fredin's attacks on Magistrate Judge Bowbeer, his warning to this Court that he will respond to adverse rulings with "vigilante" tactics, and his attempts at retribution against the Minnesota Court of Appeals, Fredin's threats raise a clear prospect of retaliation against this Court for any ruling against him.

Fredin does not deny that he is responsible for each of the websites and videos identified by Defendants. To the contrary, he has vowed that "[u]nder no conditions will any of these websites or videos ever be taken down." (Mem. in Supp. of Plf.'s Cross-Motion for Sanctions [17-cv-03058, Doc. No. 234], at 5; [18-cv-00466, Doc. No. 203], at 5; [20-cv-01929, Doc. No. 28], at 4.) Moreover, after Defendants filed the instant motions, Fredin doubled down on his online smear campaign by posting additional videos with sexually graphic content targeting Kreil's counsel. (Third Lockner Decl. [20-cv-01929, Doc. No. 33].) Fredin has allegedly paid YouTube to promote these videos by displaying them as ads to users of the website, as evidenced by concerned messages sent to the attorneys' law firm. (*Id.*) And Fredin responded to Middlecamp, Miller, and Schaefer's motions by taunting: "You forgot a bunch of sites and videos." (Breyer Decl. [17-cv-03058, Doc. No. 247], Ex. A.)

Fredin's online assault on the reputations of opposing counsel, judges, and court staff in order to bully Defendants into favorable settlement terms and influence this Court's rulings is precisely the type of "bad faith, vexatious[]," and "oppressive" conduct the Court's inherent powers exist to prevent. *Chambers*, 501 U.S. at 45–46 (quoting *Alyeska Pipeline Serv. Co*, 421 U.S. at 259). Courts have not only the power, but the duty to sanction such misconduct. As the Seventh Circuit has stated, "[m]isconduct may exhibit such flagrant contempt for the court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court." *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th

Cir. 1993) (footnote omitted). This Court will not tolerate a litigant's attempts to advance his cause by posting baseless, disparaging, and vulgar remarks about opposing counsel and judicial officers online. To permit Fredin's conduct to continue unanswered would raise grave "concerns about the integrity and credibility of the civil justice system," not only in the minds of Defendants and their counsel, but to the public at large. *Id.*

Fredin argues that the Court cannot compel him to remove his websites and videos, for several reasons. First, Fredin asserts that Defendants' counsel lack standing to file the instant motions because they are not the parties to this lawsuit. Second, Fredin contends that his conduct is beyond the Court's reach because it did not "[take] place within any actual court proceeding." (Mem. in Supp. of Plf.'s Cross-Motion for Sanctions [17-cv-03058, Doc. No. 234], at 10; [18-cv-00466, Doc. No. 203], at 10; [20-cv-01929, Doc. No. 28], at 10.) And finally, Fredin argues that his websites and videos are protected by the First Amendment.

Fredin is mistaken. The fact that Fredin's online actions target Defendants' counsel rather than Defendants does not raise a standing issue. *Defendants* filed the instant motions, not their counsel. And Defendants do not seek damages for the harm caused to their counsel; rather, Defendants seek to prevent the harm caused *to themselves* by Fredin's efforts to harass and intimidate their counsel and the Court. Defendants have standing to bring such a motion. Moreover, it is irrelevant that Fredin's conduct occurred online rather than in court filings. *See, e.g.*, *Chambers*, 501 U.S. at 44 ("[The Court's inherent power to punish contempts] reaches both conduct before the court and that beyond the court's confines . . . ."); *Frumkin*, 965 F.2d 620 (upholding sanction in response to litigant's phone

15

call threatening witnesses); *Blum*, 1996 WL 925921 (sanctioning litigant for sending letters to third parties disparaging opposing counsel and the presiding judge).

