## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Brock Fredin,

                    Plaintiff,          Court File No. 17-cv-03058 (SRN/HB)

v.

Lindsey Middlecamp,

                    Defendant.

Brock Fredin,

                    Plaintiff,          Case File No. 18-cv-466 (SRN/HB)

v.

Grace Elizabeth Miller, and
Catherine Marie Schaefer,

                    Defendants.

**Memorandum of Law in Support of Defendants' Motion for an Order to Show Cause and for Sanctions**

Defendants Lindsey Middlecamp, Grace Miller, and Catherine Schaefer, by and through their undersigned Counsel, hereby submit this memorandum in support of their motion for an Order to Show Cause and for Sanctions[1]. Defendants also join and

---

[1] The filings in these two matters are identical and, consequently, throughout the brief reference will only be made to document numbers associated with 17-cv-03058.

4844-2082-4020.1

incorporate by reference Jamie Kreil's motion for an Order to Show Cause (20-cv-01929, Doc. 51) and request for attorneys' fees as a sanction (20-cv-01929, Doc. 77).

## INTRODUCTION

Brock Fredin has engaged in an "online assault on the reputations of opposing counsel, judges, and court staff in order to bully Defendants into favorable settlement terms and influence this Court's rulings." (Doc. 253 at 14.) As a result, on November 23, 2020, the Court ordered Brock Fredin to "immediately remove, or cause to be removed" a series of defamatory and harassing websites and videos, and further ordered that he not create or post new websites or videos with "substantially similar accusations." (Doc. 253 at 28-32.) In response, Fredin thumbed his nose at the Order declaring he "w[ould] not abide by the directives set forth in [the] November 23, 2020 Order." (Doc. 256 at 2.) He has further proclaimed repeatedly that "[u]nder no conditions will any of these websites or videos ever be taken down." (Doc. 234 at 5.) As of the filing of this Motion, the videos and websites listed in the Court's Order remain online for public viewing.

Astonishingly, in brazen defiance of the Court's Order, on December 1, 2020, Fredin published new defamatory videos and websites, again falsely accusing defense counsel and this Court of discrimination and bigotry. He even posted a new video and website mocking Judge Nelson for issuing the Order. Apparently acknowledging the falsity of the malicious content he has posted, Fredin never identifies himself as the author of these website and videos, but instead misrepresents to the public that the content is "Brought to you by Black Lives Matter." By posting his hate filled rhetoric, he demeans the person who is the subject of the online smear as well as the Black Lives Matter

2

movement. In his court filings, Fredin admits he is the author and creator of the offending websites and videos. (Docs. 234, 256, 269.)

Fredin cannot continue to victimize Defendants, their *pro bono* attorneys, and this Court in light of the Court's Order. Fredin's abhorrent campaign is specifically designed to directly threaten Defendants, malign this Court, defame the legal system, and discourage *pro bono* representation of Defendants. It cannot continue.

Fredin is admittedly in willful contempt of this Court's Order. The Court should (1) require Fredin to show cause why it should not hold him in contempt; (2) impose a fine recurring daily until Fredin complies with the Court's Order; (2) award Defendants' attorneys' fees as a sanction; (3) detain Fredin until he complies; and (4) refer the matter for criminal prosecution.

## ARGUMENT

### I.      The Court Should hold Fredin in Contempt

The Court retains jurisdiction to enforce its injunction through contempt sanctions, notwithstanding Fredin's notice of appeal. *See, e.g.*, *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1223 (8th Cir. 2006). "If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). Fredin has sought, but has not obtained, a stay of the Court's Order.

While Fredin has appealed the Court's Order, that does not obviate his duty to abide by the Court's ruling. "One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of

3

orders to which they are subject." *Chi. Truck Drivers Union Pension Fund*, 207 F.3d at 504. "Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Maness*, 419 U.S. at 458.

