# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Brock Fredin, | Case No. 17-cv-03058 (SRN/HB) |
| Plaintiff, | |
| v. | **ORDER** |
| Lindsey Middlecamp, | |
| Defendant. | |

| | |
|---|---|
| Brock Fredin, | Case No. 18-cv-00466 (SRN/HB) |
| Plaintiff, | |
| v. | |
| Grace Elizabeth Miller et al., | |
| Defendants. | |

| | |
|---|---|
| Brock Fredin, | Case No. 20-cv-01929 (SRN/HB) |
| Plaintiff, | |
| v. | |
| Jamie Kreil, | |
| Defendant. | |

Brock Fredin, 1180 Seventh Avenue, Baldwin, WI 54002, Pro Se.

K. Jon Breyer, Kutak Rock LLP, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402, for Defendants Lindsey Middlecamp, Grace Elizabeth Miller, and Catherine Marie Schaefer.

1

Anne M. Lockner, Ena Kovacevic, and Haynes Hansen, Robins Kaplan LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, for Defendant Jamie Kreil.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on three motions filed in three related cases. First, Plaintiff Brock Fredin moves to vacate this Court's November 23, 2020 Order (the "Sanctions Order") under Federal Rule of Civil Procedure 60(b) [17-cv-03058, Doc. No. 269; 18-cv-00466, Doc. No. 238; 20-cv-01929, Doc. No. 69]. Second, Fredin moves to stay the Sanctions Order pending an appeal to the Eighth Circuit Court of Appeals [17-cv-03058, Doc. No. 287; 18-cv-00466, Doc. No. 259; 20-cv-01929, Doc. No. 93]. Finally, Defendants Lindsey Middlecamp, Grace Miller, Catherine Schaefer, and Jamie Kreil (collectively, "Defendants") move the Court to enter an Order to Show Cause why Fredin should not be held in contempt of the Sanctions Order and to impose additional sanctions [17-cv-03058, Doc. No. 276; 18-cv-00466, Doc. No. 246; 20-cv-01929, Doc. No. 51].[1] Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **DENIES** Fredin's Motions to Vacate and Stay the Sanctions Order, and **GRANTS in part and DEFERS in part** Defendants' Motions for an Order to Show Cause and Sanctions.

---

[1] Hereafter, where identical documents have been filed in these cases the Court will cite only to the 17-cv-03058 docket as a matter of convenience.

**I.	BACKGROUND**

The First Amendment right to free speech is a cherished and fundamental Constitutional right. *See, e.g.*, *Dennis v. United States*, 341 U.S. 494, 503 (1951); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942). Yet the right to free speech is neither "unlimited" nor "unqualified," and "the societal value of speech must, on occasion, be subordinated to other values and considerations." *Dennis*, 341 U.S. at 503. In particular, "[t]here are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Chaplinsky*, 315 U.S. at 571–72. Unprotected speech traditionally includes "the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words," because "such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Id.* at 572 (footnote omitted).

Consistent with these principles, courts have recognized that the First Amendment does not entitle a litigant to harass and intimidate opposing parties, their counsel, or the court. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 n.18 (1984) ("Although litigants do not 'surrender their First Amendment rights at the courthouse door,' those rights may be subordinated to other interests that arise in this setting." (citation omitted)); *Lewis v. S.S. Baune*, 534 F.2d 1115, 1122 (5th Cir. 1976) ("Parties certainly do not have a right to obtain a settlement through duress, harassment, or overbearing conduct. . . . There is no reason the recurrent harassing conduct of a party in pursuit of a settlement may not be enjoined." (citation omitted)); *Blum v. Schlegel*, No. 91-CV-633S, 1996 WL 925921, at *8 (W.D.N.Y.

3

May 9, 1996), *aff'd*, 108 F.3d 1369 (2d Cir. 1997) (sanctioning litigant for sending letters to third parties, including the state's federal bench, disparaging opposing counsel and the presiding judge); *cf. Chaplinsky*, 315 U.S. at 572 ("Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution . . . ." (quotation omitted)).

