**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Brock Fredin,<br><br>Plaintiff,<br><br>v.<br><br>Lindsey Middlecamp,<br><br>Defendant. | Civ. No. 17-03058 (SRN/HB)<br><br>**MEMORANDUM OPINION AND ORDER** |
| Brock Fredin,<br><br>Plaintiff,<br><br>v.<br><br>Grace Elizabeth Miller et al.,<br><br>Defendant. | Civ. No. 18-00466 (SRN/HB) |
| Brock Fredin,<br><br>Plaintiff,<br><br>v.<br><br>Jamie Kreil,<br><br>Defendant. | Civ. No. 20-01929 (SRN/HB) |

Brock Fredin, 1180 Seventh Avenue, Baldwin, WI 54002, Pro Se.

K. Jon Breyer, Kutak Rock LLP, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402, for Defendants Lindsey Middlecamp, Grace Elizabeth Miller, and Catherine Marie Schaefer.

Anne M. Lochner, Ena Kovacevic, and Haynes Hansen, Robins Kaplan LLP, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, for Defendant Jamie Kreil.

---

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiff Brock Fredin's Motion for Sanctions filed in three related cases [17-cv-03058, Doc. No 323; 18-cv-00466, Doc. No. 298; 20-cv-01929, Doc. No. 168],[1] as well as the following four motions filed in *Kreil*, Civ. No. 20-01929: (1) Plaintiff's Motion to Disqualify District Judge under 28 U.S.C. § 455 [Doc. No. 178]; (2) Plaintiff's Motion to Disqualify Counsel [Doc. No. 183]; (3) Plaintiff's Motion to Stay [Doc. No. 192]; and (4) Defendants Lindsey Middlecamp, Grace Miller, Catherine Schaefer, and Jamie Kreil's (collectively, "Defendants") Joint Renewed Motion for Order to Show Cause [Doc. No. 151] ("Joint Sanctions Motion"). Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court grants in part and denies in part these motions.

## I. BACKGROUND

These defamation actions originally arose from certain posts made to social media regarding sexual assault allegations. Plaintiff Brock Fredin commenced an action against Defendant Middlecamp, alleging that she defamed him on social media by posting another woman's allegation that Fredin sexually assaulted her. (*See generally* Am. Compl. [17-cv-03058, Doc. No. 5].) Fredin brought a similar action against Defendants Grace Miller and

---

[1] Hereafter, where identical documents have been filed in these cases, the Court will cite only to the 17-cv-03058 docket as a matter of convenience.

Catherine Schaefer. (*See generally* Am. Compl. [18-cv-00466, Doc. No. 53].) Fredin also filed a lawsuit against Defendant Jamie Kreil alleging, among other claims, defamation related to an affidavit Kreil submitted in the Middlecamp and Miller-Schaefer litigation. (Am. Compl. [20-cv-01929, Doc. No. 6] ¶ 1, Ex. A.) The background of these cases is fully set out in this Court's orders granting summary judgment in the Middlecamp and Miller-Schaefer cases, and the order granting Kreil's motion to dismiss, and the Court incorporates that background by reference. (*See* November 13, 2020 Order [17-cv-03058, Doc. No. 237; 18-cv-00466, Doc. No. 206]; *see also* December 18, 2020 Order [20-cv-1929, Doc. No. 100].) Accordingly, the Court recounts only the factual background and procedural history that is most relevant to these motions.

**A. Plaintiff's Prior Misconduct**

In the course of these lawsuits, Fredin has filed many documents containing extremely inflammatory remarks directed to Defendants, their families, their legal counsel, and court personnel. He has also mounted a campaign to create websites and internet videos that disparage attorneys, judges, jurors, and court personnel involved in his various lawsuits. (*See, e.g.*, Declaration of K. Jon Breyer [17-cv-03058, Doc. No. 215] ("First Breyer Decl.") Ex. 7; *see* Declaration of Anne M. Lockner [20-cv-01929, Doc. No. 18] ("First Lockner Decl.") ¶¶ 5–31, Exs. A–F.) These websites and videos contain photographs of the victims of his campaign (judges, lawyers, and the like) with captions or voiceovers that make baseless accusations of racism, torture, drug abuse, and other illegal acts. (*See id.*)

Fredin has acknowledged that he is responsible for these websites and videos, declaring that "[u]nder no conditions will any of these websites or videos ever be taken down." (Pl.'s Mem. [20-cv-01929, Doc. No. 28] at 4.) And the Court found that Fredin strategically uploaded these websites and videos to pressure Defendants to offer favorable settlement terms and to receive favorable judicial rulings. (Nov. 23, 2020 Order [20-cv-1929, Doc. No. 39] ("Sanctions Order") at 17–18.)