Finally, Fredin's argument that his postings are protected by the First Amendment is unavailing. The First Amendment does not entitle a litigant to publish baseless, inflammatory remarks disparaging opposing counsel or judicial officers in an effort to harass them into conceding favorable settlement terms or judicial decisions. *See Beauharnais v. People of State of Ill.*, 343 U.S. 250, 255–56 (1952) ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words . . . ."); *Lewis v. S.S. Baune*, 534 F.2d 1115, 1122 (5th Cir. 1976) ("Parties certainly do not have a right to obtain a settlement through duress, harassment, or overbearing conduct. . . . There is no reason the recurrent harassing conduct of a party in pursuit of a settlement may not be enjoined." (citing *Bivens v. Six Unknown Named Agents of Fed. Bur. of Nar.*, 409 F.2d 718, 725 (2nd Cir. 1969), *rev'd on other grounds*, 403 U.S. 388 (1971))); *Blum*, 1996 WL 925921 (sanctioning litigant for sending letters to third parties, including the state's federal bench, disparaging opposing counsel and the presiding judge).

"Although litigants do not 'surrender their First Amendment rights at the courthouse door,' those rights may be subordinated to other interests that arise in this setting." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n.18 (1984) (citation omitted). Here, whatever right Fredin may have to publicly criticize Defendants' counsel and the Court is subordinate to the public's interest in the judiciary's ability to make decisions without fear

16

of harassing and defamatory reprisal, as well as Defendants' interest in preserving their counsel from Fredin's harassment. Moreover, Fredin abandoned any pretense of protected First Amendment activity by creating his most recent videos about Kreil's counsel. These videos feature graphic, sexually charged imagery and voiceovers wholly unrelated to any public interest Fredin purports to advance. It is clear to this Court that Fredin's online activities serve only to vilify and harass his victims.

Accordingly, the Court finds that a sanction is an appropriate response to Fredin's bad-faith harassment of Defendants' counsel, his similar misconduct toward a magistrate judge of this Court, and his threats to direct continued harassment toward counsel and the Court. The Court next considers the proper extent of the sanction.

### 2.   Terms of the Sanction

In fashioning a sanction for Fredin's misconduct, the Court is acutely aware that an injunction prohibiting Fredin from posting additional websites and videos raises First Amendment concerns. Accordingly, the Court hews closely to the principle that "inherent powers must be exercised with restraint and discretion." *Schlafly*, 970 F.3d at 936 (quoting *Chambers*, 501 U.S. at 44–45). The Court finds that the most appropriate sanction for Fredin's abuse of the judicial process is an injunction requiring him to cease that abuse, coupled with the admonition that violation of the injunction will result in further penalties.

The scope of the injunction will be narrowly tailored to its purposes. Here, the harm to be remedied is not simply that the content of Fredin's noxious postings damages the reputation of Defendants' counsel. In an action for defamation brought by Fredin's victims, such reputational injury would be front-and-center of any injunction inquiry. But here, the

core of what makes Fredin's conduct sanctionable is that he has used his online platform to harass opposing counsel, and has attempted to use his websites and videos as leverage to extract favorable settlement terms from Defendants. Moreover, Fredin has used his platform to retaliate against a magistrate judge of this Court for ruling adversely to him, and his conduct has raised the prospect that he will continue to harass this Court and its staff in retaliation for further adverse rulings. Thus, the core of Fredin's sanctionable conduct is twofold: first, that he has used websites and videos to harass opposing counsel and the Court; and second, that he has attempted to use his postings to pressure opposing counsel and the Court.

Therefore, the Court finds that an injunction with the following terms is the appropriate remedy. First, Fredin must immediately remove, or cause to be removed, all websites and videos identified by Defendants that target Defendants' counsel or Magistrate Judge Bowbeer, such that the contents of said websites and videos are not accessible by the public. Specifically, Fredin must immediately remove or cause to be removed:

1. KJonBreyer.com

2. attorneykjonbreyer.com

3. annelockner.com

4. annelockner.attorneypetermayer.com

5. enakovacevic.com

6. enakovacevic.attorneypetermayer.com

7. hayneshansen.net

8. hayneshansen.net.attorneypetermayer.com

9. lawyerhayneshansen.com

10. annemlockner.com

11. annelockner.attorneypetermayer.com

12. Jamie-kreil.com

13. attorneypetermayer.com

14. https://youtu.be/_JSkH5r52ao (YouTube video titled "Anne M. Lockner - Minneapolis' Sexiest Attorney")

15. https://youtu.be/QFVYNQnIecg (YouTube video titled "Anne M. Lockner - Racist Attorney?")