A party seeking civil contempt bears the initial burden of proving a violation of the court's order. *Chi. Truck Drivers Union Pension Fund*, 207 F.3d at 505. Upon such a showing, the burden shifts to the violating party to demonstrate, "categorically and in detail," that it is impossible to comply with the order, this inability to comply is not self-induced, and the violating party made a good-faith effort to comply with the order. *United States v. Santee Sioux Tribe of Neb.*, 254 F.3d 728, 736 (8th Cir. 2001). In the context of criminal contempt, a party may be found in contempt through a "deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of any order," and the necessary intent "may be inferred from the evidence." *Wright v. Nichols*, 80 F.3d 1248, 1251 (8th Cir. 1996) (quoting *Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 781 (8th Cir.1987). Fredin should be found to have committed criminal contempt, as his refusal to remove the harmful content and his posting of new offensive content are "volitional act[s] done by one who knows or should reasonably be aware that [his] conduct is wrongful." *Id*. at 1251 (quoting *In re Holloway*, 995 F.2d 1080, 1082 (D.C.Cir.1993).

Fredin has admitted willfully violating the Court's Order, declaring that he "will not abide by the directives set forth in [the] November 23, 2020 Order." (Doc. 256 at 2) And proclaims that "[u]nder no conditions will any of these websites or videos ever be taken

4

down." (Doc. 234 at 5.) Fredin's willful contempt satisfies the standard for both civil and criminal contempt sanctions.

The Court should issue an Order to Show Cause as to why it should not hold Fredin in civil and criminal contempt. The Court should also sanction Fredin.

## II.    The Court should sanction Fredin

The Court has broad discretion to impose a remedy that will bring about compliance. *United States v. Open Access Tech. Int'l, Inc.*, 527 F. Supp. 2d 910, 913 (D. Minn. 2007). In fashioning a sanction, the Court must consider "(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose, and (4) the willfulness of the contemnor in disregarding the court's order." *Paisley Park Enterprises, Inc. v. Boxill*, No. 17-cv-1212 (WMW/TNL), 2019 WL 2710703, at *4 (D. Minn. June 28, 2019) (citations omitted).

Here, Fredin's noncompliance with the Court's Order imposes significant and continuing harm on Fredin's victims, and the judicial system. Every day Fredin's vile content remains online, his inflammatory falsehoods become more widely disseminated and Fredin continues to post new content in brazen noncompliance with the Court's Order.

### A.    A daily monetary fine

Defendants' join in Kreil's request that the Court impose a fine of $500 recurring daily until Fredin removes his harassing publications as a civil contempt sanction. The amount and frequency of the sanction should be severe enough to cause Fredin's compliance with the Order. Fredin has testified that he "earn[s] a yearly income of $160,000." (Doc. 151 at 5.) Consequently, the amount of the sanction required for Fredin

to take notice and be motivated to remediate his wrongdoing must be substantial. To the extent Fredin objects to the amount, he has the option of avoiding it by immediately removing the content and to abide by the Court's Order.

### B.      Attorneys' Fees

Defendants seek fees for 29.74 hours spent preparing their Motion for an Injunction and this motion, which if billed at counsel's customary rates would have generated fees totaling $12,490.80. *See* Declaration of K. Jon Breyer ("Breyer Decl.") ¶2. This amount is both reasonable and fair, as it does not take into account the contributions of others who assisted in the research and drafting of the motions.[2] *Id*. ¶6.

Defendants' counsel has incurred hundreds of hours fending off Fredin's meritless claims, as well as having to prosecute his wrongdoing before this court. The law firm of Kutak Rock has also expended thousands of dollars supporting this pro bono effort. *Id*. ¶7. Here, however, Defendants seek only the fees specifically related to their motion for an injunction and this motion—to the exclusion of the more than $120,000 expended this year alone in fees and costs associated with Fredin's vexatious litigation.

Fredin's "unequivocally malicious" conduct, (Doc. 253 at 25), has forced Defendants' counsel to set aside other paying work and seek relief from the Court on an expedited basis. *Id*. ¶5. Moreover, despite proclaiming that he would not comply with the

---

[2] Given Fredin's proclivity for harassing all those who come in contact with these cases, the names of those who assist in the *pro bono* representation of Defendants will remain anonymous. As such, Defendants' request for sanctions does not include their significant contributions, or their billable time, which if included, would bring the total accrued hours to 47.8 hours. Breyer Decl. ¶6.