As this Court has now repeatedly ruled, one context in which speech is not protected is where Defendants' counsel and the Court, unfortunately, find themselves in this case—the targets of a vicious internet campaign of bullying, harassment, intimidation, and retaliation specifically designed to interfere with the judicial process. For instance, Fredin has posted grotesque videos about the judges involved in this litigation after receiving adverse rulings from the Court,[2] and has posted numerous defamatory videos about Defendants' counsel in an effort to bully them and extort favorable settlement terms.[3]

---

[2] Fredin's videos disparaging Magistrate Judge Hildy Bowbeer accuse the judge of "protect[ing] corrupt law enforcement officers," "conceal[ing] misconduct and refus[ing] to protect men," and suggest that Judge Bowbeer's rulings against Fredin were based on improper motives. (Lockner Decl. [20-cv-01929, Doc. No. 18], at ¶ 31.) One of the videos features vulgar, disturbing imagery. (*See id.*; Second Lockner Decl. [20-cv-01929, Doc. No. 23], Ex. G.) After the Court issued its November 23, 2020 Order sanctioning Fredin for this conduct, Fredin created another video and website falsely accusing the undersigned of racism and bigotry, and falsely stating that the undersigned "bought her way to the top by bribing racist United States Senator Amy Klobuchar." (Fourth Lockner Decl. [20-cv-01929, Doc. No. 54], at ¶¶ 9-13.)

[3] Fredin's websites contain photographs of their victims, along with conclusory, baseless accusations that the victims engaged in racism, torture, and terrorism. (Breyer Decl. [17-cv-03058, Doc. No. 215], Ex. 7.) After Defendants sought this Court's intervention, Fredin posted additional, disturbing videos about Kreil's counsel. One video describes one of Kreil's attorneys as "Minneapolis' Sexiest Attorney," and falsely states that the attorney is the "2X champion of the Minnesota Bar Association wet t-shirt contest." (Third Lockner Decl. [20-cv-01929, Doc. No. 33], at ¶ 18.) The video is set to vulgar

4

In response to Fredin's online tactics, Defendants sought this Court's intervention. On November 23, 2020, this Court found that Fredin had created his websites and videos in a bad-faith effort to harass and intimidate Defendants, their counsel, and the Court. (Sanctions Order [17-cv-03058, Doc. No. 253], at 14-15.) Accordingly, the Court sanctioned Fredin under its inherent power to sanction abuses of the judicial process. That sanction took the form of an injunction requiring, *inter alia*, that Fredin immediately remove his websites and videos, coupled with the admonition that failure to comply with the injunction could result in further penalties. (*Id.* at 17.)

Subsequently, Fredin engaged in extensive motion practice in an effort to obviate the Sanctions Order—but refused to comply with the Order. First, Fredin filed a letter requesting permission to file a Motion for Reconsideration and requesting that the Court stay the Sanctions Order pending appeal. (Corrected Letter to District Judge [17-cv-03058, Doc. No. 256].) In that letter, Fredin informed the Court that he "will not abide by the directives set forth" in the Sanctions Order. (*Id.* at 2.) While Fredin's requests were still pending, Fredin created an additional website and video maligning the undersigned, and another video disparaging Kreil's counsel. (*See* Letter to District Judge [17-cv-03058, Doc. No. 263]; Fourth Lockner Decl.; *see also supra* note 3.) Fredin then filed a Motion to

---

images and music. (*Id.*) Another video is even more sexually explicit, featuring pictures of Kreil's counsel and a graphic voiceover describing gay sex. (*Id.* ¶ 15.) In support of the instant motions, Fredin belatedly casts these videos as "satirical spoof law firm advertisement[s]." (*See* Mem. in Supp. of Mot. to Vacate [17-cv-03058, Doc. No. 270], at 20.) The fact that Fredin used this argument as an opportunity to further insult Kreil's counsel is not lost on the Court. (*See id.* at 24 (describing one of Kreil's attorneys as "an objectively unattractive woman").)