Moreover, Fredin has explicitly threatened to retaliate against court staff for unfavorable rulings. (First Breyer Decl. Ex. 10 at 11 n.4 ("Remember, each clerk is going to get reported to the Professional Responsibility Board and websites are going up exposing you for your failure to protect."); *see also Fredin v. Miller*, Civ. No. 19-cv-3051, Pl.'s June 10, 2020 Letter [Doc. No. 95], at 1 (accusing Magistrate Judge Bowbeer of retaliating against him, and stating, "[t]his retaliatory behavior must be documented and preserved by the Court's clerks because it will be an exhibit in Professional Responsibility Complaints against the Court's clerks for failure to report the Court's bias").) In addition, Fredin filed a letter with the Minnesota Court of Appeals, in which he demanded the names of "every clerk and staff member" who assisted in "the opinion affirming the bogus and bizarre facially unconstitutional gag order issued" by the Honorable Patrick Diamond. (Second Breyer Decl. [17-cv-03058, Doc. No. 247], Ex. B at 1.) In a footnote appended to Judge Diamond's name, Fredin brazenly included links to several of the websites and videos attacking the Judge. (*Id.* at 1 n.1.)

Similarly, Fredin has expressed his frustration with this Court, asserting that the Court has "rigged" his case by refusing to sanction Defendants and their counsel. (Mem.

Opp. Summ. J. [17-cv-03058, Doc. No. 188], at 6.) Fredin has made clear that he will use allegedly "peaceful Constitutionally protected vigilante" tactics "[w]hen the court refuses to sanction Defendant, or Mr. Breyer." (*Id.*)

Fredin escalated his "vigilante" campaign after Defendants moved for a temporary restraining order and sanctions. Specifically, Fredin posted additional videos disparaging Kreil's counsel. (*See generally* Third Lockner Decl. [20-cv-01929, Doc. No. 33].) These videos were even more disturbing than Fredin's prior content, including one video set to vulgar images and music that described one of Kreil's attorneys as "Minneapolis' Sexiest Attorney," and falsely stated that the attorney is the "2X champion of the Minnesota Bar Association wet t-shirt contest." (*Id.* ¶ 18.) Another video was even more sexually explicit, featuring pictures of Kreil's counsel and a very graphic voiceover describing gay sex. (*Id.* ¶ 15.) Fredin had allegedly paid YouTube to promote this video, as evidenced by the fact that it generated thousands of views in only a few weeks and appeared as an ad to YouTube's users; notably, third parties who saw the ad have expressed concern to the Robins Kaplan law firm. (*Id.* ¶ 22, 26–27, Exs. E–F.)

### B. The Court's Sanctions

#### 1. Preliminary Injunction

On November 23, 2020, the Court found Fredin to be a vexatious litigant and issued a preliminary injunction under the Court's inherent authority to sanction abuses of the judicial process. (Sanctions Order at 28–30, 32.) The Court found that Fredin had created his websites and videos in a bad-faith effort to harass and intimidate Defendants, their counsel, and the Court, and that his conduct was "a sanctionable abuse of the judicial

process." (*Id.* at 13–15.) The Court determined that the most appropriate sanction was an injunction requiring Fredin to cease his abuses, along with a warning that future violations of the injunction would result in additional penalties. (*Id.* at 17.) The Court narrowly tailored the injunction to address the core of Fredin's sanctionable conduct, namely, that he used these websites and videos to harass and pressure opposing counsel and the Court. (*Id.* at 18.) And the Court explicitly identified certain websites and videos that Fredin was required to remove immediately. (*Id.* at 28–30.)