16. https://youtu.be/8OKrqkvOCZM (YouTube video titled "Haynes Hansen - Minnesota's Premier Ranching Lawyer")

17. https://youtu.be/2ydfF2vm4MY (YouTube video titled "Charlie C. Gokey - Minneapolis's Most Crooked Attorney")

18. https://youtu.be/lUGyNosr974 (YouTube video titled "Ena Kovacevic - Minneapolis's Most Crooked Attorney")

19. https://youtu.be/tdyWcPA5k0I (YouTube video titled "Anne M. Lockner - Minneapolis's Most Abusive Attorney")

20. https://youtu.be/LNOTm082pS8 (YouTube video titled "Haynes Hansen - Minneapolis's Most Crooked Attorney")

21. https://youtu.be/EqeNUf3CXpQ (YouTube video titled "K. Jon Breyer - Minneapolis's Worst Attorney")

22. https://youtu.be/UTk9cuQ6HmY (YouTube video titled "Steven C. Likes, Partner at Kutak Rock - Most Corrupt Lawyer at Kutak Rock")

23. https://youtu.be/cKZQ-cgv974 (YouTube video titled "Judge Hildy Bowbeer - Doesn't Protect Men")

24. https://youtu.be/SV7QSEob3fI (YouTube video titled "Judge Hildy Bowbeer - Conceals Law Enforcement Misconduct")

25. https://youtu.be/pWPAHCN3iZQ (YouTube video titled "Attorney K. Jon Breyer - Fabricates Affidavits and Falsifies Evidence")

The Court finds that each of these websites and videos was created in bad faith with the intent to harass Defendants, their counsel, and the Court. However, the Court will not order Fredin to remove the websites identified by Defendants that target participants in Fredin's state court litigation. The attorneys, judges, court staff, and jurors involved in Fredin's state court litigation are not before this Court. And to the extent the existence of those websites and videos places Defendants in fear that their counsel or the Court will be influenced by the threat of similar retribution, the Court's injunction adequately addresses that fear. While Fredin's conduct is deplorable, the Court must exercise its power with restraint. *Schlafly*, 970 F.3d at 936. This is not the proper occasion to remedy all the harm caused by Fredin's online antics.[5] But the Court will include in its injunction the websites and videos targeting Defendants' prior counsel, because it finds that Fredin's websites disparaging Defendants' prior counsel may affect Defendants' ability to retain counsel in the future.

Second, Fredin must immediately remove, or cause to be removed, all websites, videos, and other publicly accessible online media substantially similar to those identified

---

[5] The Court notes that the Proposed Order filed by Middlecamp, Miller, and Schaefer requested somewhat broader relief. (Proposed Order [17-cv-03058, Doc. No. 250; 18-cv-00466, Doc. No. 218].) Namely, Middlecamp, Miller, and Schaefer request that the Court order web hosting companies, domains, and search engines to remove Fredin's content. But such entities are not parties to this litigation. *Cf.* Fed. R. Civ. P. 65(d)(2); *Thompson v. Freeman*, 648 F.2d 1144, 1147 (8th Cir. 1981) ("[A] nonparty may be enjoined under Rule 65(d) only when its interests closely 'identify with' those of the defendant, when the nonparty and defendant stand in 'privity,' or when the defendant 'represents' or 'controls' the nonparty."). And the Court finds that requiring Fredin to remove his online postings is an adequate remedy at this stage.

20

above, even though such websites and videos are not specifically identified herein. Fredin has indicated that Defendants have failed to identify all the websites and videos he has created about them, their counsel, or this Court. (Breyer Decl. [17-cv-03058, Doc. No. 247], Ex. A ("You forgot a bunch of sites and videos.").) Although the Court has not had the opportunity to review any such websites or videos, if they exist, that fault is attributable to Fredin's prolific authorship and his efforts to duplicate his content across numerous web addresses. To the extent Fredin has created other websites and videos not identified above, and such websites and videos malign Defendants, their counsel, or this Court in substantially similar ways as the websites and videos the Court *has* reviewed, Fredin must remove them. To hold otherwise would permit Fredin to hide behind a smokescreen created by the breadth of his own misconduct.