6

Court's November 23, 2020 Order, Fredin further made a baseless request for leave to file a motion to reconsider (Doc. 256), necessitating an opposition from Defendants (Doc. 260). Fredin has also filed a frivolous Motion to Vacate (Doc. 269), which will only further burden counsel's time. Additionally, Fredin has filed a frivolous appeal regarding the Court's Order (Doc. 262), which will necessitate a significant amount of counsel's time.

The time Defendants' counsel spent on the motion for an injunction and this motion was both necessary and proportionate. Breyer Decl. ¶4. Moreover, Fredin's ongoing contempt of the Court's Order (Doc. 253) makes clear that Defendants' counsel can expect to dedicate significant additional time and resources to the issue going forward. The fact that this time was provided *pro bono* does not mean that it is not compensatable.

"Attorney's Fees" are "not the amount actually paid or owed by the party to its attorney, but the value of attorney services provided to the party," and such fees may be awarded to a pro bono attorney. *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 679 (10th Cir. 2012); *see also Cornella v. Schweiker*, 728 F.2d 978, 987 (8th Cir. 1984) (holding that pro bono counsel was entitled to an award of attorney's fees under the Equal Access to Justice Act even though counsel served on a pro bono basis).

Both the time expended on the motions and the billing rate of Defendants' counsel are reasonable. As to the former, the time Defense counsel spent preparing the motions was commensurate to the task. Breyer Decl. ¶4. The motions address broad-ranging misconduct spanning multiple lawsuits and dozens of online publications—requiring extensive briefing on an expedited schedule. As to the later, this Court has already determined that Defense

7

counsel's rate of $420.00 per hour is fair and reasonable given his experience and qualifications. (Doc. 161 at 7.)

The fees requested here are a small portion of those incurred in combating an "online assault on the reputations of opposing counsel, judges, and court staff in order to bully Defendants into favorable settlement terms and influence this Court's rulings." (Doc. 253 at 14.) Counsel performed significant work under an expedited time frame to address Fredin's "unequivocally malicious" conduct. (*Id.* at 25.) It is only just that Fredin bear the cost of his malfeasance.

## C.    Additional sanctions are appropriate

Finally, the Court should impose any other sanctions it deems appropriate to punish Fredin's contempt. "[T]he trial court has discretion to fashion the relief, and the party to be held in contempt does not have to have detailed notice of the relief that may be granted." *Hubbard*, 810 F.2d at 782. The contempt power of the court is described by 18 U.S.C. § 401:

> A court of the United States shall have such power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) Misbehavior of any of its officers in their official transactions; (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

When circumstances warrant, the Court may "coerce obedience to its orders by summarily holding a recalcitrant person ... in civil contempt and then imprisoning him until he complies." *Edeh v. Carruthers*, No. CIV. 10-2860 RJK/JSM, 2011 WL 4808194, at *2 (D. Minn. Sept. 20, 2011), report and recommendation adopted sub nom. *Edeh v. D. Scott*

8

*Carruthers Attorneys at Law*, No. CIV. 10-2860 RHK/JSM, 2011 WL 4808191 (D. Minn. Oct. 11, 2011) (quoting *In re Crededio,* 759 F.2d 589, 590 (7th Cir.1985). Where, as here, a party willfully flouts the court's orders by refusing to comply, the sanction of imprisonment is warranted. *Id.* *2.

This Court has already warned Fredin that his disobedience may result in detention. (Doc. 253 at 32.) Defendants request that the Court enforce its ruling and detain Fredin until he complies with the Court's Order. Defendants also request that the Court refer the matter for criminal prosecution under 18 U.S. § 2261A.

Should the Court believe that any additional sanctions are necessary and appropriate, Defendants encourage this Court to impose them as well.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court issue an Order to Show Cause, sanction Fredin for his misconduct, detain him until he complies with the Court's Order,  and refer the matter for subsequent criminal prosecution.

Date:  December 9, 2020            **KUTAK ROCK LLP**

By: */s/ K. Jon Breyer*
K. Jon Breyer (302259)
60 South Sixth Street
Suite 3400
Minneapolis, Minnesota 55402
Telephone:   (612) 334-5057
Jon.breyer@kutakrock.com

***Pro Bono Counsel to Defendants Lindsey Middlecamp, Grace Elizabeth Miller and Catherine Marie Schaefer***

9

4844-2082-4020.1