5

Vacate the Sanctions Order under Federal Rule of Civil Procedure 60(b). (Mot. to Vacate [17-cv-03058, Doc. No. 269].)

Thereafter, the Court denied Fredin's request for permission to file a Motion for Reconsideration as well as his request for a stay, finding that Fredin had demonstrated neither the compelling circumstances required for a Motion for Reconsideration nor the exceptional circumstances justifying a stay pending appeal. (Order [17-cv-03058, Doc. No. 271].) Fredin then filed a Motion to Disqualify the undersigned, which the Court denied. (Mot. to Disqualify District Judge [17-cv-03058, Doc. No. 252]; Order [17-cv-03058, Doc. No. 265].) Despite the Court's previous ruling on Fredin's request to stay the Sanctions Order, Fredin also filed the instant Motion to Stay. (Mot. to Stay [17-cv-03058, Doc. No. 259].) Meanwhile, Defendants filed motions requesting that the Court enter an Order to Show Cause why Fredin should not be found in contempt for failing to comply with the Sanctions Order. (Mot. for an Order to Show Cause and Sanctions [17-cv-03058, Doc. No. 276; 18-cv-00466, Doc. No. 246; 20-cv-01929, Doc. No. 51].) Defendants Middlecamp, Miller, and Schaefer also request an attorneys' fee award as a further sanction. (*Id.*)

## II.   DISCUSSION

Thus, three motions are before the Court: Fredin's Motion to Vacate the Sanctions Order, Fredin's Motion to Stay the Sanctions Order, and Defendants' requests for an Order to Show Cause and attorneys' fees. The Court will consider each motion in turn.

### A.   Motion to Vacate

Under Federal Rule of Civil Procedure 60(b), "[o]n motion and just terms, the court may relieve a party or its legal representative from a[n] . . . order" if the order is "void" or

6

for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(4), (6). "Relief under Rule 60(b) is an extraordinary remedy," and "is not appropriate as a substitute for direct appeal of a judgment." *In re Design Classics, Inc.*, 788 F.2d 1384, 1386 (8th Cir. 1986) (citing *Horace v. St. Louis Southwestern Ry. Co.*, 489 F.2d 632, 633 (8th Cir. 1974)). Thus, "[w]hen an error of law is alleged, the proper vehicle for attack on that error is the direct appeal." *Id.* Moreover, Rule 60(b) "is not a vehicle for simple reargument on the merits," and "[t]his ground alone is sufficient" to deny a motion under Rule 60(b). *Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999).

In his motion, Fredin argues, at length, that the Sanctions Order violated his First Amendment and due process rights. Fredin raised many of the same arguments in his defense when Defendants moved for a temporary restraining order requiring him to take down his websites and videos. (*See* Mem. in Opp. [17-cv-03058, Doc. No. 234], at 14-17.) And Fredin's additional defenses raised in his Motion to Vacate—such as the argument that two of the videos are protected parody and satire, and that due process required additional procedures prior to enjoining Fredin's conduct—could have been raised at that time, but were not. Fredin had ample opportunity to be heard on these issues. That Fredin disagrees with the Court's Order is clear; but the proper avenue for redress is to file an appeal of the Sanctions Order—which Fredin has already done. (*See* Notice of Appeal [17-cv-03058, Doc. No. 258].) Rule 60(b) "is not a vehicle for simple reargument on the merits," *Broadway*, 193 F.3d at 990, and "is not appropriate as a substitute for direct appeal," *In re Design Classics, Inc.*, 788 F.2d at 1386. This ground is alone sufficient to deny the Motion to Vacate. *See Broadway*, 193 F.3d at 990.