**2. Fredin's Response**

Fredin refused to comply with—and engaged in extensive motion practice in an effort to reverse—the Sanctions Order. First, Fredin filed a letter requesting permission to file a motion for reconsideration and to stay matters pending appeal. (Corrected Letter to District Judge [20-cv-01929, Doc. No. 48].) Notably, in that letter, Fredin also informed the Court that he "will not abide by the directives set forth" in the Sanctions Order. (*Id.* at 2.) While these requests were pending, Fredin created an additional website and video maligning the undersigned, and another video disparaging Kreil's counsel. (*See* Dec. 2, 2020 Letter [17-cv-03058, Doc. No. 263]; Lockner Decl. Supp. Mot. Show Cause [20-cv-01929, Doc. No. 54], at ¶¶ 9–13.) Fredin then filed a Motion to Vacate the Sanctions Order under Federal Rule of Civil Procedure 60(b). (Mot. Vacate [20-cv-01929, Doc. No. 69].)

The Court denied Fredin's request for permission to file a Motion for Reconsideration as well as his request for a stay. (Dec. 4, 2020 Order [20-cv-01929, Doc. No. 71] at 1–5.) Fredin then filed a Motion to Disqualify the undersigned, which the Court denied. (*See generally* Mot. Disqualify District Judge [20-cv-01929, Doc. No. 83]; Dec.

18, 2020 Order [20-cv-01929, Doc No. 99].) Despite the Court's previous denial of Fredin's motion to stay, Fredin again filed a Motion to Stay the Sanctions Order. (Mot. Stay [20-cv-01929, Doc. No. 93].)

**3. Show Cause Order**

Meanwhile, Defendants filed Motions for an Order to Show Cause and Sanctions. (Middlecamp-Schaefer Mot. Order Show Cause [17-cv-03058, Doc. No. 276; Kriel Mot. Order Show Cause 20-cv-01929, Doc. No. 51].) Defendants argued that the Court should hold Fredin in contempt, highlighting his willful violations of the Sanctions Order. (Middlecamp-Schaefer Show Cause Mem. [17-cv-03058, Doc. No. 277] at 3–5; Kreil Show Cause Mem. [20-cv-01929, Doc. No. 53] at 2–4.) Defendants Middlecamp, Miller, and Schaefer requested attorneys' fees totaling $12,490.80, and urged the Court to refer the matter for criminal prosecution under 18 U.S.C. § 2261A. (Middlecamp-Schaefer Show Cause Mem. at 6, 9.) Likewise, Kreil sought dismissal of Plaintiff's complaint, along with a $500 daily penalty for violating the Sanctions Order. (Kreil Show Cause Mem. at 4–7.)

The Court granted Defendants' request to enter a show cause order. (Jan. 8, 2021 Order [20-cv-1929, Doc. No. 110] ("Show Cause Order") at 10.) The Court noted Fredin's opposition to the Sanctions Order and his intention not to comply with it. (*Id.*) But the Court offered Fredin a second chance, ordering Fredin to file a declaration stating whether he had removed his websites and videos in compliance with the Sanctions Order, and if not, the reasons for his failure to do so. (*Id.*) The Court warned Fredin that, if he failed to remove the websites and videos, the Court would impose sanctions. (*Id.* at 10–11.)

On January 22, 2021, Fredin filed a declaration stating that he "removed those websites or videos pursuant to the January 8, 2021 Order." (Declaration of Brock Fredin [20-cv-01929, Doc. No. 123].) Around the same time, Fredin appealed these orders, along with many of the other orders, to the Eighth Circuit. (*See, e.g.*, 20-cv-1929, Doc. Nos. 49, 118]. The Eighth Circuit affirmed the orders on the merits. (*See* Aug. 11, 2021 Opinion & Judgment [20-cv-01929, Doc. Nos. 148, 149].) Fredin also petitioned the Supreme Court of the United States for a writ of certiorari, which was recently denied. (Notice Den. Writ [20-cv-01929, Doc. No. 216].)

### C. Defendants' Joint Sanctions Motion

Defendants filed this instant motion more than one year after the Court had enjoined Plaintiff and in response to a series of new websites and videos attacking defense counsel and others. (*See* Defs.' Joint Sanctions Mot.; Defs.' Joint Sanctions Mem. [20-cv-01929, Doc. No. 153] at 1.) Defendants urge the Court to impose the sanctions previously deferred or, alternatively, to find that Plaintiff's new videos, which similarly harass and make false allegations of illegal conduct against defense counsel and the Court, require a finding of contempt and imposition of sanctions. (Defs.' Joint Sanctions Mem. at 5–9.) They again seek to impose a daily fine of $500 for each violation, along with an award of attorneys' fees. (*Id.* at 8–9.)