Third, the Court will enjoin Fredin from reposting or causing to be reposted, either himself or by any third party, any of the websites or videos identified above. Further, Fredin must not post or cause to be posted, either himself or by any third party, any additional websites, videos, or other publicly accessible online media that contain substantially similar accusations against Defendants, their counsel, or Magistrate Judge Bowbeer. The Court finds that Fredin's accusations were made in bad faith with the intent to harass Defendants, their counsel, and the Court. Insofar as the terms of the injunction set forth in this paragraph restrain Fredin's future conduct, those restraints shall expire five years from the date this Order is entered.

Fourth, the Court will enjoin Fredin from posting or causing to be posted, either himself or by any third party, additional websites, videos, or other publicly accessible

online media targeting Defendants, their counsel, or any judge of this Court or member of this Court's staff involved in this litigation, insofar as the material posted harasses the subject of the posting, as that term is defined in Minnesota Statutes § 609.748, Subdivision 1. Namely, Fredin must not post or cause to be posted, either himself or by any third party, any website, video, or other publicly accessible online media about Defendants, their counsel, or any judge of this Court or member of this Court's staff if such website, video, or other online media constitutes "intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy" of the subject of the website, video, or other online media. Minn. Stat. § 609.748, Subd. 1(a)(1) (2020). In the interest of making crystal-clear this Court's mandate, the Court notes that each of the websites and videos Fredin has posted about Defendants' counsel and Magistrate Judge Bowbeer would likely meet this definition if reposted. Should the Defendants obtain new counsel in the course of this litigation, the Court's injunction shall apply by the same terms to harassing material posted about such counsel. Insofar as the terms of the injunction set forth in this paragraph restrain Fredin's future conduct, those restraints shall expire five years from the date this Order is entered.

Finally, the Court warns Fredin that failure to comply with the terms of this injunction will have consequences. Such consequences may include the dismissal of Fredin's still-pending lawsuit against Kreil, contempt proceedings that may result in Fredin's detention, or any other lawful penalty within this Court's contempt powers.

The Court finds that the foregoing injunction equitably balances the interests of the parties and the public, adequately preserves Fredin's First Amendment rights, and provides

sufficient notice to Fredin of what he is required to do, what he is prohibited from doing, and the consequences of any failure to comply. *See* Fed. R. Civ. P. 65(d).[6]

### B.    Motions to Declare Brock Fredin a Vexatious Litigant

The Court next considers Defendants' motions to declare Fredin a vexatious litigant and restrict his ability to file further lawsuits in this Court. Among the Court's inherent powers to sanction abuses of the judicial process is the power to place limits on a litigant's ability to commence litigation in the court. *In re Winslow*, 17 F.3d 314, 315 (10th Cir. 1994) ("[T]he right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." (quoting *Tripati v. Beaman*, 878 F.2d 351, 353 (10th Cir. 1989))); *see generally In re Tutu Wells Contamination Litig.*, 37 V.I. 398, 424–28 (3d Cir. 1997), *overruled on other grounds by Comuso v. Nat'l R.R. Passenger Corp.*, 267 F.3d 331, 338 (3d Cir. 2001) (reviewing remedies available under the court's inherent powers, which include limiting a litigant's future access to the court). "Defendants have a right to be free from harassing, abusive, and meritless litigation," and the "courts have a clear obligation to exercise their authority to protect litigants from such behavior." *In re Tyler*, 839 F.2d 1290, 1293 (8th Cir. 1988) (quotations omitted). "Restrictions are appropriate where a litigant has 'engaged

---

[6] The Court notes that Middlecamp, Miller, and Schaefer requested that the Court waive Rule 65(c)'s bond requirement. *See* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."). However, the injunction described herein is an exercise of the Court's inherent power to sanction abuses of the judicial process, not a preliminary injunction under Rule 65. Therefore, no bond is required.

in a pattern of litigation activity which is manifestly abusive.'" *City of Shorewood v. Johnson*, No. 11-cv-374 (JRT/JSM), 2012 WL 695855, at *4 (D. Minn. Mar. 5, 2012) (quoting *Johnson v. Cowley*, 872 F.2d 342, 344 (10th Cir. 1989)).

Fredin has generated twelve lawsuits in Minnesota and Wisconsin state and federal courts, along with numerous unsuccessful appeals, in the last three years. *See supra* note 3. Only two of Fredin's lawsuits—his current lawsuits against Middlecamp, Miller, and Schaefer—have proceeded beyond a motion to dismiss, although they did not ultimately survive summary judgment. (Order [17-cv-03058, Doc. No. 237; 18-cv-00466, Doc. No. 206].)