7

Moreover, insofar as Fredin argues that the Court denied him due process—including "a full trial on the merits in front of a jury on the issue of whether or not the speech contained in his existing YouTube videos and websites is protected by the First Amendment"—Fredin is mistaken. (Mem. in Supp. of Mot. to Vacate [17-cv-03058, Doc. No. 270], at 9.) Fredin does not dispute the contents of the websites and videos, the timing of their posting, or that he posted them. Because these factual predicates were uncontested, the question before the Court was a purely legal one: Does the First Amendment protect such speech? In ruling on that question, the Court considered declarations and legal memoranda presented by both parties, satisfying the requirements of due process. *Cf. Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968) ("In the absence of evidence and argument offered by both sides and of their participation in the formulation of value judgments, there is insufficient assurance of the balanced analysis and careful conclusions which are essential in the area of First Amendment adjudication."). Under such circumstances, Fredin's right to due process did not require an evidentiary hearing—let alone "a full trial on the merits in front of a jury."

Accordingly, the Court denies Fredin's Motion to Vacate.[4]

---

[4] Kreil also requests that the Court seal Exhibit B to Fredin's declaration filed in support of his Motion to Vacate. Exhibit B contains a screen-by-screen replication of one of the videos disparaging Kreil's counsel. (*See* Fredin Decl. [20-cv-01929, Doc. No. 72], Ex. B.) Because Exhibit B contains material the Court previously ordered sealed, *see* Order [20-cv-01929, Doc. No. 67], the Court grants Kreil's request.

**B.    Motion to Stay**

The Court next considers Fredin's Motion to Stay the Sanctions Order. At the outset, the Court notes that Fredin filed an emergency motion to stay the Sanctions Order before the Eighth Circuit, and the Eighth Circuit denied that motion. (*See* Motion for Stay, Nos. 20-3516, 20-3525, 20-3528 (8th Cir. Dec. 8, 2020); Order Denying Stay, Nos. 20-3516, 20-3525, 20-3528 (8th Cir. Jan. 6, 2021).) In addition, Fredin previously requested that this Court stay the Sanctions Order, and the Court denied that request. (Corrected Letter to District Judge [17-cv-03058, Doc. No. 256]; Order [17-cv-03058, Doc. No. 271].) Yet, rather than request permission to file a Motion for Reconsideration of this Court's ruling, as required by this Court's local rules, Fredin filed a second Motion to Stay the Sanctions Order. Fredin asserts that the "Defendants (sic) recent request that Plaintiff be held in criminal contempt provides new grounds for requesting a stay." (Mem. in Supp. of Mot. to Stay [17-cv-03058, Doc. No. 289], at 2.)

But the prospect of criminal contempt proceedings resulting from Fredin's willful non-compliance with the Sanctions Order—a possibility which was not only noted in the Sanctions Order, but which inheres in the Court's authority to enforce its orders—does not constitute compelling circumstances justifying a Motion for Reconsideration. *See* Local Rule 7.1(j). Because Fredin failed to properly seek reconsideration of the Court's previous ruling on his request to stay the Sanctions Order and, notwithstanding that failure, Fredin has not shown compelling circumstances justifying reconsideration of the Court's ruling, the Court denies Fredin's Motion to Stay for the reasons identified in its December 4, 2020 Order. (*See* Order [17-cv-03058, Doc. No. 271].)

9

### C. Motion for an Order to Show Cause

Finally, the Court grants Defendants' request that the Court enter a show cause order. Fredin has repeatedly stated his intention not to comply with the Sanctions Order, and it is undisputed that he has not complied with that Order—despite the pendency of contempt proceedings against him. It is clear that Fredin believes the Sanctions Order wrongly decided. However, Fredin may not "anoint [himself] with the power to adjudge the validity" of this Court's orders. *Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 504 (8th Cir. 2000). As the Supreme Court has held, "all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal." *Maness v. Meyers*, 419 U.S. 449, 458 (1975). Consequently, "[p]ersons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Id.* at 458–59 (citing *Howat v. Kansas*, 258 U.S. 181, 189–90 (1922); *Worden v. Searls*, 121 U.S. 14 (1887)). Therefore, Fredin's contention that the Sanctions Order is invalid does not absolve him of the obligation to comply with the Order, and does not shield him from contempt proceedings.