## II. DISCUSSION

The following five motions are before the Court: (1) Defendants' Joint Sanctions Motion; (2) Fredin's Motion for Sanctions; (3) Fredin's Motion to Disqualify District

Judge; (4) Fredin's Motion to Disqualify Counsel, and (5) Fredin's Motion to Stay.[2] Each motion is considered in turn.

**A. Defendants' Joint Sanctions Motion**

Defendants request that the Court impose the deferred sanctions, including, but not limited to, imposing a $500 daily fine for each violation of the Sanctions Order, and awarding in excess of $12,000 in attorneys' fees.[3] (Joint Sanctions Mem. at 1, 8–9; *see* Middlecamp-Schaefer Show Cause Mem. at 6.) Plaintiff opposes the Joint Sanctions Motion, asserting that the motion fails because Defendants do not allege that he willfully violated the injunction. (*See* Pl.'s Corrected Show Cause Opp'n [20-cv-01929, Doc. No. 176] at 1.)

The Court has confirmed that the following websites are still accessible:

- http://kjonbreyer.com;
- attorneykjonbreyer.com;
- annelockner.com;
- annelockner.attorneypetermayer.com; and

---

[2] Fredin seeks to stay proceedings until the Court rules on his motion to disqualify the Robins Kaplan law firm. Because the Court denies that motion, the Court also denies Fredin's Motion to Stay [20-cv-01929, Doc. No. 192] as moot.

[3] The Court acknowledges that Defendants also allege that Fredin created new websites and videos that violate the Sanctions Order. (Joint Sanctions Mem. at 6–7.) However, in the Sanctions Order, the Court exercised its inherent authority to "sanction abuses of the judicial process," narrowly tailoring the injunction to address the core of Fredin's sanctionable conduct, which was his intent to harass counsel and the Court to gain favorable outcomes. (Sanctions Motion at 17–18, 28.) Because the cases are closed and the Eighth Circuit has affirmed, these recently created websites and videos are not created to obtain favorable settlement terms or judicial decisions. (*See id.* at 16–18.) Therefore, the Court does not consider the new websites and videos, nor the parties' arguments relating to them, for purposes of this order.

- https://attorneypetermayer.com.[4]

The Court had ordered that these websites be taken down in the Sanctions Order. (Sanctions Order at 28–29.) Because they are still operating, Fredin is in violation of the Sanctions Order. And this violation is especially problematic because Fredin filed a sworn declaration claiming adherence to the Sanctions Order. This confirms that Fredin has not been truthful with the Court and has acted in bad faith. Accordingly, the Court sanctions Fredin by awarding $12,490.80 in attorneys' fees to Defendants.

**B. Plaintiff's Motions**

**1. Motion for Sanctions**

Plaintiff seeks Rule 11 sanctions, alleging that Defendants filed the Joint Sanctions Motion, knowing that it was baseless and contained false accusations. (Pl.'s Sanctions Mem. [20-cv-01929, Doc. No. 169] at 4–10.) In opposition, Defendants contend that Plaintiff's motion should be denied because it is procedurally deficient and substantively meritless. (Defs.' Opp'n [20-cv-001929, Doc. No. 190] at 1.) Defendants also request that the Court prohibit Fredin from filing any further motions without prior approval, and seal certain materials Fredin filed in support of his motion.[5] (*Id.*)

---

4 The Court last accessed these websites on May 31, 2022.

5 The Court grants Defendants' request to seal Docket Numbers 171 and 182. (*See* Defs.' Opp'n at 12.) However, although there are certain circumstances where it is appropriate for the Court to protect itself from habitually frivolous filers, *see In re Tyler*, 839 F.2d 1290, 1292, 1293 (8th Cir.1988) (explaining that a federal court "may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process"), the Court denies Defendants' request to restrict Fredin at this time.

Rule 11 of the Federal Rules of Civil Procedure provides that "the court may impose an appropriate sanction on any attorney, law firm, or party" that violates Rule 11. Fed. R. Civ. P. 11(c)(1). Rule 11(a) requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name." Fed. R. Civ. P. 11(a). The purpose of the certification is to establish the following to the best of the attorney's "knowledge, information, and belief":

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1)–(4).