But it is not the quantity of Fredin's litigation alone that demonstrates Fredin's "manifestly abusive" intent. *City of Shorewood*, 2012 WL 695855, at *4. Many of Fredin's lawsuits contained overlapping claims and overlapping parties. Indeed, he has vowed: "Dismiss one of my lawsuits and two shall take its place." (Breyer Decl. [17-cv-03058, Doc. No. 215], Ex. 12, at 17.) Fredin's frequent filings, coupled with the toxic screeds contained in his submissions to this Court and the others, demonstrate that he has used litigation in a bad-faith effort to circumvent the 50-year HROs issued against him. Other courts have twice found that Fredin has used litigation to harass the Defendants, and one court has restricted his ability to file further lawsuits against them. (Breyer Decl. [17-cv-03058, Doc. No. 215], Ex. 8, at 11-13 (finding that Fredin filed one of his lawsuits solely to have contact with Schaefer, in violation of Schaefer's HRO against him); Breyer Decl. [17-cv-03058, Doc. No. 181], Ex. 2 (observing that Fredin has used litigation to harass

Middlecamp and restricting Fredin's ability to commence new litigation against Middlecamp).)

Yet it is Fredin's unacceptable conduct in relation to the instant motions that most clearly demonstrates that he is a malicious and vexatious litigant. Defendants identified dozens of websites and videos disparaging their counsel, the Court, and those involved in Fredin's prior litigation. These online materials are disturbing and vile. After Defendants sought this Court's intervention, but before Fredin had even filed his opposition memorandum, he published additional videos targeting Kreil's counsel. These latest videos are graphic, degenerate, and repugnant. Fredin's over-the-top and out-of-court retaliatory actions against Defendants, their counsel, and this Court dispel any doubt that Fredin's litigation goals are "harassing, abusive, and meritless." *In re Tyler*, 839 F.2d at 1293 (quoting *People of the State of Colorado v. Carter*, 678 F. Supp. 1484, 1486 (D. Colo. 1986)). As such, the Court has "a clear obligation to exercise [its] authority to protect litigants" from Fredin's behavior. *Id.* (quoting *People of the State of Colorado*, 678 F. Supp. at 1486).

The Court finds that Fredin's conduct in this litigation is unequivocally malicious and "manifestly abusive." *City of Shorewood*, 2012 WL 695855, at *4. Therefore, the Court will enjoin Fredin from filing further *pro se* lawsuits in this District without first obtaining permission from the Chief Judge of this Court.

### C.     Kreil's Motion for Sanctions

In addition to her motion for a temporary restraining order, Kreil requests that this Court sanction Fredin by terminating his case against her and awarding her attorneys' fees.

25

"A district court is vested with discretion to impose sanctions upon a party under its inherent disciplinary power." *Bass v. Gen. Motors Corp.*, 150 F.3d 842, 851 (8th Cir. 1998). "[D]ismissal may be ordered as a sanction upon a finding of bad faith, willfulness, or fault." *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 266 (8th Cir. 1993) (citation omitted). The Supreme Court has held that "outright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). However, the Eighth Circuit has recognized that "[t]here is a strong policy favoring a trial on the merits and against depriving a party of his day in court." *Bass*, 150 F.3d at 851 (quoting *Baker v. General Motors Corp.*, 86 F.3d 811, 817 (8th Cir. 1996)). "This policy rests upon the recognition that the opportunity to be heard is a litigant's most precious right and should be sparingly denied." *Id.* (quoting *Baker*, 86 F.3d at 817) (internal quotation marks omitted). But "[w]hen a litigant's conduct abuses the judicial process, dismissal of a lawsuit is a remedy within the inherent power of the court." *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694 (8th Cir. 2001) (citing *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992)).

In addition, the Court's inherent power permits the Court to "assess attorneys' fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Dillon*, 986 F.2d at 266 (citing *Chambers*, 501 U.S. at 44). In order to assess attorneys' fees as a sanction, the Court must specifically make a finding regarding the party's bad faith, and the party's "bad faith conduct must have practiced a fraud upon the court or defiled 'the temple of justice.'" *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 751 (8th Cir. 2004) (quoting *Chambers*, 501 U.S. at 46).