The Court will offer Fredin one more opportunity to comply with the Sanctions Order. Two weeks from the date this Order is entered, Fredin shall file a declaration stating whether he has removed his websites and videos in compliance with the Sanctions Order, and if not, the reasons for his failure to do so. If the websites and videos are not removed, the Court will enter a sanctions order. The Court warns Fredin that potential sanctions may

include the full panoply of civil contempt sanctions—including a prospective, per diem fine accruing each day that Fredin remains in contempt, as well as an award of the attorneys' fees and costs incurred by the Defendants as a result of Fredin's contempt.[5] *See United States v. Onan*, 190 F.2d 1, 9 (8th Cir. 1951) ("The power to impose a fine for civil contempt is well settled." (collecting authorities)); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) ("[A] court may assess attorney's fees as a sanction for the willful disobedience of a court order. Thus, a court's discretion to determine [t]he degree of punishment for contempt permits the court to impose as part of the fine attorney's fees representing the entire cost of the litigation." (internal quotation marks and citations omitted)). The Court may also refer the matter to the United States Attorney's Office for the prosecution of criminal contempt proceedings. *See* Fed. R. Crim. P. 42.

### III.  CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

---

[5] The Court will defer ruling on Middlecamp, Miller, and Schaefer's request for attorneys' fees filed with their Motions for an Order to Show Cause. The Court notes that, contrary to Fredin's arguments, the fact that Defendants are represented *pro bono* does not preclude an attorneys' fee award. *See Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 679 (10th Cir. 2012) ("[A] 'reasonable attorney's fee' [is] reasonable compensation, in light of all the circumstances, for the time and effort expended by the attorney for the [party], no more and no less. In other words, an 'attorney fee' arises when a party uses an attorney, regardless of whether the attorney charges the party a fee; and the amount of the fee is the reasonable value of the attorney's services." (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989)) (internal quotation marks omitted)). Accordingly, should Fredin continue to refuse to comply with the Sanctions Order, the Court will consider Defendants' request for additional attorneys' fee awards along with all other available contempt sanctions.

1. Plaintiff's Motion to Vacate [17-cv-03058, Doc. No. 269; 18-cv-00466, Doc. No. 238; 20-cv-01929, Doc. No. 69] is **DENIED**;

2. Plaintiff's Motion to Stay [17-cv-03058, Doc. No. 287; 18-cv-00466, Doc. No. 259; 20-cv-01929, Doc. No. 93] is **DENIED**;

3. Defendants' Motions for an Order to Show Cause and Sanctions [17-cv-03058, Doc. No. 276; 18-cv-00466, Doc. No. 246; 20-cv-01929, Doc. No. 51] are **GRANTED in part and DEFERRED in part**, and Plaintiff is ordered to file, two weeks from the date this Order is entered, a declaration stating whether he has removed his websites and videos in compliance with the Sanctions Order, and if not, the reasons for his failure to do so. Defendants shall file any response within two weeks from the date that declaration is filed; and

4. The Clerk is directed to seal Exhibit B to Plaintiff's Declaration filed in support of his Motion to Vacate [17-cv-03058, Doc. No. 272; 18-cv-00466, Doc. No. 240; 20-cv-01929, Doc. No. 72]. Because the Declaration was filed with both Exhibit A and Exhibit B combined in one document, the Clerk shall seal the entire Declaration, including both Exhibit A and Exhibit B. Plaintiff may, if he so chooses, publicly re-file Exhibit A (but he shall not publicly re-file Exhibit B).

**IT IS SO ORDERED.**

Dated: January 8, 2021                             s/Susan Richard Nelson
                                                                                         SUSAN RICHARD NELSON
                                                                                         United States District Judge