The party seeking sanctions must first serve the motion to the offending party and "must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(1), (2). The motion must " 'define precisely the conduct claimed to violate the rule.' " *Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1030 (8th Cir. 2003) (quoting Fed. R. Civ. P. 11, advisory committee's notes (1993 Amend.)). The formal notice "enables the offending party to know what conduct is the source of the dispute, and to know precisely what action is required to cure the offense." *VanDanacker v. Main Motor Sales*

*Co.*, 109 F. Supp. 2d 1045, 1053 (D. Minn. 2000). And the moving party must extend to the alleged offender at least 21 days to cure any Rule 11 defects before filing the motion with the Court. Fed. R. Civ. P. 11(c)(2). This 21 day "safe harbor" provision commences from the date the moving party serves the motion on the alleged offender; informal communication does not start the "safe harbor" clock. *See VanDanacker*, 109 F. Supp. at 1055, *cited favorably in Gordon*, 345 F.3d at 1030. Failure to follow Rule 11's procedural requirements is a sufficient basis to deny a motion brought thereunder. *See Gordon*, 345 F.3d at 1030 ("The district court's awarding of sanctions against Appellant in contravention of the explicit procedural requirements of Rule 11 was an abuse of discretion.").

Plaintiff's motion for Rule 11 sanctions fails for both procedural and substantive reasons. First, the motion fails because Defendants were entitled to notice that sufficiently detailed the conduct that allegedly violated Rule 11. Because Plaintiff never served such notice, his motion does not meet the procedural requirements of Rule 11(c) and thus fails.[6]

Second, Plaintiff's motion fails on the merits. It is a serious matter to impose sanctions and therefore courts approach whether to impose them with caution. *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir. 1987). In evaluating a claim for Rule 11 sanctions, the court must determine "whether a reasonable and competent attorney

---

[6] Fredin suggests that the Court is to blame for his failure to follow the Federal Rules of Civil Procedure due to the emergency briefing schedule. However, the Court is not responsible for making sure parties know the federal rules. *See Bennett v. Dr Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002) (explaining that a pro se party is not entitled " 'to disregard the Federal Rules of Civil Procedure' " (quoting *Carman v. Treat*, 7 F.3d 1379, 1381 (8th Cir. 1993)).

would believe in the merit of an argument." *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2002) (internal quotation marks and citation omitted). "A court must use an objective standard of reasonableness and must consider factors such as the wrongdoer's history, the severity of the violation, and the degree to which malice or bad faith contributed to the violation." *Sun Life Assurance Co. of Canada v. Paulson*, Civ. No. 07-3877 (DSD/SRN), 2009 WL 10678427, at *3 (D. Minn. Jan. 15, 2009).

As explained above, the Court grants Defendants' Joint Sanctions Motion, which demonstrates that the motion was not baseless, effectively defeating Plaintiff's arguments. Moreover, Rule 11 simply requires that an attorney certify to his or her best "knowledge, information, and belief" that the filing adheres to the rule. Fed. R. Evid. 11(b). And there is no objective evidence showing otherwise here. Furthermore, the Court finds that a reasonable and competent attorney could have believed that the phrase "substantially similar" in the Sanctions Order embraces websites and videos relating to other attorneys who work or have worked at Robins Kaplan. (*See* Sanctions Order at 30 ("Plaintiff must not post or caused [sic] to be posted, either himself or by any third party, any additional websites, videos, or other publicly accessible online media that contain *substantially similar* accusations against Defendants, *their counsel*, or Magistrate Judge Bowbeer." (emphasis added)).) Likewise, the Court finds that a reasonable and competent attorney may have reasonably concluded that Plaintiff, given his past actions and affirmative

statements refusing to take the websites and videos down, re-posted the video regarding defense counsel, Mr. Hansen.[7]

For these reasons, the Court denies Plaintiff's motion for sanctions.[8]

**2. Fredin's Motion to Disqualify District Judge**

As a preliminary matter, Fredin previously filed a motion to disqualify the undersigned, which the Court denied. (Pl.'s First Mot. Disqualify Dist. Judge [20-cv-01929, Doc. Nos. 83, 99]. Accordingly, the Court construes this motion to disqualify the district court judge as a motion for reconsideration of the Court's prior order.