26

The Court declines to dismiss Fredin's complaint against Kreil as a sanction. Instead, the Court finds that the injunction described above serves as an adequate remedy at this stage. Nevertheless, Fredin is hereby warned that if the Court learns of additional bad-faith conduct toward Kreil, including violations of the injunction described in this Order, the Court will reconsider its decision not to terminate his lawsuit.

However, the Court grants Kreil's request for attorneys' fees. The Court finds that Fredin acted "in bad faith, vexatiously, wantonly, or for oppressive reasons" in creating websites and videos about Kreil's counsel and Magistrate Judge Bowbeer. *Dillon*, 986 F.2d at 266. Moreover, Fredin's attacks on Kreil's counsel and the magistrate judge have "defiled 'the temple of justice,'" *Stevenson*, 354 F.3d at 751 (quoting *Chambers*, 501 U.S. at 46), by threatening the "integrity and credibility of the civil justice system," *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993). Accordingly, the Court orders Fredin to pay the reasonable attorneys' fees incurred in bringing Kreil's Motion for Sanctions.

### D.    Fredin's Cross-Motions for Sanctions

Finally, the Court considers Fredin's motions to sanction Defendants and their Counsel. Fredin's request appears to rest on the asserted frivolity of Defendants' present motions, in addition to Fredin's long-held belief that Defendants are acting "in concert" to "destroy[] [his] life, ruin[] his career, and attack[] him in the media and on Twitter." (Mem. in Supp. of Plf.'s Cross-Motion for Sanctions [17-cv-03058, Doc. No. 234], at 7; [18-cv-00466, Doc. No. 203], at 7; [20-cv-01929, Doc. No. 28], at 6.) Having found great merit in Defendants' motions, the Court finds Fredin's assertion of frivolity meritless. And the Court finds no evidence in the record to support Fredin's contention that

27

Defendants are attempting to destroy his life and career through this litigation. Indeed, it was Fredin who filed each of these lawsuits against Defendants. Accordingly, the Court denies Fredin's Cross-Motions for Sanctions.

## III.    CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motions for a Preliminary Injunction [17-cv-03058, Doc. No. 212; 18-cv-00466, Doc. No. 189; 20-cv-01929, Doc. No. 15] are **GRANTED**, and an injunction shall issue under the Court's inherent authority to sanction abuses of the judicial process, as follows:

   A. Plaintiff must immediately remove, or cause to be removed, all websites and videos identified by Defendants that target Defendants' counsel or Magistrate Judge Bowbeer, such that the contents of said websites and videos are not accessible by the public. Specifically, Plaintiff must immediately remove or cause to be removed:

      i.   KJonBreyer.com

      ii.  attorneykjonbreyer.com

      iii. annelockner.com

      iv.  annelockner.attorneypetermayer.com

      v.   enakovacevic.com

      vi.  enakovacevic.attorneypetermayer.com

      vii. hayneshansen.net

viii.   hayneshansen.net.attorneypetermayer.com

ix.   lawyerhayneshansen.com

x.   annemlockner.com

xi.   annelockner.attorneypetermayer.com

xii.   Jamie-kreil.com

xiii.   attorneypetermayer.com

xiv.   https://youtu.be/_JSkH5r52ao (YouTube video titled "Anne M. Lockner - Minneapolis' Sexiest Attorney")

xv.   https://youtu.be/QFVYNQnIecg (YouTube video titled "Anne M. Lockner - Racist Attorney?")

xvi.   https://youtu.be/8OKrqkvOCZM (YouTube video titled "Haynes Hansen - Minnesota's Premier Ranching Lawyer")

xvii.   https://youtu.be/2ydfF2vm4MY (YouTube video titled "Charlie C. Gokey - Minneapolis's Most Crooked Attorney")

xviii.   https://youtu.be/lUGyNosr974 (YouTube video titled "Ena Kovacevic - Minneapolis's Most Crooked Attorney")

xix.   https://youtu.be/tdyWcPA5k0I (YouTube video titled "Anne M. Lockner - Minneapolis's Most Abusive Attorney")

xx.   https://youtu.be/LNOTm082pS8 (YouTube video titled "Haynes Hansen - Minneapolis's Most Crooked Attorney")

xxi.   https://youtu.be/EqeNUf3CXpQ (YouTube video titled "K. Jon Breyer - Minneapolis's Worst Attorney")

xxii.   https://youtu.be/UTk9cuQ6HmY   (YouTube   video   titled "Steven C. Likes, Partner at Kutak Rock - Most Corrupt Lawyer at Kutak Rock")

xxiii.   https://youtu.be/cKZQ-cgv974 (YouTube video titled "Judge Hildy Bowbeer - Doesn't Protect Men")

xxiv.   https://youtu.be/SV7QSEob3fI (YouTube video titled "Judge Hildy Bowbeer - Conceals Law Enforcement Misconduct")

xxv.   https://youtu.be/pWPAHCN3iZQ   (YouTube   video   titled "Attorney K. Jon Breyer - Fabricates Affidavits and Falsifies Evidence")

B.   Plaintiff must immediately remove, or cause to be removed, all websites, videos, and other publicly accessible online media substantially similar to those identified above, even though such websites and videos are not specifically identified herein.

C.   Plaintiff must not repost or cause to be reposted, either himself or by any third party, any of the websites or videos identified above. Further, Plaintiff must not post or caused to be posted, either himself or by any third party, any additional websites, videos, or other publicly accessible online media that contain substantially similar accusations against Defendants, their counsel, or Magistrate Judge Bowbeer. Insofar as the terms of the injunction set forth in this

paragraph restrain Fredin's future conduct, those restraints shall expire five years from the date this Order is entered.

D. Plaintiff must not post or cause to be posted, either himself or by any third party, additional websites, videos, or other publicly accessible online media targeting Defendants, their counsel, or any judge of this Court or member of this Court's staff involved in this litigation, insofar as the material posted harasses the subject of the posting, as that term is defined in Minnesota Statutes § 609.748, Subdivision 1. Namely, Plaintiff must not post or cause to be posted, either himself or by any third party, any website, video, or other publicly accessible online media about Defendants, their counsel, or any judge of this Court or member of this Court's staff if such website, video, or other online media constitutes "intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy" of the subject of the website, video, or other online media. Minn. Stat. § 609.748, Subd. 1(a)(1) (2020). Should the Defendants obtain new counsel in the course of this litigation, the Court's injunction shall apply by the same terms to harassing material posted about such counsel. Insofar as the terms of the injunction set forth in this paragraph restrain Fredin's future conduct, those restraints shall expire five years from the date this Order is entered.

E. Finally, the Court admonishes Plaintiff that failure to comply with the terms of this injunction may result in the dismissal of Plaintiff's still-pending lawsuit against Defendant Kreil, contempt proceedings that may result in Plaintiff's detention, or any other lawful penalty within this Court's contempt powers.

2. Defendants' Motions to Declare Plaintiff a Vexatious Litigant [17-cv-03058, Doc. No. 209; 18-cv-00466, Doc. No. 186; 20-cv-01929, Doc. 10] are **GRANTED**, and Plaintiff is restricted from filing any new lawsuits in the District of Minnesota unless he is represented by an attorney or obtains prior written approval from the Chief Judge of the United States District Court for the District of Minnesota. Plaintiff must include a copy of this Order with any request for such approval.

3. Defendant Kreil's Motion for Sanctions [20-cv-01929, Doc. No. 15] is **GRANTED in part** and **DENIED in part**, as follows:

A. Defendant Kreil's request to dismiss the Complaint against her as a sanction is **DENIED**;

B. Defendant Kreil's request for an award of reasonable attorneys' fees incurred in bringing the Motion for Sanctions is **GRANTED**; and

C. Defendant Kreil is ordered to submit a memorandum and declaration documenting the attorneys' fees incurred in bringing her Motion for Sanctions, to be served and filed within fourteen (14) days of the date this Order is entered. Plaintiff is ordered to file a responsive

32

memorandum within fourteen (14) days after Defendant Kreil's memorandum and declaration are served.

4. Plaintiff's Cross-Motions for Sanctions [17-cv-03058, Doc. No. 233; 18-cv-00466, Doc. No. 202; 20-cv-01929, Doc. No. 27] are **DENIED**.

**IT IS SO ORDERED.**

Dated: November 23, 2020                              s/Susan Richard Nelson
                                                      SUSAN RICHARD NELSON
                                                      United States District Judge