The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (internal quotation marks and citation omitted). Such motions should not be used to introduce new evidence that could have been presented during the original motion. *Id.* And a motion for reconsideration should not raise new legal theories for the first time. *Id.*

In this motion, Fredin seeks to disqualify the undersigned for three reasons. (*See* Pl.'s Second Disqualify Dist. Judge Mem. [20-cv-01929, Doc. No. 179] at 3–4.) First, Plaintiff alleges that the undersigned must recuse herself because she knows attorney Philip

---

[7] Fredin denies re-posting a video about Mr. Hansen on iFunny.com.

[8] To the extent Plaintiff seeks sanctions under 28 U.S.C. § 1927, the motion is also denied for the same reasons. *See Protege Biomedical, LLC v. Duff & Phelps Sec., LLC*, Civ. No. 19-3152 (JRT/HB), 2021 WL 168467, at *4 (D. Minn. Jan. 19, 2021), *aff'd*, 21-1368, 2022 WL 1008281 (8th Cir. Apr. 4, 2022).

Sieff, a lawyer at the Robins Kaplan firm. (*Id.* at 1, 3.) Second, Plaintiff contends that the undersigned is biased towards Defendant Middlecamp because Middlecamp allegedly appeared before this Court as an Assistant U.S. Attorney between May and July of 2021. (*Id.* at 3–4.) Lastly, Plaintiff alleges that the undersigned is biased against Plaintiff. (*Id.* at 4.)

Here, Fredin does not cite a manifest error of law or fact in the Court's prior order, nor has he presented newly discovered evidence that would warrant a different result. Simply put, nothing in this motion convinces the Court that it erred in denying the first motion to disqualify. Moreover, the undersigned takes her duty to provide all litigants with fair and impartial justice to heart; in this matter, there is no bias. Accordingly, the Court denies this motion.

**3. Fredin's Motion to Disqualify Counsel for Kreil**

Fredin seeks to disqualify the Robins Kaplan law firm, alleging that he had an attorney-client relationship with that firm regarding these same matters prior to their representation of Defendant Kreil. (Pl.'s Second Corrected Disqualify Counsel Mem. [20-cv-01929, Doc. No. 189] at 2.) Based on that relationship, Fredin generally alleges that Robins Kaplan has disclosed confidential information to Defendants. (*Id.* at 7.)

"A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion." *Cent. Milk Producers Co-op. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir. 1978). The Eighth Circuit "will not allow a litigant to delay filing a motion to disqualify in order to use the motion later as a tool to deprive

his opponent of counsel of his choice after substantial preparation of a case has been completed." *Id.*

Here, Fredin's motion is untimely. Defense counsel submitted a filing on behalf of Defendant Kreil as early as October 1, 2020. (*See* Notice [20-cv-01929, Doc. No. 5].) Fredin should have been, and allegedly was, aware at that time of any potential conflicts that would disqualify the Robins Kaplan law firm. (*See* Lockner Decl. [20-cv-01929, Doc. No. 198] ¶ 13 (alleging that Fredin threatened to file this motion in October 2020).) As explained by the Eighth Circuit in *Central Milk Producers*, Fredin should have promptly filed a motion to disqualify at that time. Instead, Fredin unreasonably waited 15 months to file this motion. Moreover, granting this motion would prejudice Defendant Kreil, depriving her of counsel at this late stage in the litigation. Accordingly, the Court denies this untimely motion.

## III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Sanctions [17-cv-03058, Doc. No 323; 18-cv-00466, Doc. No. 298; 20-cv-01929, Doc. No. 168] is **DENIED**;
2. Plaintiff's Motion to Disqualify District Judge [20-cv-01929, Doc. No. 178] is **DENIED**;
3. Plaintiff's Motion to Disqualify Counsel [20-cv-01929, Doc. No. 183] is **DENIED**;
4. Plaintiff's Motion to Stay [20-cv-01929, Doc. No. 192] is **DENIED** as moot;

5. Defendants' Motion to Seal Document Numbers 171 and 182 [20-cv-01929, Doc. No. 190] is **GRANTED**;
6. Defendants' Motion Enjoining Plaintiff from Filing Future Pleadings Without Permission [20-cv-01929, Doc. No. 190] is **DENIED**; and
7. Defendants' Joint Renewed Motion for Order to Show Cause [20-cv-01929, Doc. No. 151] is **GRANTED** and Plaintiff is ordered to pay $12,490.80 in attorneys' fees.

Dated: June 2, 2022

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge